## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| KATELYN MARTIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, AND RICHARD STEINHART,<br><br>Defendants. | Civil Action No.: 3:23-cv-915<br><br>The Honorable Sarala V. Nagala<br><br>The Honorable Robert A. Richardson<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW OF THE OKLAHOMA LAW
ENFORCEMENT RETIREMENT SYSTEM IN OPPOSITION
TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD
<u>PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     ARGUMENT..................................................................................................................... 3

        A.      HILLS' TRADING PRACTICES SUBJECT HER TO UNIQUE DEFENSES THAT
                RENDER HER INADEQUATE TO LEAD THIS LITIGATION ............................................. 4

        B.      OLERS IS THE MOST ADEQUATE LEAD PLAINTIFF................................................. 11

                1.      OLERS Meets the Requirements of the PSLRA ...................................... 11

                2.      The PSLRA Prefers Institutional Investors Such as OLERS ................... 12

        C.      THE COURT SHOULD APPROVE OLERS' SELECTION OF COUNSEL........................ 13

III.    CONCLUSION................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic, Inc. v. Levinson*,
 485 U.S. 224 (1988)...........................................................................................8, 9

*Bray v. Frontier Commc'ns Corp.*,
 2018 WL 525485 (D. Conn. Jan. 18, 2018)........................................................3, 12

*In re Enzymotec Ltd. Sec. Litig.*,
 2015 WL 918535 (D.N.J. Mar. 3, 2015) ................................................................10

*Freedman v. Weatherford Int'l Ltd.*,
 No. 12 Civ. 2121 (LAK), Doc. 31 (S.D.N.Y. July 10, 2012) ..................................12

*Galmi v. Teva Pharms. Indus. Ltd.*,
 302 F. Supp. 3d 485 (D. Conn. 2017).............................................................4, 5, 9

*Gross v. AT&T Inc.*,
 2019 U.S. Dist. LEXIS 128615 (S.D.N.Y. July 31, 2019) .......................................9

*Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
 338 F.R.D. 205 (S.D.N.Y. 2021) ............................................................................9

*Juliar v. Sunopta Inc.*,
 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ........................................................12

*Labul v. XPO Logistics, Inc.*,
 2019 WL 1450271 (D. Conn. Apr. 2, 2019)...........................................................13

*Malasky v. IAC/Interactivecorp*,
 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004) ........................................................12

*In re Netflix, Inc., Sec. Litig.*,
 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ......................................................10

*In re Petrobras Sec. Litig.*,
 104 F. Supp. 3d 618 (S.D.N.Y. 2015).....................................................................13

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
 229 F.R.D. 395 (S.D.N.Y. 2004) ...........................................................................12

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
 68 F. Supp. 3d 390 (S.D.N.Y. 2014).......................................................................12

*Rodriguez v. DraftKings Inc.*,
    2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ...................................................................9, 10

*Stoopler v. Direxion Shares ETF Tr.*,
    2010 WL 3199679 (S.D.N.Y. Aug. 12, 2010) ..........................................................................5

*Topping v. Deloitte Touche Tohmatsu CPA*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015)........................................................................................5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F.Supp.2d 388 (S.D.N.Y. 2008).......................................................................................13

*Villare v. ABIOMED, Inc.*,
    2020 WL 3497285 (S.D.N.Y. June 29, 2020) ........................................................................13

## Statutes and Other Authorities

15 U.S.C. § 78u-4 (a)(3) ...................................................................................... *passim*

Fed. R. Civ. P. 23 ......................................................................................................3, 6, 11

H.R. Conf. Rep. No. 104–369 (1995) .............................................................................12

The Oklahoma Law Enforcement Retirement System ("OLERS") respectfully submits this memorandum of law in opposition to the competing motions for Lead Plaintiff filed by movants Robert Fraser (ECF No. 32), Richard Fraser (ECF No. 23), and Tonya Hills ("Hills") (ECF Nos. 26, 28, 30).

## I.    PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the appointment of a lead plaintiff in securities class actions. The statute creates a **rebuttable** presumption that the "most adequate plaintiff" to serve as lead plaintiff should have, among other requirements, the largest financial interest in the relief sought by the class. However, that presumption can be rebutted by evidence that the movant with the largest financial interest in the action either: (1) "will not fairly and adequately protect the interests of the class;" or (2) is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).

On September 5, 2023, OLERS submitted its Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("OLERS Motion", ECF No. 29). In addition to OLERS, six individual investors moved for appointment as Lead Plaintiff. On September 12, 2023, three of the six movants withdrew their motions (ECF Nos. 43-45). Three individual investors remain: Tonya Hills, Robert Fraser, and Richard Fraser. The table below sets forth the claimed losses of each of the remaining movants:

| Movant | Losses |
|---|---|
| Tonya Hills | $540,922 |
| OLERS | $158,360 |
| Robert Fraser | $73,054 |
| Richard Fraser | $13,852 |

OLERS respectfully submits that it is the most adequate plaintiff under the circumstances presented.  Any presumption that the PSLRA affords to Hills based on her financial interest in the relief sought is sufficiently rebutted by her irregular trading practices.  From March 14, 2023, the date of her first trade, through June 28, 2023, the last day of the Class Period, Hills traded on **66 out of a possible 74 trading days**.  *See* Exhibit B to the Declaration of Shannon L. Hopkins in Support of Tonya Hills' Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Hopkins Decl.").[1]  During these four months, Hills executed **803 transactions** in BioXcel ("BTAI") common stock.  *See id*.  Hills traded as many as **55 times in a single day**.  *See id*.  Moreover, Hills **both bought and sold shares on 17 of these 66 days.**  *See id*.  On certain days and in certain accounts, she purchased a specific number of shares and then sold that same amount within the same day, which hallmarks a day trading strategy.  *See id*.  This idiosyncratic, unusual trading renders Hills subject to unique defenses that makes her incapable of adequately representing the class.  Defendants will argue that her trades were not made in reliance on market price for BTAI stock, but rather in hopes of capitalizing on daily market volatility or some other factor.  Explaining and defending these trades will distract from Hills' duties to the class and divert attention from the claims asserted on a class wide basis.

OLERS suffers from none of these infirmities.  OLERS is a sophisticated institutional investor, as favored by the PSLRA, with experience and success in leading classes of investors as a lead plaintiff in securities class actions.  OLERS' trading in BTAI stock is straightforward.  OLERS purchased BTAI stock on only four days during the Class Period, and importantly, **did not sell any shares**.  OLERS' trading does not subject it to any unique defenses and OLERS otherwise satisfies all requirements of Rule 23.  Further, OLERS has the largest financial interest

---

[1] All calculations are derived from the trading data included in the exhibits to the Hopkins Declaration (ECF No. 30).

of all remaining movants other than Hills. OLERS will fairly and adequately protect the interests of the class and nothing will compromise its ability to serve as Lead Plaintiff. For these reasons, the Court should grant OLERS' motion.

## II.     ARGUMENT

The PSLRA requires the Court to appoint the "most adequate plaintiff" to serve as lead plaintiff. The statute creates a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that has: (1) made a motion in response to notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure ("Rule") 23. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I). This may be rebutted by evidence that the presumptive plaintiff: (1) "will not fairly and adequately protect the interests of the class;" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).

In considering the competing motions for Lead Plaintiff, the Court should proceed sequentially, "from greatest to smallest loss, applying the presumption that the plaintiff with the greatest loss should be the lead plaintiff, unless and until that presumption is rebutted by a showing that plaintiff does not meet the Rule 23 criteria." *Bray v. Frontier Commc'ns Corp.*, 2018 WL 525485, at *9 (D. Conn. Jan. 18, 2018) (citation omitted). Movant Hills has the greatest financial interest in the litigation with claimed losses of $540,922; however, she is subject to unique defenses which render her incapable of representing the class, thus sufficient to rebut the presumption that she is the most adequate plaintiff. Since OLERS has the next highest financial interest, and otherwise satisfies the requirements of the PSLRA, it is the "most adequate plaintiff" and the Court should appoint it as Lead Plaintiff.

3

### A. HILLS' TRADING PRACTICES SUBJECT HER TO UNIQUE DEFENSES THAT RENDER HER INADEQUATE TO LEAD THIS LITIGATION

In considering potential unique defenses, the Court must question "whether the appointment of a particular plaintiff would lead to the defendant raising unique defenses against that lead plaintiff that would unnecessarily complicate and/or stall the litigation." *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017). If that is the case, the PSLRA deems such plaintiff "inadequate" to represent the class. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II). Here, for reasons explained below, unique defenses arising from Hills' trading patterns and strategy would impede the litigation and subject the class to unnecessary expense and distraction.

Hills first purchased BTAI stock on March 14, 2023. *See* Hopkins Decl. Ex. B. There were 74 possible trading days from Hills' first transaction on March 14, 2023 to the end of the Class Period on June 28, 2023. Hills traded on **66 of the possible 74 days in that period**. *See id*. Hills thus traded on **89%** of possible trading days. *See id*. Hills effected **803 overall transactions** during this period, averaging more than 12 transactions per day. *See id*. Her trading was haphazard and unusual. At some points, Hills purchased only one or two shares of BTAI stock. *See id*. At other points she bought hundreds, or even thousands, of shares. *See id*.

Moreover, Hills **both bought and sold shares on 17 of the 66 days** that she traded. *See id*. Specifically, she both bought and sold BTAI stock on April 6, 2023, April 11, 2023, April 14, 2023, May 4, 2023, May 9, 2023, May 10, 2023, May 17, 2023, May 25, 2023, May 26, 2023, May 30, 2023, June 2, 2023, June 5, 2023, June 6, 2023, June 14, 2023, June 20, 2023, June 22, 2023, and June 28, 2023. *See id*. On certain of those days, she would purchase a specific number

of shares and then sell that same exact amount for a profit, all within the same day. *See id.* An example of one such day, June 6, 2023, is illustrated in the excerpted table below:[2]

| Purchases | | | | Sales | | | | |
|---|---|---|---|---|---|---|---|---|
| Trade Date | Shares Purchased During the CP | Price Per Share | Total Cost | Trade Date | Shares Sold During the CP | Shares Sold During the LBP1 | Price Per Share2 | Proceeds from CP Sales |
| 06-06-2023 | 92 | 19.49 | $ 1,793.08 | 06-06-2023 | 92 | | $ 20.11 | $ 1,850.12 |
| 06-06-2023 | 115 | 19.49 | $ 2,241.35 | 06-06-2023 | 115 | | $ 20.09 | $ 2,310.35 |
| 06-06-2023 | 16 | 19.49 | $ 311.84 | 06-06-2023 | 16 | | $ 20.06 | $ 320.96 |
| 06-06-2023 | 85 | 19.58 | $ 1,664.30 | 06-06-2023 | 85 | | $ 20.13 | $ 1,711.05 |
| 06-06-2023 | 115 | 19.58 | $ 2,251.70 | 06-06-2023 | 115 | | $ 20.11 | $ 2,312.65 |
| 06-06-2023 | 23 | 19.58 | $ 450.34 | 06-06-2023 | 23 | | $ 20.11 | $ 462.53 |
| 06-06-2023 | 78 | 19.55 | $ 1,524.90 | 06-06-2023 | 78 | | $ 20.13 | $ 1,570.14 |
| 06-06-2023 | 115 | 19.55 | $ 2,248.25 | 06-06-2023 | 115 | | $ 20.13 | $ 2,314.95 |
| 06-06-2023 | 30 | 19.55 | $ 586.50 | 06-06-2023 | 30 | | $ 20.13 | $ 603.90 |
| 06-06-2023 | 196 | 19.52 | $ 3,825.92 | 06-06-2023 | 196 | | $ 19.98 | $ 3,916.08 |
| 06-06-2023 | 27 | 19.52 | $ 527.04 | 06-06-2023 | 27 | | $ 20.13 | $ 543.51 |
| 06-06-2023 | 7 | 19.48 | $ 136.36 | 06-06-2023 | 7 | | $ 19.98 | $ 139.86 |
| 06-06-2023 | 7 | 19.48 | $ 136.36 | 06-06-2023 | 7 | | $ 19.98 | $ 139.86 |
| 06-06-2023 | 10 | 19.49 | $ 194.90 | 06-06-2023 | 10 | | $ 19.98 | $ 199.80 |
| 06-06-2023 | 10 | 19.49 | $ 194.90 | 06-06-2023 | 10 | | $ 19.98 | $ 199.80 |
| 06-06-2023 | 10 | 19.49 | $ 194.90 | 06-06-2023 | 10 | | $ 19.98 | $ 199.80 |
| 06-06-2023 | 10 | 19.52 | $ 195.20 | 06-06-2023 | 10 | | $ 19.98 | $ 199.80 |
| 06-06-2023 | 25 | 20 | $ 500.00 | 06-06-2023 | 25 | | $ 20.11 | $ 502.75 |
| 06-06-2023 | 115 | 20 | $ 2,300.00 | 06-06-2023 | 115 | | $ 20.11 | $ 2,312.65 |

Hills bought shares and then immediately sold those same shares at a small profit, in some cases for pennies on the share. These transactions exhibit the patterns of "day trading," which Defendants will argue precludes application of the presumption of reliance. *See infra.* For this reason, courts have avoided appointing day traders as lead plaintiffs. *See Galmi*, 302 F. Supp. 3d at 504 n.10 ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff."); *Stoopler v. Direxion Shares ETF Tr.*, 2010 WL 3199679, at *4 (S.D.N.Y. Aug. 12, 2010), *as corrected* (Aug. 16, 2010) (day traders potentially subject to unique defenses); *see also Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 622 n.16 (S.D.N.Y. 2015) (noting that a movant's status as an in-and-out trader, a specific

---

[2] The information in this table was excerpted from Hopkins Decl. Ex. B (ECF No. 30).

type of day trader, "would render it an inappropriate lead plaintiff under the third prong of the PSLRA's evaluation of a potential lead plaintiff: that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.")

Hills trading on June 26, 2023 further illustrates the problematic nature of her representation of the class. On this day, Hills made **55** separate purchases, at different amounts and at different prices, including some purchases of only one, two, or three shares:[3]

| Account | Transaction Type | Trade Date | Shares | Price | Value |
|---|---|---|---|---|---|
| Account 1 | P | 06/26/23 | 200 | $18.19 | $3,638 |
| Account 1 | P | 06/26/23 | 200 | $17.77 | $3,554 |
| Account 2 | P | 06/26/23 | 300 | $17.86 | $5,358 |
| Account 2 | P | 06/26/23 | 300 | $17.80 | $5,340 |
| Account 2 | P | 06/26/23 | 200 | $17.70 | $3,540 |
| Account 2 | P | 06/26/23 | 300 | $17.67 | $5,301 |
| Account 2 | P | 06/26/23 | 150 | $17.58 | $2,637 |
| Account 2 | P | 06/26/23 | 180 | $17.58 | $3,164 |
| Account 2 | P | 06/26/23 | 150 | $17.57 | $2,636 |
| Account 2 | P | 06/26/23 | 150 | $17.57 | $2,636 |
| Account 2 | P | 06/26/23 | 200 | $17.53 | $3,506 |
| Account 2 | P | 06/26/23 | 100 | $17.54 | $1,754 |
| Account 2 | P | 06/26/23 | 50 | $17.52 | $876 |
| Account 2 | P | 06/26/23 | 100 | $17.56 | $1,756 |
| Account 2 | P | 06/26/23 | 150 | $17.54 | $2,631 |
| Account 2 | P | 06/26/23 | 150 | $17.50 | $2,625 |
| Account 2 | P | 06/26/23 | 100 | $17.57 | $1,757 |

---

[3] The information in this table was contained in Hopkins Decl. Ex. B (ECF No. 30).

| Account 2 | P | 06/26/23 | 150 | $17.60 | $2,640 |
|---|---|---|---|---|---|
| Account 2 | P | 06/26/23 | 180 | $17.59 | $3,166 |
| Account 2 | P | 06/26/23 | 150 | $17.59 | $2,638 |
| Account 2 | P | 06/26/23 | 100 | $17.59 | $1,759 |
| Account 2 | P | 06/26/23 | 80 | $17.55 | $1,404 |
| Account 2 | P | 06/26/23 | 200 | $17.52 | $3,504 |
| Account 2 | P | 06/26/23 | 10 | $17.58 | $176 |
| Account 3 | P | 06/26/23 | 2 | $18.44 | $37 |
| Account 3 | P | 06/26/23 | 2 | $18.40 | $37 |
| Account 3 | P | 06/26/23 | 2 | $18.40 | $37 |
| Account 3 | P | 06/26/23 | 25 | $17.52 | $438 |
| Account 3 | P | 06/26/23 | 25 | $17.50 | $438 |
| Account 3 | P | 06/26/23 | 25 | $17.50 | $438 |
| Account 3 | P | 06/26/23 | 20 | $17.57 | $351 |
| Account 3 | P | 06/26/23 | 20 | $17.59 | $352 |
| Account 3 | P | 06/26/23 | 20 | $17.62 | $352 |
| Account 3 | P | 06/26/23 | 20 | $17.64 | $353 |
| Account 3 | P | 06/26/23 | 100 | $17.65 | $1,765 |
| Account 3 | P | 06/26/23 | 10 | $17.65 | $177 |
| Account 3 | P | 06/26/23 | 29 | $17.60 | $510 |
| Account 3 | P | 06/26/23 | 29 | $17.60 | $510 |
| Account 3 | P | 06/26/23 | 29 | $17.58 | $510 |
| Account 3 | P | 06/26/23 | 29 | $17.58 | $510 |
| Account 3 | P | 06/26/23 | 29 | $17.59 | $510 |
| Account 3 | P | 06/26/23 | 22 | $17.61 | $387 |
| Account 3 | P | 06/26/23 | 30 | $17.54 | $526 |
| Account 3 | P | 06/26/23 | 30 | $17.54 | $526 |

7

| Account 3 | P | 06/26/23 | 30 | $17.50 | $525 |
| --- | --- | --- | --- | --- | --- |
| Account 3 | P | 06/26/23 | 30 | $17.50 | $525 |
| Account 3 | P | 06/26/23 | 30 | $17.50 | $525 |
| Account 3 | P | 06/26/23 | 30 | $17.50 | $525 |
| Account 3 | P | 06/26/23 | 30 | $17.53 | $526 |
| Account 3 | P | 06/26/23 | 3 | $17.52 | $53 |
| Account 3 | P | 06/26/23 | 3 | $17.60 | $53 |
| Account 3 | P | 06/26/23 | 3 | $17.62 | $53 |
| Account 3 | P | 06/26/23 | 1 | $17.60 | $18 |
| Account 3 | P | 06/26/23 | 1 | $17.69 | $18 |
| Account 4 | P | 06/26/23 | 1,000 | $17.64 | $17,636 |

June 26 was not atypical for Hills: On May 25, 2023, Hills had 47 transactions and on June 16, 2023, Hills purchased BTAI common stock 55 times. *See* Hopkins Decl. Ex. B.

Hills' irregular trading makes her suitability as a class representative ripe for attack by Defendants. Specifically, Defendants will argue that Hills' trading rebuts the presumption of reliance provided by the Supreme Court in *Basic, Inc. v. Levinson* and therefore that her claims are not typical of those of the class. *See Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). The *Basic* Court created a presumption of reliance premised on the "fraud-on-the-market" theory. It held that, "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action." *Id*. at 247. However, "**[a]ny** showing that severs the link between the alleged misrepresentation and … [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance." *Id*. at 248 (emphasis added). The presumption of reliance is critical to class certification and any proposed class representative must

8

have relied on the market's integrity in the same manner as other class members. *See, e.g.*, *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 215–16 (S.D.N.Y. 2021) (noting that securities plaintiffs must "prove reliance on a class-wide basis through common, circumstantial evidence ... for the purposes of class certification.") (citation omitted). Here, even if Hills' trading does not conclusively demonstrate that she did not rely on the integrity of the market (and on its face, it does just that), at a minimum, it shows that she employed an individualized and unusual trading strategy, which Defendants will seize upon to argue that Hills is not entitled the presumption of reliance rendering her atypical and inadequate to represent the class.

Defendants may succeed in rebutting the *Basic* presumption. They may not. Either way, the certainty that Hills will have to litigate this issue is enough to disqualify her from serving as Lead Plaintiff. *See Galmi*, 302 F. Supp. 3d at 504 n.10 (finding that, at the lead plaintiff stage, "[t]he merits of whether the day trading defense is actually the prevailing law within the Circuit, however, is not necessarily relevant."); *see also Gross v. AT&T Inc.*, 2019 U.S. Dist. LEXIS 128615, at *6 (S.D.N.Y. July 31, 2019) ("Before disqualifying a potential lead plaintiff [as subject to a unique defense], the Court need not conclude that the defense is likely to or will succeed. Rather, 'many courts have rejected appointments of lead plaintiffs based on *potential* risks.'") (quoting *Shaffer v. Horizon Pharma PLC*, 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. June 27, 2016) (emphasis in original)).

Courts in the Second Circuit have specifically held that idiosyncratic traders, such as day-traders, would unnecessarily expose the class to unique defenses and thus cannot serve as a lead plaintiff. For example, in *Rodriguez v. DraftKings Inc.*, the Court refused to appoint a day-trader as lead plaintiff, reasoning that a day-trader would be vulnerable to attacks by defendants and that

9

"the specter of such attacks on [the movant] would loom large were he to be a proxy for the class."

2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021).  The Court went on to state that:

> … while [the movant] might ultimately succeed in persuading the Court that his idiosyncrasies ought not defeat class certification or harm his claims' prospects on the merits, the interests of the class disfavor exposing it to the risk that his history will dog him.  The question whether [the movant's] trading practice compromise his claims and his adequacy as a class representative is sure to arise in the litigation.  That potential to distract militates against his appointment.

*Id*.  Here, Hills' erratic trading will distract from the litigation and create risk to class certification.

Hills will have to spend time and class resources addressing each one of her **803 total class period**

**trades** and explaining the strategy and process driving these trades.  This will be needlessly

tedious, expensive, and time-consuming, all to the detriment of the class.  Litigating unique

defenses inflates the costs and time associated with prosecuting the claims at the heart of the case,

and can create a sideshow which taxes both the litigants and the Court.  These very factors underly

the PSLRA's express concern with unique defenses.  *See In re Enzymotec Ltd. Sec. Litig.*, 2015

WL 918535, at *2 (D.N.J. Mar. 3, 2015) ("The existence of a defense unique to the presumptively

most adequate lead plaintiff rebuts the presumption because a unique defense … raises the danger

that … 'the representative might devote time and effort to the defense at the expense of issues that

are common and controlling for the class.'") (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d

Cir.2006)); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (the

requirement that a movant lacks unique defenses serves to "protect the absent class members from

the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.")

In contrast to Hills, OLERS purchased BTAI common stock in four transactions during the

Class Period:[4]

---

[4] *See* Exhibit A to the Declaration of Daniel L. Berger in Support of the Motion of the Oklahoma Law Enforcement Retirement System for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (ECF 29).

10

| Transaction Type | Trade Date | Quantity | Price |
|:---:|:---:|:---:|:---:|
| P | 02/08/2023 | 1,100 | $32.99 |
| P | 02/14/2023 | 700 | $33.93 |
| P | 02/15/2023 | 3,397 | $32.78 |
| P | 05/17/23 | 988 | $27.04 |

Most important, OLERS did not sell any of its shares during the Class Period.[5] Hills, by contrast, sold BTAI stock in 164 separate transactions during the Class Period. *See* Hopkins Decl. Ex. B. These 164 transactions will become a focus of class discovery in a manner that will hinder the progress of this litigation, should the Court appoint Hills as Lead Plaintiff.

## B. OLERS IS THE MOST ADEQUATE LEAD PLAINTIFF

### 1. OLERS Meets the Requirements of the PSLRA

For the reasons set forth in its Motion for Lead Plaintiff, OLERS should be appointed as Lead Plaintiff. OLERS submitted a timely motion and otherwise meets the requirements of Rule 23. Further, after Hills, OLERS has the largest financial interest in the relief sought by the class: OLERS' losses of $158,360 are larger than the losses of Robert Fraser ($73,054), and Richard Fraser ($13,852), **combined**. OLERS is thus presumptively the "most adequate plaintiff" under the PSLRA and this presumption cannot be defeated by any claim of unique defenses or otherwise. The Court should decline to appoint an individual who presents hurdles to class certification, when a sophisticated institutional investor is willing and able to lead the class, and has done so in the past.

---

[5] OLERS sold all of its shares of BTAI after the end of the Class Period, after the alleged last corrective disclosure on June 28, 2023.

11

### 2.    The PSLRA Prefers Institutional Investors Such as OLERS

The legislative history of the PSLRA expresses a preference for institutional investors, such as OLERS, to serve as lead plaintiffs.  *See* OLERS Motion at 9; *see also* H.R. Conf. Rep. No. 104–369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Courts in the Second Circuit have consistently reinforced this preference for institutional investors.  *See Bray*, 2018 WL 525485, at \*10; *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (citing *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012)) ("many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs."); *Malasky v. IAC/Interactivecorp*, 2004 WL 2980085, at \*4 (S.D.N.Y. Dec. 21, 2004) (discussing the PSLRA's preference for institutional investors).  Some Courts have even appointed an institutional investor lead plaintiff where an individual investor had higher losses.  *See Juliar v. Sunopta Inc.*, 2009 WL 1955237, at \*2 (S.D.N.Y. Jan. 30, 2009) (finding that the individual investor's higher losses, "does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs); *Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121 (LAK), Doc. 31, (S.D.N.Y. July 10, 2012) (appointing institutional investor lead plaintiff over competing individual investor who lost $165,000 more during the class period because the institutional investor was more "sophisticated.")

The reason that courts tend to prefer institutional investors is their experience, sophistication, and resources, among other things.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (noting that some courts

12

have understood the PSLRA to favor large institutional investors, "whose resources and experience will be of significant assistance to the prosecution of the action."); *Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at \*8 (S.D.N.Y. June 29, 2020) (finding that an institutional investor's "sophistication and understanding of the responsibilities of a lead plaintiff, coupled with its size and resources, will be of significant assistance to the class in this action."). Appointing an institutional investor as lead plaintiff ensures that the class is represented by a qualified and engaged advocate.

OLERS is a sophisticated institutional investor that manages over $17 billion in assets. It previously has served as a lead plaintiff in multiple securities class actions. OLERS' successes include: *Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc. et al*, 4:17-cv-00449 (E.D.Tex.) ($44 million settlement); *Felix Santore v. Ixia, et al.*, 2:13-cv-08440, (C.D.Cal.) ($3.5 million settlement); and *Northumberland Cnty. Ret. Sys., et al. v. GMX Res. Inc., et al.*, 5:11-cv-00520 (W.D.Okla.) ($2.7 million settlement). OLERS' lead plaintiff experience means that it can, and will, competently and vigorously advocate for the class. Moreover, OLERS is willing to expend the requisite time and resources to achieve the best possible outcome for the class.

## C.     THE COURT SHOULD APPROVE OLERS' SELECTION OF COUNSEL

The PSLRA grants a lead plaintiff the right to retain lead counsel. *See* OLERS Motion at 9-10; 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts in the Second Circuit have acknowledged that the PSLRA favors approving a lead plaintiff's decision in choosing lead counsel. *See Labul v. XPO Logistics, Inc.*, 2019 WL 1450271, at \*9 (D. Conn. Apr. 2, 2019); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F.Supp.2d 388, 398 (S.D.N.Y. 2008); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015). OLERS has selected G&E to serve as Lead Counsel and Mott Zezula as Local Counsel. *See* OLERS Motion at 9-10. For the reasons set forth in the OLERS Motion, the Court should approve OLERS' selection of Lead Counsel and Local Counsel.

13

## III.     CONCLUSION

For the foregoing reasons, and the reasons set forth in the OLERS Motion, OLERS respectfully requests that the Court grant its motion for appointment as Lead Plaintiff and deny all competing motions.

Dated: September 19, 2023                Respectfully submitted,

*/s/  Nathan C. Zezula*
Nathan C. Zezula
**MOTT ZEZULA LLC**
750 East Main Street
Stamford, CT 06902
Tel.: (203) 408-6500
Fax: (203) 724-4179
Email: nzezula@lmzlegal.com

*[Proposed] Local Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Daniel L. Berger*
Caitlin M. Moyna*
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com

*Counsel for Oklahoma Law Enforcement
Retirement System and [Proposed] Lead
Counsel for the Class*

\*  *pro hac vice* application forthcoming

14

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2023, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Notice of those filings was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filings through CM/ECF.

/s/  *Nathan C. Zezula*
      Nathan C. Zezula