**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KATELYN MARTIN, Individually and On Behalf of All Others Similarly Situated, | Case No.: 3:23-cv-00915-SVN |
| Plaintiff, | **MOVANT TONYA HILLS' [PROPOSED] REPLY IN RESPONSE TO OPPOSITION TO MOTION FOR LEAD PLAINTIFF** |
| v. | |
| BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, and RICHARD STEINHART, | |
| Defendants. | |

Adam M. Apton
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: shopkins@zlk.com

Shannon L. Hopkins
Gregory Potrepka
LEVI & KORSINSKY, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com
Email: gpotrepka@zlk.com

*Attorneys for Tonya Hills and*
*[Proposed] Lead Counsel for the Class*

Dated: September 21, 2023

The Oklahoma Law Enforcement Retirement System ("OLERS") has mistakenly accused Ms. Hills of being a "day-trader" based upon a misunderstanding of the transaction history appended to her opening motion papers. Importantly, Ms. Hills did ***not*** "execute[] 803 transactions" during the Class Period, as OLERS claims. *See* ECF No. 56, p. 2. Instead, she placed a significantly fewer number of ***orders*** that her brokers then split and filled through different ***transactions*** in accordance with their "best execution" duties. *See* FINRA Rule 5310, Best Execution and Interpositioning.[1]

The following is an excerpt from one of Ms. Hills' brokerage statements featuring transactions from June 26, 2023, which is one of the days that OLERS calls into question in their opposition brief (*see* ECF No. 56 at p. 6). The brokerage statement shows that Ms. Hills did not engage in a series of small trades that day (*e.g.*, 150 shares) but instead placed ***one order*** for 3,450 shares that her broker ultimately filled through ***twenty-two transactions***:

| Trade Date / Settle Date | Transaction Closing Method | Description | Quantity | Price | Cost |
|---|---|---|---|---|---|
| 26 Jun 2023 28 Jun 2023 | BUY | BIOXCEL THERAPEUTICS INC COMMON STOCK UNSOLICITED AVG PRICE SHOWN-DETAILS ON REQ ROME: WHIPANYAAM23062642054 PART OF 3450 SHR Symbol: BTAI | 150 | 17.57 | (2,635.50) |
| 26 Jun 2023 28 Jun 2023 | BUY | BIOXCEL THERAPEUTICS INC COMMON STOCK UNSOLICITED AVG PRICE SHOWN-DETAILS ON REQ ROME: WHIPANYAAM23062645042 PART OF 3450 SHR Symbol: BTAI | 150 | 17.57 | (2,635.50) |
| 26 Jun 2023 28 Jun 2023 | BUY | BIOXCEL THERAPEUTICS INC COMMON STOCK UNSOLICITED AVG PRICE SHOWN-DETAILS ON REQ ROME: WHIPANYAAM23062648195 PART OF 3450 SHR Symbol: BTAI | 200 | 17.53 | (3,506.00) |

The above excerpt is representative of Ms. Hills' trading activity. Despite the number of ***transactions*** appended to her Certification (ECF No. 30-1), the number of ***orders*** Ms. Hills made

---

[1] *See also* U.S. SEC, *Trade Execution: What Every Investor Should Know* (Jan. 16, 2013) (explaining "Duty of 'Best Execution'") (available at https://www.sec.gov/reportspubs/investor-publications) (last accessed Sept. 21, 2023).

is much, much smaller. Indeed, in the above account alone, Ms. Hills made only 90 orders even though those orders were filled through 498 transactions.[2]

Ms. Hills did not "day-trade" in BioXcel Therapeutics. To the contrary, she researched the company thoroughly and then spent several weeks purchasing stock until reaching a position of nearly 43,000 shares by the end of the Class Period. Nothing about Ms. Hills' trading activity rises to the level of proof necessary to rebut her status as the presumptive lead plaintiff in this action. *See In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 & n.9 (D. Conn. 2006) (appointing hedge fund where "contrary to [movant's] suggestion, [hedge fund] did not engage in over 900 trades" but instead used "an online discount brokerage . . . which uses a technique it calls SmartRouting to achieve the optimal share price . . . when executing its trade orders . . . which involves breaking down a single large order into smaller lots and spreading these 'order legs' across multiple market centers to achieve the best price for an order.") (internal quotations omitted).

OLERS makes one additional mistake in their opposition when claiming that Ms. Hills "would purchase a specific number of shares and then sell that same exact amount for a profit." ECF No. 56 at pp. 4-5. The "excerpted table" contained in their brief is taken from Ms. Hills' "Loss Chart" (ECF No. 30-2), which presents Ms. Hills' transactions in LIFO-matching format. Thus, while the excerpt shows purchases and sales in the same amounts side-by-side, Ms. Hills did not make the transactions in the "exact" amounts listed in the table. Far from what OLERS claims, Ms. Hills bought and sold the same number of shares in one day on only three occasions throughout the entire Class Period.

//

---

[2] Attached hereto as Exhibit A is a spreadsheet containing the transactions in "Account 2". For every transaction, the spreadsheet indicates whether it was part of a larger order.

Dated: September 21, 2023                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

*Attorneys for Tonya Hills and [Proposed] Lead Counsel for the Class*

3