**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| KATELYN MARTIN, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, AND RICHARD STEINHART,<br><br>　　　　　Defendants. | Civil Action No.: 3:23-cv-915<br><br>The Honorable Sarala V. Nagala<br><br>The Honorable Robert A. Richardson<br><br><u>CLASS ACTION</u> |

**OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM'S
SUR-REPLY IN SUPPORT OF ITS MOTION FOR LEAD PLAINTIFF
<u>AND IN OPPOSITION TO HILLS'S MOTION FOR LEAD PLAINTIFF</u>**

Lead Plaintiff Movant Oklahoma Law Enforcement Retirement System ("OLERS") respectfully files this sur-reply memorandum in further support of its motion to be appointed as lead plaintiff (ECF Nos. 29, 56) and in further opposition to the motion of Tonya Hills ("Hills") to be appointed as lead plaintiff (ECF Nos. 28, 30, 57, 64), in accordance with this Court's order dated September 25, 2023 (ECF No. 65).

## INTRODUCTION

Hills and OLERS are the two lead plaintiff contestants remaining here. Of those, Hills has higher LIFO losses than OLERS. However, Hills's trading patterns are highly unusual, and she has never sought to be, nor served as, lead plaintiff before. Specifically, Hills placed at least 90 orders for transactions in BioXcel securities over 66 of a possible 74-trading days. Hills Reply at 2 (noting that Hills placed 90 orders in *just one of four* accounts in which she traded BioXcel stock). Further, on 17 occasions, Hills both purchased and sold BioXcel stock on the same day. *See* ECF 30-1 (PSLRA Certification). These trading patterns subject Hills to the "unique defense" that she did not rely on the integrity of the market, and render her inadequate to represent the Class.

OLERS, in contrast, is a model lead plaintiff applicant. OLERS purchased its 6,185 shares of BioXcel stock on just four dates during the Class Period, and importantly, *sold none of it*, instead holding it all through the end of the Class Period. *See* ECF 29-3 (Schedule A). Further, OLERS is an institutional plaintiff with a track record of securing favorable results for defrauded investors.[1] Appointing OLERS would thus further Congress's intent for institutional investors to serve as lead plaintiff, including the presumption that the movant with the highest financial interest should be the lead plaintiff. Indeed, that provision was included because, as Congress observed:

---

[1] *See Logan v. Propetro Holding Corp. et al.,* 7:19-cv-00217, (W.D. Tex.) (ECF No. 177 ($30 million settlement)); *Ross v. Career Education Corporation, et al.*, 1:12-cv-00276, (N.D. Ill.) (ECF No. 128 ($27.5 million settlement)).

1

> The current system often works to prevent institutional investors from selecting counsel or serving as lead plaintiff in class actions. The Conference Committee *seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought* is the "most adequate plaintiff."

*See* H.R. CONF. REP. 104-369, 34, 1995 U.S.C.C.A.N. 730, 733.

Hills has filed a [Proposed] Reply in Response to Opposition to Motion for Lead Plaintiff ("Hills Reply") to argue that she is not a "day trader." Far from placating fears that unique defenses against Hills will complicate the proceedings, the Hills Reply does just the opposite. It raises questions about the actual number of "orders" Hills might have placed across her four accounts and fails to answer why Hills bought and sold BioXcel stock on the same day at least 17 times, despite her assertion that she performed due diligence of BioXcel before she invested. In fact, the Hills Reply demonstrates all too well the obstacles that Hills's idiosyncratic trading history will present and why courts are not permitted to appoint movants who will face "unique defenses."

This lead plaintiff contest presents the rare instance where an individual investor movant has greater losses than an institutional investor movant. But OLERS has rebutted the PSLRA's presumption by demonstrating that Hills's unusual trading patterns subject her to unique defenses. For this reason, and because appointing OLERS actually furthers the purpose of the presumptive lead plaintiff provision, the Court should appoint OLERS as lead plaintiff here.

## ARGUMENT

The Hills Reply offers a preview of the complications that will arise because of Hills's trading history. Although OLERS did not directly accuse Hills of being a day trader,[2] Hills immediately offered up her defensive and uninvited Reply containing inapposite "facts" meant to

---

[2] In its brief, OLERS does not label Hills as a day trader, but rather points out that her trading exhibits hallmarks of a day trading strategy. *See* ECF No. 56 at 2.

demonstrate that she is *not* a day trader. Specifically, Hills explains that although she engaged in over 800 individual transactions over 66 days, she actually *only* placed *90 orders*, in *one of four accounts* in which she traded BioXcel stock, and supports this assertion with a three-line excerpt from an unnamed brokerage statement. Hills Reply at 1. But Hills omits the number of orders she placed in the other three accounts, so the 90 orders does not help us to assess the frequency of her trading. Hills also explains that although she bought and sold BioXcel stock *on the same day, at least 17 times during the Class Period*, these were not done in "exact" mirror amounts, a fact which does nothing to quell fears that she traded based on "technicalities." *Id.* at 2. Finally, Hills asserts that she conducted due diligence into BioXcel. Hills Declaration at ¶ 5.

The Hills Reply thus raises more questions than it answers. Why did Hills place in excess of 90 orders in one account over 74 possible trading days? How many orders did Hills place in her other three accounts, and why didn't she provide this information in her Reply? How can Hills explain that she bought and sold shares of BioXcel on the same day at least 17 times, particularly in light of the "due diligence" she purports to have conducted, prior to investing?[3] The Hills Reply proves that appointing Hills as Lead Plaintiff will lead to complications and will unnecessarily burden the Class as she attempts to prove that her trading is typical of other class members and that she is entitled to the *Basic* presumption of reliance. *See* ECF No. 56 at 8.

---

[3] Although the PSLRA permits OLERS to seek discovery into these and other questions raised by the Hills Motion and Reply, *see* 15 U.S.C. § 78u-4(a)(3)(B)(iv) (permitting discovery where there is a "reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing this class"), OLERS chooses not to do so because that would delay the proceedings and disadvantage the Class, and is unnecessary in light of OLERS's suitability to serve as lead plaintiff. However, Defendants will take a different tack, and capitalize on Hills's unique trading patterns to cause delays, increase expenses for the Class, and ultimately, seek to thwart class certification.

Hills's excuse that her orders were filled with multiple transactions, thus increasing the total number of transactions, has been rejected. In *Applestein v. Medivation Inc.*, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010), the movant with the highest losses engaged in 407 trades during a period of 644 days, and bought and sold stock on the same day on at least nine occasions. *Id*. at *3. The movant asserted that "the volume of trades was a product of his using E-trade, an online brokerage house, as his broker; [movant] claims that E-trade would often fill a single buy or sell order through multiple trades." *Id*. The court found this unpersuasive, stating that:

> The record before the court may be insufficient to establish that [movant] was a day-trader qua day-trader. It is sufficient, however, to raise serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made by [defendant]. Therefore, the court holds that the presumption that [movant], as the plaintiff with the greatest loss, ought to be the lead plaintiff has been rebutted.

*Id*. Here, Hills's trading was even more egregious. She conducted many more transactions over a much shorter period of time (803 transactions over 74 possible trading days), and made same day purchases and sales more often (17 of the 66 days she traded). This is enough to find that Hills's trading "raise[s] serious concerns" about her "susceptibility" to the defense that she did not rely on the integrity of the market but rather on daily market volatility.

Hills relies on *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102 (D. Conn. 2006), which is inapposite. There, two groups moved for lead plaintiff: (1) Carolantic Group: an institutional investor and two individual investors with combined losses of $4.2 million and (2) DMC Group: an institutional investor and one individual investor with combined losses of $221,000. *Id*. at 105. Carolantic Group's orders were spread over 900 transactions. *Id*. at 108. Based on Carolantic Group's representation that it placed "very few" orders, the Court appointed it as lead plaintiff. *In re Host Am. Corp. Sec. Litig.*, No. 3:05 CV 1250 (JBA), ECF No. 74, (D. Conn. November 14, 2005); *Host Am. Corp.*, 236 F.R.D. at 109. Here, Hills admits she did not place "very few" orders.

4

Instead, Hills placed *at least* 90 orders, and probably many more, during a short, 74-day trading period.[4]

In selecting a lead plaintiff, the Court's concern is not whether Defendants will ultimately succeed on a "unique defense."[5] The focus is on avoiding the side show that such unique defenses create. And the threat that unique defenses will complicate the litigation is not an abstract one. Courts have denied class certification because of the lead plaintiff's position as a day trader. *See e.g.*, *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *7 (S.D.N.Y. July 3, 2013) (denying class certification where lead plaintiffs participated in day trading, finding that plaintiffs "subject themselves to unique inquiries regarding their trading patterns and why they made investment decisions… These inquiries will also require considerable time and resources and indeed threaten to become the focus of the litigation."); *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) ("In light of Lead Plaintiff Adal's employment as a day trader (or 'position trader') who typically focuses on technical price movements rather than price, we find that even under a fraud-on-the-market theory, Defendants have presented compelling reason to rebut the reliance presumption."). Here, there is no reason to subject the class to the risk that class certification will be denied, or even that there will be an expensive and lengthy distraction litigating Hills's status as a day trader. OLERS is the preferred lead plaintiff candidate because its trading poses no questions, because it has a proven record of serving as lead plaintiff, and because appointing an institutional investor would actually fulfill the purpose of the PSLRA's presumption.

---

[4] Further, in *Host American Corp.*, both groups of lead plaintiff applicants included institutional investors. Here, in contrast, appointing Hills would subvert Congress's underlying intent to have institutional investors lead securities fraud class actions.

[5] *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) ("'…the Court need not conclude that the defense is likely to or will succeed.' Rather, it must only find 'at least a potential that the presumptively most adequate lead plaintiff will be subject to unique defenses.' This approach protects members of the putative class, because even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions.") (citations omitted).

Dated: September 27, 2023        Respectfully submitted,

*/s/ Nathan C. Zezula*
Nathan C. Zezula
**MOTT ZEZULA LLC**
750 East Main Street
Stamford, CT 06902
Tel.: (203) 408-6500
Fax: (203) 724-4179
Email: nzezula@lmzlegal.com

*[Proposed] Local Counsel for the Class*


**GRANT & EISENHOFER P.A.**
Daniel L. Berger*
Caitlin M. Moyna*
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com

*Counsel for Oklahoma Law Enforcement
Retirement System and [Proposed] Lead
Counsel for the Class*


\* *pro hac vice* application forthcoming

6

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Notice of those filings was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filings through CM/ECF.

/s/     *Nathan C. Zezula*
Nathan C. Zezula