**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER, <br><br> Defendants. | Case No. 3:23-cv-00915-SVN <br><br><br> March 19, 2024 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR <u>VIOLATIONS OF FEDERAL SECURITIES LAWS</u>**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     PLAINTIFFS FAIL TO PLEAD FALSITY.........................................................1

        A.      Plaintiffs Fail to Plead a Duty to Disclose the Form 483 ........................1

        B.      No Pled Facts Regarding the Form 483 Save Plaintiffs' Claims.............4

        C.      Opinions, Forward Looking Statements, and Puffery Are Inactionable..................5

III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ...................7

        A.      Plaintiffs Cannot Plead Recklessness Based Solely on the Form 483.....................7

        B.      Plaintiffs Barely Defend, and Do Not Salvage, Insufficient CW
                Allegations .................................................................................................8

        C.      Plaintiffs Concede That Defendants' Stock Stales Were Pre-Planned ...................9

        D.      The Non-Culpable Inference Is More Compelling ...................................9

IV.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION FOR AUGUST 2023 .................10

V.      CONCLUSION...................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ...............................................................................................6

*Christiansen v. Spectrum Pharms., Inc.*,
2024 WL 246020 (S.D.N.Y. Jan. 23, 2024) ....................................................................7

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) .................................................................3

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010).............................................................................9

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011).............................................................................................4

*George v. China Auto. Sys., Inc.*,
2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) ...................................................................9

*Greco v. Qudian Inc.*,
2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022)..................................................................2

*In re AnaptysBio, Inc. Sec. Litig.*,
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021)..................................................................8

*In re AppHarvest Sec. Litig.*,
2023 WL 4866233 (S.D.N.Y. July 31, 2023) ...................................................................8

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008)..............................................................................7

*In re Delcath Sys., Inc. Sec. Litig.*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014)................................................................................8

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010).............................................................................................4

*In re Mylan N.V. Sec. Litig.*,
666 F. Supp. 3d 266 (S.D.N.Y. 2023)............................................................................10

*In Re Philip Morris Int'l Inc. Sec. Litig.*,
89 F.4th 408 (2d Cir. 2023) .............................................................................................6

*In re Salix Pharms., Ltd.*,

2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).................................................................8

*In re Vertiv Holdings Co. Sec. Litig.*,
2024 WL 358106 (S.D.N.Y. Jan. 31, 2024) ...............................................................2

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)........................................................................................1

*Loc. No. 38 Int'l Broth. Of Elec. Workers Pension Fund v. Am. Express Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010)........................................................................9

*McGuire v. Dendreon Corp.*,
2008 WL 5130042 (W.D. Wash. Dec. 5, 2008) .....................................................2, 3

*Nguyen v. New Link Genetics Corp.*,
297 F. Supp. 3d 472 (S.D.N.Y. 2018)........................................................................4

*Odeh v. Immunomedics, Inc.*,
2020 WL 4381924 (D.N.J. July 31, 2020)..................................................................3

*Okla. Firefighters v. Lexmark*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)..........................................................................8

*Okla. Police Pension Fund & Ret. Sys. v. Teligent, Inc.*,
2020 WL 3268531 (S.D.N.Y. June 17, 2020) ...........................................................3

*Ret. Sys. of Gov't of the V.I. v. Blanford*,
794 F.3d 297 (2d Cir. 2015)........................................................................................9

*Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014)........................................................................10

*Rosi v. Aclaris Therapeutics, Inc.*,
2021 WL 1177505 (S.D.N.Y. Mar. 29, 2021) ...........................................................7

*Schaeffer v. Nabriva Therapeutics PLC*,
2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)..................................................2, 5, 7, 8

*Setzer v. Omega Healthcare Invs., Inc.*,
968 F.3d 204 (2d Cir. 2020).......................................................................................2

*Skiadas v. Acer Therapeutics Inc.*,
2020 WL 3268495 (S.D.N.Y. June 16, 2020) .........................................................10

*Yanek v. Staar Surgical Co.*,
388 F. Supp. 2d 1110 (C.D. Cal. 2005) .....................................................................3

## I.    INTRODUCTION

Plaintiffs' Opposition confirms that their theory of fraud is premised entirely on their position that after FDA conducted an inspection and issued a Form 483 to the operator of one BioXcel clinical trial site, any positive statement Defendants made about the TRANQUILITY II trial or its ability to secure additional funding was misleading, because Defendants did not disclose the Form 483.  That theory effectively imposes a duty to disclose a Form 483 whenever one is received, which is not the law—as courts have repeatedly held.  Plaintiffs do not address, but rather seek to avoid, this and other legal holes in their fraud theory.  Plaintiffs have not pled a false or misleading statement, failing entirely to explain how any Challenged Statement conveyed some fact directly contrary to and inconsistent with the content of the Form 483.  Plaintiffs' scienter theory is entirely based on the Form 483 and fails for this same reason.  Plaintiffs' attempt to rely on a "materialization of risk" theory to plead loss causation for the August 2023 corrective disclosure must be rejected because the "risk," if any, was known by June 2023.

## II.    PLAINTIFFS FAIL TO PLEAD FALSITY

### A.    Plaintiffs Fail to Plead a Duty to Disclose the Form 483

Plaintiffs do not dispute that the Challenged Statements were literally true.  *See* Opp. at 15. Instead, Plaintiffs start with the broad claim that BioXcel "spoke in positive, unqualified terms about the progress, design, and data integrity of the trial"—lumping together thirteen statements made over a seven-month period on different subjects—and claim all of these statements were misleading because Defendants omitted a Form 483, a "negative fact."[1]  *Id.* at 13–14.  Black letter

---

[1] In support, Plaintiffs label the statements "half-truths," and ask this Court to adopt a common-law definition for fraudulent misrepresentations that provides liability for statements on "favorable matters" that "omit[] all reference to unfavorable matters."  Opp. at 14.  This is not a claim for common law fraud. The Second Circuit's post-trial decision in *Vivendi* does not change the pleading standard under Rule 10b-5.  *See* 838 F.3d 223, 239 (2d Cir. 2016) (recognizing omitted facts must be "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading").

law requires more:  Plaintiffs must plead that each statement is actionable by showing that the allegedly omitted facts were "necessary" to make that statement not misleading.  *In re Vertiv Holdings Co. Sec. Litig.*, 2024 WL 358106, at *3 (S.D.N.Y. Jan. 31, 2024) ("each allegedly false or misleading statement" should be evaluated "individually"); *Greco v. Qudian Inc.*, 2022 WL 4226022, at *11 (S.D.N.Y. Sept. 13, 2022) (same).  The Second Circuit has repeatedly held that Rule 10b-5 requires disclosure only of facts that render the actual statement misleading, not disclosure of "all the facts that pertain to [the] subject."  *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020).

Plaintiffs' failure to connect even the subject of any Challenged Statement with the content of the Form 483, *see* Opp. at 13–14, leaves no reasonable dispute that the statements are inactionable.  Statements about "progress" and "design," AC ¶¶ 144, 146, 171, convey nothing about interactions with the FDA or compliance with trial protocol—subjects related to the Form 483.  *See* Mot. at 17.  Plaintiffs only challenge one statement that remotely relates to "data integrity."  Opp. at 15–16.  Specifically, Plaintiffs argue that a statement describing BioXcel's data verification process was misleading, claiming "the FDA had already concluded the TRANQUILITY II data was not 'accurate, correct and precise' because, among other reasons, there were questions about whether the proper patients were included in the study."  *Id.* at 16.  But questions are not conclusions.  *See* Mot. at 27.  Plaintiffs remain unable to claim that the FDA reached a conclusion in the Form 483, or ever.  *See* Opp. at 16 (conceding that "the observations in the Form 483 are not final agency determinations" (quoting *McGuire v. Dendreon Corp.*, 2008 WL 5130042, at *6 (W.D. Wash. Dec. 5, 2008))).  No other statements convey any facts that bear on the Form 483, the omission of which cannot render them misleading.  *See Schaeffer v. Nabriva Therapeutics PLC*, 2020 WL 7701463, at *9 (S.D.N.Y. Apr. 28, 2020) (rejecting omission claim

2

where omission of Form 483 did not "affect[] the truth or falsity" of the information conveyed in the challenged statement).    In fact, none of BioXcel's statements reported any data from TRANQUILITY II until it disclosed topline results on June 29, 2023, accompanied by negative facts that *could* impact the integrity of those results—*i.e.* a fabricated email someone else not within the Company's control provided to the FDA.    *See* Mot. at 10.

Plaintiffs argue that Defendants urge a "narrow" view where a statement is only misleading if the statement is a "mirror image" of the omission.    Opp. at 15.    Not so.    Plaintiffs' own cases confirm that a statement is only actionable if it conveys some fact directly contrary to the alleged omission.    In *Cohen*, plaintiffs alleged that the failure to disclose the fabrication of certain results rendered multiple statements on different subjects misleading.    *Cohen v. Kitov Pharms. Holdings, Ltd.*, 2018 WL 1406619, at *5 (S.D.N.Y. Mar. 20, 2018).    The court rejected this claim for myriad statements, holding that "*statements that do not pertain to the Study's findings* are not actionable because the subject of the omissions and the subject of the statements are too attenuated."    *Id.* (emphasis added).    The only statements that were found to be misleading based on the alleged omission of fabricated results were statements discussing those results.    *See id.*    In each of Plaintiffs' other cases, the challenged statements were directly tied to the Form 483, by suggesting the absence of any negative FDA feedback or obstacles to approval.    *See Odeh v. Immunomedics, Inc.*, 2020 WL 4381924, at *6 (D.N.J. July 31, 2020) (challenging statements that "all critical work streams" for FDA approval were "positive" and approval would be a "check-the-box exercise"); *McGuire*, 2008 WL 5130042, at *6 (challenging statement that inspection resulting in Form 483 was a "good inspection"); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1129–32 (C.D. Cal. 2005) (challenging statements that company was "pleased with" FDA's "vote of confidence" and downplaying possible issues in obtaining FDA approval); *Okla. Police Pension Fund & Ret. Sys.*

3

*v. Teligent, Inc.*, 2020 WL 3268531, at *13–14 (S.D.N.Y. June 17, 2020) (challenging statements discussing the absence of "483 observations" and the company's lack of negative FDA feedback).

Ultimately, Plaintiffs' position that "positive statements" require disclosure of a Form 483 would be akin to imposing a duty to disclose every potential issue related to a clinical trial whenever making ***any statement*** about that trial.  That is not the law.  *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (the "topic" at issue must be construed so as not to "stretch[] these principles past their logical breaking point"); Mot. at 25.

### B.    No Pled Facts Regarding the Form 483 Save Plaintiffs' Claims

Because Plaintiffs cannot establish the requisite link between the Challenged Statements and a Form 483, they advance a falsity theory that the issues identified in the Form 483 were so serious that they "undermined the integrity of the entire trial."  Opp. at 14.  To support this conclusion, Plaintiffs argue that the Form 483 observations were "serious violations."  *Id*.  The problem remains that none of the issues Plaintiffs cite compel any conclusion about the integrity of the "entire trial," and Plaintiffs do not allege that the Form 483 issues were unresolvable—*i.e.*, that BioXcel could not confirm that patients did meet the inclusion criteria or did provide consent. This fact renders Plaintiffs' cited case, *Nguyen*, distinguishable.[2]  Without connecting these dots, Plaintiffs cannot simply speculate that the Form 483 undermined statements made about the progress of BioXcel's development plans.[3]  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (rejecting claim based on "unsupported assumptions").  And while Plaintiffs claim that the

---

[2] In *Nguyen*, the plaintiffs alleged particularized facts showing that ineligible patients *had* been enrolled, which rendered statements that it had met an enrollment milestone misleading.  *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 483 (S.D.N.Y. 2018) *aff'd in part, vacated in part, remanded sub nom. Abramson, v. Newlink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020).

[3] Plaintiffs seek to avoid the dearth of facts supporting this claim by arguing that it is a question of "materiality," and should not be determined now.  Opp. at 19.  That is wrong.  Courts are required to determine whether claims meet the high pleading bar of the PSLRA, and regularly do so.  *See* Mot. at 28.

Form 483 delayed the trial, they concede that the results of the trial were reported in the first half of 2023, as BioXcel said they would be.

The lack of facts tying the Form 483 to any known impact contradicting Defendants' statements is laid bare in Plaintiffs' challenge to BioXcel's risk disclosure. *See* Opp. at 21. Plaintiffs' theory of falsity ignores the actual risk that was disclosed. The risk was not the possibility ***of any compliance issue***; but ***a negative determination by the FDA*** on a particular compliance issue. *See* AC ¶ 151; Mot. at 21. A Form 483 alone is not sufficient to allege that this risk materialized. *See Schaeffer*, 2020 WL 7701463, at *10 ("Form 483's observations alone do not provide a sufficient basis" to conclude that they "could not be remedied" and risk of delayed FDA approval had materialized). Plaintiffs have not pled any facts regarding any such determination by the FDA—*i.e.* that the data was unreliable, or approval would be denied—and cannot say that the risk had materialized in the Form 483. *See* Mot. at 21.

In a final effort to salvage their omissions theory, Plaintiffs also claim that BioXcel failed to disclose that "through BioXcel's own investigation, it was discovered that Dr. Meyer fabricated an email to BioXcel's independent safety monitor." Opp. at 14. But Plaintiffs do not plead any facts to show BioXcel knew of the fabricated email when any Challenged Statement was made or that BioXcel failed to disclose the information immediately upon learning of it during its investigation in June 2023, along with updated risk disclosures. Mot. at 19; Ex. 3 at 9.

### C.     Opinions, Forward Looking Statements, and Puffery Are Inactionable

With respect to Defendants' opinion statements regarding the Company's cash runway, Plaintiffs concede that they must plead Defendants subjectively believed that full execution of BioXcel's development milestones was not possible when the statements were made—beginning on March 9, 2023. *See* Opp. at 23–24. Yet, no pled facts support Plaintiffs' claim that Defendants were aware of some "additional adverse information . . . that further threatened the Company's

5

ability to achieve its developmental milestones" as of March 2023, or even May 2023. *Id.* at 24. Instead, Plaintiffs assume that because BioXcel announced it may not be able to meet those milestones in August 2023, it must have known more than three months earlier. That hindsight assumption is foreclosed by law and is contrary to pled facts. *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.").

With respect to the forward-looking statements, Plaintiffs first argue that statements that the Company was "on track" to report data in June 2023, along with its expectations, excitement, or confidence were in the "present, or even past tense." Opp. at 25. That is not the standard. Plaintiffs have not argued that any of the "existing conditions" conveyed by those statements—*i.e.* the current status of enrollment or data verification—were false. Indeed, they concede they were literally true (and have otherwise abandoned any challenge to those statements). *See* Opp. at 25–26; *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 428 (2d Cir. 2023) ("'[m]erely mentioning' Defendants' other statements . . . unaccompanied by some effort at developed argumentation" is insufficient). To the extent Plaintiffs challenge those statements as misleading by omission because they conveyed anything about results of the trial that would be verified and reported in the future, they are clearly forward-looking. *See Philip Morris* at 428; Mot. at 23–24.

Plaintiffs also claim that the statements were not accompanied by meaningful cautionary language in the "fifty pages of risk disclosures" that accompanied the statements or were incorporated by reference. Opp. at 27. But Plaintiffs concede that the risk disclosures addressed compliance issues and therefore covered issues identified in the Form 483, claiming only that such disclosures were not meaningful because they were misleading. *See id*. at 27–28. Plaintiffs fail to establish that these risk disclosures were misleading, or that the risks had materialized at the time

any forward-looking statement was made.  *See supra* at 5.  As to the remainder of BioXcel's risk disclosures, Plaintiffs simply claim they were "boilerplate."  Opp. at 27–28.  Any review of those disclosures confirms otherwise.  BioXcel disclosed the risk that clinical trials could be delayed, including where "clinical sites deviat[ed] from protocol," Ex. 2 at 58, and the risk that materialized in August 2023 when it paused TRANQUILITY III.[4]

Finally, Plaintiffs' rebuttal that certain statements were not puffery is based on a recitation of undisputed legal principles, but again fails to address the substance of those statements, or the legal authority finding similar statements inactionable.  *See* Opp. at 19–21; Mot. at 18.

## III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER

### A.    Plaintiffs Cannot Plead Recklessness Based Solely on the Form 483

Plaintiffs concede that their theory of scienter "begin[s] and end[s]" with Defendants' knowledge of the Form 483.  Opp. at 30, 32 ("Plaintiffs plead scienter merely by referencing Defendants' admission that they knew about the Form 483 in December 2022. . . .").  The problem remains that a Form 483 "does not in fact have the significance attributed to it by plaintiffs."  *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 471 (S.D.N.Y. 2008) (rejecting scienter arguments despite receipt of FDA feedback), *aff'd*, 334 F. App'x 404 (2d Cir. 2009); *see* Mot. at 32–33.  Instead, the wealth of Form 483 cases underscore that a Form 483 alone does not plead recklessness absent a clear contradiction between the information in the Form 483 and the challenged statements.  *See Schaeffer*, 2020 WL 7701463, at *12 (plaintiffs must show defendants "knew or recklessly disregarded that their statements were misleading *in light of* the Form 483" (emphasis added)).[5]  As shown above, Plaintiffs have not pled facts showing any such clear

---

[4] *Id.* at 52 ("Our estimate as to how long we expect our existing cash to be able to continue to fund our operations is based on assumptions that may prove to be wrong").

[5] None of Plaintiffs' cited cases (Opp. at 30–31) involved a Form 483.  *Christiansen v. Spectrum Pharms., Inc.*, 2024 WL 246020, at *8, *16 (S.D.N.Y. Jan. 23, 2024); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL

contradiction, or any facts to suggest that Defendants' omission of the Form 483 was not based on a "reasonable belief that the potential violations could be timely remedied." *Id.*

Absent this clear contradiction, the "majority of Form 483 cases usually rely on additional factual matter to corroborate the allegedly serious nature of the omitted Form 483," *id.*, but Plaintiffs lack such well-pled facts here. They argue that the success of TRANQUILITY II was important to BioXcel, Opp. at 30; analysts asked questions about the TRANQUILITY II trial, *id.* at 30, 32; and Defendants were involved in BioXcel's "day-to-day" operations, *id.* at 30. But Plaintiffs have not shown how these facts establish the severity of the violations in the Form 483. "Merely emphasizing the importance" of a drug does not clear the "high bar" of pleading scienter. *In re AnaptysBio, Inc. Sec. Litig.*, 2021 WL 4267413, at *10, *14 (S.D. Cal. Sept. 20, 2021). While Plaintiffs argue that FDA's inspection "foreclosed" BioXcel from securing additional FDA approval for BXCL501 by "delaying the completion of TRANQUILITY II [and] undermining the credibility of the trial data," Opp. at 31, the Complaint acknowledges that the trial's topline data were released on time and does not plead any facts showing that the Form 483 undermined the credibility of the trial data. *See* AC ¶¶ 128–29. And in November 2023, BioXcel announced that a third-party investigation had concluded without reaching any such conclusion.[6]

## B.   Plaintiffs Barely Defend, and Do Not Salvage, Insufficient CW Allegations

The Opposition's attempt to salvage the CW allegations is most notable for what it does not contest: Of the seven CWs Plaintiffs cite, ***none*** had a role in conducting or overseeing the

---

1177505, at *22–23 (S.D.N.Y. Mar. 29, 2021); *Okla. Firefighters v. Lexmark*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019); *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *14 (S.D.N.Y. Apr. 22, 2016). And plaintiffs in *Delcath* (which did not involve a Form 483), pleaded facts showing defendants knew of FDA's "extreme[ly] negativ[e]" statements about trial results before they touted the likelihood of favorable FDA treatment. 36 F. Supp. 3d 320, 335 (S.D.N.Y. 2014).

[6] Plaintiffs ask the Court to ignore this fact because it occurred after the Class Period. But, "the Court may take judicial notice of [] exhibits [] that were filed with the SEC after the class period." *In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *18 (S.D.N.Y. July 31, 2023).

TRANQUILITY II trial, clinical research broadly, the FDA approval process, or in handling the Form 483.  Rather, Plaintiffs gesture at the "totality of the information provided by the confidential witnesses" and ask the Court to view them "holistically" in an attempt to conjure more specific scienter allegations than can be found in the Amended Complaint.  Opp. at 33.  This falls well short of the particularity requirements of the PSLRA and Rule 9(b).  *See Loc. No. 38 Int'l Broth. Of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (rejecting allegations of scienter based on "a gossamer patchwork of general statements from [] CWs").  Moreover, allegations that the CWs believed that BioXcel selected Segal Trials "to speed the progression of" TRANQUILITY II, Opp. at 33, even if credited as true, say nothing about Defendants' knowledge that the Form 483 purportedly doomed their prospects of FDA approval.

> **C.    Plaintiffs Concede That Defendants' Stock Stales Were Pre-Planned**

Plaintiffs argue that Dr. Mehta's and Mr. Steinhart's 10b5-1 trading plans do not "immunize insider sales from supporting an inference of scienter" because they came after BioXcel announced the TRANQUILITY program.  Opp. at 38.  But Plaintiffs *still* fail to explain what adverse material nonpublic information Defendants knew at that time (in June and August 2022).  Nor do Plaintiffs identify a single case where sales made pursuant to trading plans entered into *before* the Class Period supported a strong inference of scienter.  *See Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015) (10b5-1 plan instituted after the start of the class period); *George v. China Auto. Sys., Inc.*, 2012 WL 3205062, at *5 (S.D.N.Y. Aug. 8, 2012) (same); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 200 (S.D.N.Y. 2010) (same).

> **D.    The Non-Culpable Inference Is More Compelling**

Plaintiffs do not seriously grapple with the non-culpable inference put forth by Defendants, and instead retort that Defendants' "counter-narrative" amounts to "concealing bad news in hopes

9

of good news taking over," which "constitutes a 'reckless gamble.'"[7]  Opp. at 35.  That inference (found nowhere in the Amended Complaint) is implausible in light of the fact that as soon as BioXcel learned of a separate and serious potential integrity issue (the fabricated email by Dr. Meyer), it commenced an investigation and proactively disclosed this "bad news"—placed in full context—promptly after confirming its findings.[8]  *See* Mot. at 37.

## IV.     PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION FOR AUGUST 2023

Plaintiffs cannot rely on a "materialization of risk" theory of loss causation to support their claimed losses on August 14, 2023.  Opp. at 39.  Here, the allegedly omitted facts were disclosed on June 29, 2023, and Plaintiffs do not claim that those disclosures were misleading.  That alone is fatal to Plaintiffs' ability to claim losses based on disclosures in August 2023, as loss causation cannot be pled by pointing to "the materialization of a known risk, rather than the disclosure of a concealed one."  *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 358 (S.D.N.Y. 2014); *In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 288 (S.D.N.Y. 2023) (Under the "materialization of the concealed risk" theory, the concealed risk must "not have been known to the public").  Plaintiffs are also wrong that BioXcel's August 2023 announcement of a "going concern" was a "materialization of risks associated with the flaws in TRANQUILITY II."  Opp. at 39.  This theory is contradicted by Plaintiffs' allegations that TRANQUILITY II *and* III would support an application for approval, AC ¶¶ 2, 67, 138, and it was not until TRANQUILITY III was paused in August 2023 that BioXcel announced the development timeline (and thus its ability to meet funding milestones) had changed.  Mot. at 23; *see* AC ¶¶ 17, 134, 139.

---

[7] This case stands in contrast to *Skiadas v. Acer Therapeutics Inc.*, where defendants directly misrepresented what FDA "agreed to" in order to secure financing.  2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020).

[8] Contrary to Plaintiffs' conjecture that Defendants "sat on" the news of Dr. Meyer's fabricated email for a month, BioXcel's public disclosures make clear that its investigation of the fabricated email *began* in May 2023.  *See* AC ¶ 124.  BioXcel did not conclude its investigation, and therefore confirm the email fabrication, until late June, only days before disclosing the fabricated email.  *See id.*; Mot. Ex. 3 at 9.

## V.    CONCLUSION

Defendants request that the Court dismiss the Amended Complaint with prejudice.

Dated: March 19, 2024                    Respectfully submitted,
       San Diego, CA

LATHAM & WATKINS LLP

By:    /s/ Colleen C. Smith
       Colleen C. Smith (*pro hac vice*)
       12670 High Bluff Drive
       San Diego, CA 92130
       Tel: (858) 523-5400
       Fax: (858) 523-5450
       Email: colleen.smith@lw.com

       Jessica Bengels [ct29396]
       1271 Avenue of the Americas
       New York, NY 10020
       Tel: (212) 906-1200
       Fax: (212) 751-4864
       Email: jessica.bengels@lw.com

       Michele D. Johnson (*pro hac vice*)
       650 Town Center Drive, 20th Floor
       Costa Mesa, CA 92626
       Tel: (714) 540-1235
       Fax: (714) 755-8290
       Email: michele.johnson@lw.com

       Sarah Tomkowiak (*pro hac vice*)
       555 Eleventh Street, NW Suite 1000
       Washington, D.C. 20004
       Tel: (202) 637-2200
       Fax: (202) 637-2201
       Email: sarah.tomkowiak@lw.com

       Meryn C. N. Grant (*pro hac vice*)
       355 South Grand Avenue
       Los Angeles, CA 90071
       Tel: (213) 485-1234
       Fax: (213) 891-8763
       Email: meryn.grant@lw.com

       *Attorneys for Defendants*