**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER,<br><br>                    Defendants. | Case No. 3:23-cv-00915-SVN<br><br><br>November 1, 2024 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION
<u>COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS</u>**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  PLAINTIFFS FAIL TO PLEAD FALSITY.........................................................1

    A.  Plaintiffs' New Allegations Do Not Corroborate the Serious Nature of the
        Form 483 or Demonstrate That Its Observations Were Not Correctable ................1

    B.  Plaintiffs' New Allegations Do Not Contradict the Challenged Statements ..........4

III.  PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER ..................7

    A.  Dr. Mehta's Pre-Planned Trades Do Not Establish Motive....................................7

    B.  Plaintiffs' New Allegations Do Not Plead Recklessness.........................................7

IV.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION FOR AUGUST 2023 .................10

V.  CONCLUSION...................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abramson v. NewLink Genetics*,
965 F.3d 165 (2d Cir. 2020)............................................................................................4

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ........................................................................................3, 7

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
540 F. Supp. 2d 464 (S.D.N.Y. 2008).........................................................................10

*Curtis v. Aetna Life Ins. Co.*,
2021 WL 1056785 (D. Conn. Mar. 18, 2021) .............................................................3

*In re Able Lab's Sec. Litig.*,
2008 WL 1967509 (D.N.J. Mar. 24, 2008)..................................................................8

*In re Emergent BioSolutions Inc. Sec. Litig.*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ..................................................................8

*Jiehua Huang v. AirMedia Grp. Inc.*,
2017 WL 1157134 (S.D.N.Y. Mar. 27, 2017) .............................................................2

*Kasilingam v. Tilray, Inc.*,
2023 WL 5352294 (S.D.N.Y. Aug. 21, 2023).............................................................7

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024).......................................................................................................5

*Naughton v. Gutcheon*,
2022 WL 3646177 (D. Conn. Aug. 24, 2022) .............................................................7

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)............................................................................8

*Salzman v. ImmunityBio, Inc.*,
2024 WL 3100274 (S.D. Cal. June 20, 2024)..............................................................8

*Schaeffer v. Nabriva Therapeutics plc*,
2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)...........................................................1, 8

*Set Cap. LLC v. Credit Suisse Grp. AG*,
996 F.3d 64 (2d. Cir. 2021)...........................................................................................4

*Sills v. United Nat. Foods, Inc.*,
   2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024)..................................................................8, 9

*Todd v. STAAR Surgical Co.*,
   2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ..........................................................................8

*Tung v. Bristol-Myers Squibb Co.*,
   2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020)..........................................................................3

## I.    INTRODUCTION

Over the course of two complaints, briefing on two motions to dismiss, and a two-hour hearing, Plaintiffs have repeatedly asserted—but never substantiated—that the Form 483, and now the Meyer Response,[1] show that the TRANQUILITY II trial data was certain to be rejected by FDA.  But as Plaintiffs concede, FDA *still* has not made a final determination on the data; indeed, its inspection of Dr. Meyer's site remains open to this day.  Plaintiffs' new facts do not suffice to plead an actionable misleading statement or viable scienter theory, and Plaintiffs acknowledge that the August 2023 "corrective disclosure" related to "recent events" separate from the alleged fraud, so they cannot plead causation.  The Complaint should be dismissed with prejudice.

## II.    PLAINTIFFS FAIL TO PLEAD FALSITY

### A.    Plaintiffs' New Allegations Do Not Corroborate the Serious Nature of the Form 483 or Demonstrate That Its Observations Were Not Correctable

Plaintiffs concede that Defendants had no standalone duty to disclose the Form 483, Opp. 27, but argue that their new alleged facts show that the Form 483 observations were not "correctable," and that "the 32 patients cited in the Form 483,[2] and perhaps all 60 of Dr. Meyer's patients, would have to be excluded from the study."  Opp. 16, 26-27 (citing *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at *12 (S.D.N.Y. Apr. 28, 2020)).[3]  Yet Plaintiffs do not identify a single fact demonstrating that BioXcel or FDA has ever determined any TRANQUILITY II patient was not properly enrolled in the study, or that any patient's data must be excluded (let alone "all" patients at Dr. Meyer's site).  Instead, Plaintiffs assert their conclusion regarding the exclusion of this data can be "reasonably inferred" from the Meyer Response, their

---

[1] Capitalized terms and citations have the same meaning as defined in the Motion to Dismiss, Dkt. 134.

[2] Plaintiffs do not acknowledge this number may double-count subjects cited in multiple observations, *see* Dkt. 130-2 (Meyer Response) (redacting subject numbers), and includes a subject that did not participate in the study at all because of a screen fail, *see id.* at 1.

[3] All emphases added, and internal quotations, citations, and alterations omitted, unless otherwise noted.

1

"expert's" conclusions about those contents, and FDA's non-issuance of an EIR within forty-five days of the Meyer Response. Opp. 16. But none of the new allegations can "carry [Plaintiffs'] assertions beyond the bar of speculation." *See Jiehua Huang v. AirMedia Grp. Inc.*, 2017 WL 1157134, at *8 (S.D.N.Y. Mar. 27, 2017) (falsity was not pled despite "[d]rawing all reasonable inferences in Plaintiff's favor" where plaintiff relied on "conclusory allegations" rather than facts).

**The Meyer Response.** In the Opposition, Plaintiffs mischaracterize and selectively quote the Meyer Response to argue that it conceded, rather than addressed, the Form 483's observations.

- Informed Consent. Plaintiffs argue that four subjects would have to be excluded because Dr. Meyer acknowledged that an unapproved and incomplete Spanish consent form had been used. Opp. 10. This ignores the rest of the Meyer Response, which explained that the four subjects were also English speakers and received the "missing" information through an approved English consent form *prior to their enrollment*. *See* Dkt. 130-2 at 2 (stating further that the repetition of this process at a later date in Spanish corroborated that these patients had fully understood their initial consent).

- Documentation. Plaintiffs emphasize that Dr. Meyer created "notes to file" retroactively and conclude that the lack of contemporaneous notes regarding inclusion/exclusion criteria meant these subjects' data would have to be excluded. Opp. 15-16. Plaintiffs offer no facts to support their speculation that retroactive documentation of clinical diagnosis "could never satisfy" FDA, and their conclusory assertions are undermined by the Form 483, which mentions only a documentation issue—nothing about the subjects' actual eligibility or exclusion. *Id.* at 10. The Meyer Response further explained that the post-enrollment notes "summarize[]" documented evidence collected prior or contemporaneous to, and supportive of, a *pre-enrollment* determination of eligibility. Dkt. 130-2 at 5.[4]

- Urinary Drug Screen. Plaintiffs ignore that the Meyer Response explains why four subjects would *not* need to be excluded for substance use disorder, notwithstanding the missed repeated urinary drug screenings. *See* Dkt. 130-2 at 7-8.

In sum, nothing about the Meyer Response enables the Court to infer that data from the patients referenced in the Form 483 "should have been," much less "in fact were," excluded by

---

[4] Plaintiffs cite Defendants' counsel's statements at the June 24, 2024 oral argument that Plaintiffs' allegations would be undermined if documentation supporting eligibility was submitted in response to the Form 483. *See* Opp. 15, 17 n.4. That is precisely what the Meyer Response suggests happened.

2

FDA. Opp. 17.[5]  If anything, the reasonable inference to draw from the Meyer Response is that the Form 483 issues were minor or addressed, not that the eligibility of the subjects to participate or usability of their data was in jeopardy.  The Court need not accept Plaintiffs' unfounded inferences that are contradicted by the Meyer Response.  *Curtis v. Aetna Life Ins. Co.*, 2021 WL 1056785, at \*6 (D. Conn. Mar. 18, 2021) ("[I]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control . . . .").

Plaintiffs' attempt to "bolster" their assertions with an "expert" opinion fares no better. Opp. 17-18.  As Defendants explained, the Second Circuit has held (in a decision that post-dates all of Plaintiffs' cited authority) that an expert opinion cannot be used to "bolster a complaint" unless it is "based on particularized facts" that are themselves "sufficient to state a claim for fraud." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022).[6]  Dr. Wooten's "opinion" that Dr. Meyer's patients "should have been excluded" fails to meet that standard because that is merely her view based on parroting Plaintiffs' insufficient allegations concerning the Form 483 observations and the Meyer Response.  *See e.g.*, Opp. 11; ¶¶ 167-69.

**The Non-Issuance of an EIR.**  As Defendants showed and Plaintiffs ignore, FDA's Field Management Directive cited in Plaintiffs' own Complaint explains that an EIR will be issued within forty-five days of FDA's closure of an investigation, not within forty-five days of receiving a response to a Form 483.  *See* Mot. 16.  Plaintiffs acknowledge that FDA's inspection remains open, ¶¶ 115, 150, which necessarily means that FDA *has not* reached any final determination (and that the forty-five-day clock for an EIR has not started).  *See* Dkt. 130-1 at 1.  Plaintiffs' theory

---

[5] Plaintiffs do not contend that the untimely reporting of an SAE documented in the third observation would result in that subject's exclusion.  In any case, the Meyer Response states that this subject was cleared by the IRB to continue participating in the study.  *See* Dkt. 130-2 at 8.
[6] Plaintiffs misidentify Defendants' authority as *Tung v. Bristol-Myers Squibb Co.*, 2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020), the district court decision affirmed by the Second Circuit.  *See* Opp. 18.

3

that the absence of an EIR forty-five days after the Meyer Response meant FDA found it inadequate is thus entirely unsupported. Opp. 9. If FDA had determined by that time that the Meyer Response was inadequate, FDA would have issued an EIR with an adverse determination.

**B.      Plaintiffs' New Allegations Do Not Contradict the Challenged Statements**

**Enrollment Statements (Stmts. 1-2).** Following the Court's dismissal of an enrollment statement in the Dismissal Order, Plaintiffs seek a different outcome based on *Abramson v. NewLink Genetics*, which declined to dismiss enrollment-related statements because plaintiffs in that case alleged well-pled facts that defendants knew trial subjects had failed to meet substantive enrollment criteria. *See* Opp. 23 (citing 965 F.3d 165, 178-79 (2d Cir. 2020)). Here, Plaintiffs do not allege any facts establishing Defendants' knowledge that subjects were *actually* ineligible to participate in TRANQUILITY II. The difference is dispositive.

**Form 10-K Risk Disclosure (Stmt. 3).** Plaintiffs claim that Defendants "challenge the actionability of this statement on the sole ground that they 'respectfully disagree' with the Court's holding." Opp. 20. Not so. As Defendants explained, even if the relevant risk is one of noncompliance with good clinical practices (as framed by the Court), BioXcel's risk disclosure was not misleading under Second Circuit law because Plaintiffs have not pled facts establishing that any Defendant knew the Form 483 or Meyer Response was virtually certain to harm BioXcel. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d. Cir. 2021). Plaintiffs' attempts to distinguish this Second Circuit precedent as "inapposite" miss the mark. Opp. 21. Defendants agree that this case is unlike the allegations in *Set Capital* because Plaintiffs do not plead facts showing that while BioXcel said that compliance failures *may* lead to delayed (or no) FDA approval, its receipt of the Form 483 meant it knew with virtual certainty FDA would delay or deny approval. *See Set Cap. LLC*, 996 F.3d at 84-86 (plaintiff sufficiently alleged falsity where risk disclosure said hedging activity "may" impact prices, but facts pled regarding prior activity

4

showed that Defendants "knew with virtual certainty" that their hedging activity *would* significantly depress prices). Plaintiffs further muse that risk disclosures "are intended to allow investors to evaluate the ***likelihood*** that a negative outcome might occur based on particular factors," and from this novel proposition, argue that BioXcel was required to disclose the Form 483 because "[i]f the factor [noncompliance] is actually occurring, then there is a greater likelihood that the negative outcome will also occur." Opp. 20. To start, this theory *concedes* that investors are focused on the future—*i.e.*, what negative outcomes might occur. But that is where Plaintiffs' consistency with the law ends. For investors to evaluate the "likelihood" of a potential negative outcome, they would need to know *every* fact that Defendants knew bearing on the likelihood of it materially harming the company. *See* Opp. 20-21 (observing that "a myriad of factors could affect whether [BioXcel] might obtain regulatory approval"). This would create an exception to swallow the rule that the Exchange Act does "***not*** create an affirmative duty to disclose any and all material information." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024). In fact, this is exactly how Plaintiffs here (and plaintiffs in securities cases across the country) are attempting, with the benefit of full hindsight, to turn good faith risk warnings against the companies that make them.[7]

**Cash Runway Statement (Stmt. 4).** Plaintiffs begin their argument by recycling the fraud-by-hindsight theory this Court has rejected—"*because*" the Company announced on August 14, 2023 it would be unable to access additional capital pursuant to its financing agreements, the Company's cash runway projections from March must have been false or misleading. Opp. 24; Dkt. 128 at 26. Plaintiffs next argue that by alleging the financing agreements contained a milestone regarding FDA approval, they have "demonstrate[d] the requisite connection between

---

[7] As Defendants noted and Plaintiffs ignore, this issue (on which there is a circuit split) is presently before the Supreme Court, with oral argument scheduled for November 6, 2024. Mot. 19 n.8.

the observations in the Form 483 letter and the inability to comply with the financing agreements." Opp. 24-25.  Plaintiffs still, however, fail to allege that Defendants knew in March 2023 that the FDA would not approve BXCL501 in time for the Company to access additional financing.

**Statement Regarding Trial "Completion" (Stmt. 5).**  Despite Plaintiffs' protestations, the Opposition confirms that Plaintiffs' new falsity theory for this statement is founded on the trial data being "virtually unusable." ¶ 224; *compare* Opp. 22 (arguing statement is misleading because it omits "that the data ***cannot be used***") *with* Dkt. 128 at 31 (finding statement could be taken to mean that there were "no outstanding issues with the trial or loose ends to clean up").  If the Court rejects Plaintiffs' conclusory premise that the TRANQUILITY II data could not be used to support an sNDA, so too should it reject Plaintiffs' new challenge to this statement.[8]

**Jeffries Healthcare Conference Statement (Stmt. 6).**  Plaintiffs offer no reason to reverse the Court's prior holding that Dr. Mehta's statement about whether TRANQUILITY II could support an sNDA was a "vague and non-specific," forward-looking statement accompanied by meaningful cautionary language.  Dkt. 128 at 34.  Plaintiffs' latest argument that the statement omitted that "a significant portion of the patients would be excluded" from TRANQUILITY II, Opp. 24, misses the point.  The Court's reasoning turned on its determination that the statement itself was too vague to be relied upon, regardless of the weight of the Form 483.  Dkt. 128 at 34. In any event, for the reasons discussed above, there are no well-pled facts demonstrating that Dr. Mehta (or anyone else) knew at the time of this statement that any patient data would be excluded.

---

[8] Plaintiffs tacitly concede they have not alleged any problems with the data verification process itself, but—without citing any facts—falsely contend that this process was meant to clear up "violations and fraud." Opp. 22.  This allegation is belied by the fact that *none* of the analysts cited in the Complaint raised any question about the need for the *standard* verification process.  In fact, the process was the reason BioXcel uncovered the fabricated email in May 2023, not vice versa.  *See* Mot. 7; ¶ 185.

III.    **PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER**

A.      **Dr. Mehta's Pre-Planned Trades Do Not Establish Motive**

To avoid the dispositive rule that Dr. Mehta's trades pursuant to his 10b5-1 plan "could not be timed suspiciously" absent allegations that the trading plan was created for an improper purpose, *see* Dkt. 128 at 38 (citing *Bristol-Myers Squibb*, 28 F.4th at 355–56), Plaintiffs cite out-of-circuit authority to invent a new theory from whole cloth.  They accuse Dr. Mehta of delaying the disclosure of the Form 483 so that his pre-planned sales could be consummated at higher prices.  *See* Opp. 37.  Plaintiffs offer no facts whatsoever to support this accusation, *e.g.*, that Dr. Mehta delayed or otherwise controlled the timing of BioXcel's disclosure of the Form 483, which was driven by (and made promptly after) the discovery of the fabricated email.  *See* Mot. 38.  Likewise, Plaintiffs offer no response to the fact that Dr. Mehta sold less than 15% of his available holdings and ended the class period with more holdings than when he started, which further cuts against Plaintiffs' motive theory.  *See* Mot. 31; *Kasilingam v. Tilray, Inc.*, 2023 WL 5352294, at *4 (S.D.N.Y. Aug. 21, 2023) (citing cases for the proposition that the sale of 15% of available stock does not support an inference of scienter, even in the absence of a 10b5-1 plan).[9]

B.      **Plaintiffs' New Allegations Do Not Plead Recklessness**

Plaintiffs have entirely abandoned their CW allegations.  *See* Dkt. 128 at 42; Mot. 37.  Instead, Plaintiffs urge the Court to lower the high pleading standard for scienter for "misleading-by-omission" statements, arguing that Defendants' mere "knowledge of the omitted information—here the Form 483, the Meyer Response, and the failure to receive an EIR—pleads scienter."  Opp.

---

[9] Plaintiffs do not defend their erroneous allegation that the trading plans violated a provision of Regulation S-K that did not even exist at the time.  *See* Mot. 29.  Plaintiffs also fail to address, and thus abandon, the Complaint's other motive allegations, including those concerning Mr. Steinhart's stock sales.  *See* ¶¶ 263-91; Mot. 27-32; *Naughton v. Gutcheon*, 2022 WL 3646177, at *10 n.37 (D. Conn. Aug. 24, 2022) (citing cases for the proposition that an argument not address in an opposition brief is waived).

31.  That is not the law.  Plaintiffs must show with particularity how the information Defendants knew "bel[ies] the accuracy" of the statements they made, not just that Defendants knew of the information—which would be true in every "misleading-by-omission" case.  *See* Opp. 29; *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019). In *Lexmark International*, which Plaintiffs cite for the point, the court held that "Second Circuit cases uniformly rely on allegations that [1] ***specific contradictory information*** was available to the defendants [2] at the same time they made their misleading statements."  367 F. Supp. 3d at 37.  There, the plaintiffs alleged that (1) the defendants attended meetings; *and* (2) there were ***specific numbers contradicting*** their public statements in slide decks reviewed at those meetings. *Id.*  Here, Plaintiffs' only argument is that Defendants knew of the Form 483 and the Meyer Response.  But in all of the Form 483 cases Plaintiffs cite, the plaintiffs alleged *more* than knowledge of a Form 483 or response.[10]  Plaintiffs' arguments that Defendants' experience and the dubious "core operations" theory supports recklessness, Opp. 33, 35, are similarly reliant on the baseless inference that the Meyer Response was inadequate, and thus also fail to show Defendants' conduct was "highly unreasonable." *See Schaeffer*, 2020 WL 7701463, at \*8;[11] *Sills v. United Nat. Foods, Inc.*, 2024 WL 4188324, at \*10 (S.D.N.Y. Sept. 13, 2024).

Plaintiffs' argument that post-class period developments further support an inference of

---

[10] In *Salzman v. ImmunityBio, Inc.*, the defendants received three Form 483s and did not take remedial action or correct the observations.  2024 WL 3100274, at \*11–12 (S.D. Cal. June 20, 2024).  In *In re Able Laboratories Securities Litigation*, the defendants received a Form 483 and a follow-up Warning Letter wherein the FDA stated that the violations were "serious and may be symptomatic of serious underlying problems," and defendants did not follow up on the issues.  2008 WL 1967509, at \*16 (D.N.J. Mar. 24, 2008).  In *In re Emergent BioSolutions Inc. Securities Litigation*, FDA concluded that defendants' response to the Form 483 did not cure the deficiencies observed and sent the company a letter informing them that their facility was not "ready to support commercial operations."  2023 WL 5671608, at \*8 (D. Md. Sept. 1, 2023).  Finally, *Todd v. STAAR Surgical Co.* involved multiple FDA inspections, both a Form 483 and a follow-up Warning Letter from FDA, and FDA's "repeated[] alert[s]" to management about "severe violations."  2016 WL 6699284, at \*12–14 (C.D. Cal. Apr. 12, 2016).

[11] Plaintiffs argue that *Schaeffer* "reached a conclusion that conflicts with the weight of authority," Opp. 31 n.8, but cite no authority.

scienter also fails. *See* Opp. 34. Plaintiffs argue that FDA's request for additional efficacy data and BioXcel's planned TRANQUILITY In-Care study have to mean that certain patient data from TRANQUILITY II was excluded. Opp. 34-35. But according to Plaintiffs' Complaint, it was not until after BioXcel's October 2023 and February 2024 meetings with FDA that FDA required BioXcel to conduct an additional study to support an sNDA. ¶ 250. Because this was not known to Defendants when they made their challenged statements months earlier, it adds nothing to the scienter analysis. *See United Nat. Foods*, 2024 WL 4188324, at *11 (question for scienter is what information "***was available to the Defendants at the time***" they made their statements).

Further, Plaintiffs' assertion that the exclusion of TRANQUILITY II data is the "only reason" Defendants would need to generate additional efficacy data is speculation that the Court need not credit. Opp. 35. BioXcel disclosed FDA's reason for requesting additional data: BioXcel's "proposed efficacy database, which currently ***includes*** the 70 patients who have been treated with 60 mcg of BXCL501 in TRANQULITY I ***and TRANQUILITY II***, would not contain substantial evidence of effectiveness absent additional data." *See* Tomkowiak Decl. Ex. A at 15; ¶ 179*; see also* Mot. Ex. 9 at 3.[12] On its face, this disclosure means that (1) FDA wanted more data, not replacement data (as designed, TRANQUILITY In-Care would support BXCL501's efficacy in a broader medical setting and population than TRANQUILITY II) and (2) data from TRANQUILITY II would still be ***included*** in BioXcel's database. *See* ¶ 182. Plaintiffs further ignore that TRANQUILITY II was designed to support an sNDA jointly with the TRANQUILITY III study, ¶ 71, and TRANQUILITY III was never completed, *see* Mot. Ex. 7 at 33; Mot. Ex. 14 at 2—providing another reason why Defendants would need to generate more data.

---

[12] As BioXcel previously disclosed in its 2021 Form 10-K, in TRANQUILITY I, 20 patients received a 60 mcg of BXCL501. *See* Tomkowiak Decl. Ex. B at 14. In TRANQUILITY II, 50 patients received this same dose. ¶ 61; Opp. 7.

9

Even when assessed "holistically," as Plaintiffs urge, Opp. 28, their scienter allegations simply do not give rise to a strong inference of scienter. *See City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (rejecting plaintiffs' attempt to plead that "zero plus zero plus zero plus zero plus zero adds up to something").

## IV.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION FOR AUGUST 2023

Plaintiffs fail to plead any causal link between the August 14, 2023 alleged "corrective" disclosure and any of the Challenged Statements purportedly left uncorrected by June 29, 2023. As the Court previously noted, the August 14, 2023 disclosure "relates to the inability to unlock the financing and to continue being a going concern," which is not connected to BioXcel's receipt of a Form 483. Dkt. 136-1 at 79. Plaintiffs attempt to manufacture a link between the Company's financial status and the Form 483 by alleging that the "recent events" described in the August 14, 2023 disclosure include the Form 483 and the Meyer Response. Opp. 39. But the context of the announcement is clear as to what those "recent events" are: (1) increased expenses for TRANQUILITY II, (2) strategic reprioritization, and (3) pausing of enrollment in TRANQUILITY III. *See* ¶ 196; Mot. Ex. 7 at 12-13, 61; Mot. Ex. 14 at 2. In particular, the pausing of TRANQUILITY III prevented the Company from submitting an sNDA for BXCL501 as originally planned, *see* ¶ 71, thus preventing it from reaching a regulatory milestone (FDA approval) to unlock financing, ¶ 89. Meanwhile, any discussion of TRANQUILITY II went no further than to reiterate what was already disclosed in June and announce BioXcel's plans to discuss the ***entire*** TRANQUILITY program with FDA. Mot. Ex. 14. And while Plaintiffs claim that "Defendants newly revealed that its cash runway projections depended on fully exploiting its financing agreements," Opp. 40, both before and during the Class Period, BioXcel consistently disclosed that its cash runway projections assumed "full execution" of the financing agreements. *See* Tomkowiak Decl. Ex. C at 3; Ex. D at 6; Ex. E at 4.

10

## V.    CONCLUSION

Defendants request that the Court dismiss the Second Amended Complaint with prejudice.

Dated: November 1, 2024    Respectfully submitted,
      San Diego, CA

LATHAM & WATKINS LLP

By:    */s/ Colleen S. Smith*
    Colleen C. Smith (*pro hac vice*)
    12670 High Bluff Drive
    San Diego, CA 92130
    Tel: (858) 523-5400
    Fax: (858) 523-5450
    Email: colleen.smith@lw.com

    Jessica Bengels [ct29396]
    1271 Avenue of the Americas
    New York, NY 10020
    Tel: (212) 906-1200
    Fax: (212) 751-4864
    Email: jessica.bengels@lw.com

    Michele D. Johnson (*pro hac vice*)
    650 Town Center Drive, 20th Floor
    Costa Mesa, CA 92626
    Tel: (714) 540-1235
    Fax: (714) 755-8290
    Email: michele.johnson@lw.com

    Sarah Tomkowiak (*pro hac vice*)
    555 Eleventh Street, NW, Suite 1000
    Washington, D.C. 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Email: sarah.tomkowiak@lw.com

    Meryn C. N. Grant (*pro hac vice*)
    355 South Grand Avenue
    Los Angeles, CA 90071
    Tel: (213) 485-1234
    Fax: (213) 891-8763
    Email: meryn.grant@lw.com

    *Attorneys for Defendants*

11