# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER,<br><br>Defendants. | Civil Action No.: 3:23-cv-00915-SVN |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR LEAVE TO AMEND

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..............................................................................................................1

II.     RELEVANT BACKGROUND ........................................................................................4

III.    ARGUMENT....................................................................................................................8

        A.      Legal Standard for Deciding a Rule 15(a)(2) Motion............................................8

        B.      The New Allegations in the PTAC Directly Address Key Deficiencies Identified
                in the MTD Order While Also Undermining Defendants' Arguments in Support
                of Dismissal .........................................................................................................10

                1.      Falsity.......................................................................................................11

                2.      Scienter ....................................................................................................13

        C.      The Proposed Amendment Would Not Prejudice Any of the Defendants, Who
                Cannot Show that the Amendment Is Undertaken in Bad Faith............................17

IV.     CONCLUSION................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbey v. Skokos*,
303 F. App'x 911 (2d Cir. 2008) ..................................................................... 8

*In re Able Labs Sec. Litig.*,
2008 WL 1967309 (D.N.J. Marc 24, 2008) ..................................................... 15

*Anthony v. City of N.Y.*,
339 F.3d 129 (2d Cir. 2003) ........................................................................ 8, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 9

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ........................................................................... 17

*Cresci v. Mohawk Valley Cmty. Coll.*,
693 Fed. Appx. 21 (2d. Cir. 2017) .................................................................. 18

*Cruz v. TD Bank, N.A.*,
742 F.3d 520 (2d Cir. 2013) ........................................................................... 10

*DeWan v. Seiderman*,
No. 17 Civ. 1315, 2017 WL 6048816 (S.D.N.Y. Dec. 5, 2017) ....................... 18

*Duling v. Gristede's Operating Corp.*,
265 F.R.D. 91 (S.D.N.Y. 2010) ...................................................................... 17

*In re Emergent Biosolutions Inc. Sec. Litig.*,
2023 WL 5671608 (D. Md. Sept. 1, 2023) ...................................................... 15

*Empls' Ret. Sys. of Government of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015) ........................................................................... 14

*In re Express Scripts/Anthem Erisa Litig.*,
285 F. Supp. 3d 655 (S.D.N.Y. 2018) .................................................... 9, 10, 18

*Indiana Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) .............................................................................. 9

*Kopchik v. Town of E. Fishkill, N.Y.*,
759 Fed. Appx. 31 (2d. Cir. 2018) .................................................................. 18

**Page(s)**

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
797 F.3d 160 (2d Cir. 2015)..................................................................... 9, 10, 18

*In re Moody's Corp. Sec. Litig.,*
599 F. Supp. 2d 493 (S.D.N.Y. 2009)................................................................. 9

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.,*
681 F.3d 114 (2d Cir. 2012)................................................................................ 8

*Pasternack v. Shrader,*
863 F.3d 162 (2d Cir. 2017)................................................................................ 9

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.,*
153 F. Supp 3d 628 (S.D.N.Y. 2015).............................................................. 9, 17

*Porat v. Lincoln Towers Cmty. Ass'n,*
464 F.3d 274 (2d Cir. 2006)............................................................................. 10

*Rosi v. Aclaris Therapeutics, Inc.,*
2021 WL 1177505 (S.D.NY. March 29, 2021) ................................................. 15

*Salzman v. ImmunityBio, Inc.,*
No. 23-cv-01216, 2024 U.S. Dist. LEXIS 109213 (S.D. Cal. June 20, 2024) ........... 15, 16

*Schaeffer v. Nabriva Therapeutics plc,*
2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020).................................................... 15

*Setzer v. Omega Healthcare Invs. Inc.,*
968 F.3d 204 (2d Cir. 2020)............................................................................. 14

*In re Take-Two Interactive Sec. Litig.,*
551 F. Supp. 2d 247 (S.D.N.Y. 2008)................................................................. 9

*Todd v. Staar Surgical Co.,*
2016 WL 6699284 (C.D. Cal. April 12, 2016) .................................................. 15

*Williams v. Citigroup Inc.,*
659 F.3d 208 (2d Cir. 2011)............................................................................... 9

**STATUTES**

15 U.S.C. §78u-4 ............................................................................................. 10

**Page(s)**

**RULES**

Fed. R. Civ. P. 15 ................................................................................................................. 8

Fed. R. Civ. P. 9(b) ............................................................................................................. 10

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Co-Lead Plaintiffs Tonya Hills and Oklahoma Enforcement Retirement System ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for leave to file the [Proposed] Third Amended Complaint for Violations of the Federal Securities Laws, ("PTAC") (attached as Exhibit 1 to the Declaration of Adam M. Apton in Support of Plaintiffs' Motion for Leave to Amend ("Apton Decl.")). For the convenience of the Court, Plaintiffs have attached as Exhibit 2 to the Apton Declaration a redline comparison of the PTAC to the Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 130, the "SAC"). The new substantive allegations in the PTAC are largely taken from additional confidential witnesses who bolster Plaintiffs' theories of falsity and scienter while also undermining Defendants' competing explanation of nonculpable conduct.[1]

## I.    INTRODUCTION

Plaintiffs' counsel recently received new, highly material and relevant information that must be added to the record presently before the Court. *See* 15 U.S.C. §78u-4(b)(1) (requiring plaintiffs to identify "all facts" supporting falsity). Specifically, on January 24, 2025, a credible former employee of Segal Trials who worked closely with Dr. Caitlin Meyer on the TRANQUILITY II clinical trial contacted Lead Counsel. For context, Segal Trials and Dr. Meyer conducted the TRANQUILITY II trial that, as alleged, was the subject of Defendants' false and materially misleading statements and omissions.

---

[1]   "Defendants" refer to BioXcel Therapeutics, Inc., Vimal Mehta, Robert Risinger, and Richard Steinhart. Unless otherwise noted, citations to "¶__" and "¶¶__-__" refer to paragraphs in the PTAC. All emphasis in quoted material is added and all internal citations, quotation marks, and footnotes are omitted unless otherwise noted.

This former employee (referred to in the PTAC as CW8) has provided first-hand accounts and observations confirming that Dr. Meyer intentionally violated TRANQUILITY II's study protocol to enroll patients into the study that did not meet the study's enrollment criteria. The former employee observed these enrollment violations between February 2022 and October 2022. The former employee reported the violations to the U.S. Food & Drug Administration ("FDA") on September 30, 2022. The former employee explained that Dr. Meyer illicitly enrolled these patients into the trial to expedite the trial at the request of BioXcel.

If allowed, Plaintiffs' PTAC will contain specific observations from the former employee, such as the following:

1.    Dr. Meyer manually changed assessment scores on the Mini-Mental State Exam ("MMSE") to enroll patients in the study that should not have been enrolled (because their initial scores on the MMSE disqualified them from the study);

2.    Dr. Meyer employed various tactics to force patients to exhibit episodes of "agitation" in order to enroll patients in the study that should not have been enrolled (because they did not exhibit "agitation" as required by the enrollment criteria). These tactics included instructing a phlebotomist(s) to intentionally cause pain to patients during venipuncture through repeated "failed" attempts at drawing blood. According to the former employee, the patients would grow agitated and angry at the phlebotomist after repeated "failed" attempts and, upon triggering the agitation or anger, would be marked as meeting certain inclusion criteria (even though the episode would not have occurred but for the artificial "failed" venipuncture attempts);

3.      Dr. Meyer perpetuated fraudulent patient enrollments in order to meet and/or exceed targets and, in turn, receive prize money from Segal Trials and/or BioXcel Therapeutics.

Plaintiffs' counsel contacted additional, new former employees after speaking with CW8. These new former employees (referred to as CW9, CW10, and CW11) corroborate the information provided by CW8 and by other CWs. For example, they confirm that BioXcel hired Segal Trials because it believed that Segal Trials could provide results fast, as was necessary to BioXcel and its funders. Thus, BioXcel determined that it would enroll 70% of all potential participants in Segal Trials.  Segal Trials, for its part, worked to help BioXcel achieve its goal of rapid patient enrollment by using competitions and incentives to maximize enrollment figures, in addition to outright fabricating data, as outlined above. These employees also confirm that Defendants, particularly Defendant Mehta, received direct updates from Segal Trials and were aware of the protocol violations occurring within the TRANQUILITY II trial.

These allegations are relevant to the issues presently before the Court. They demonstrate the seriousness of the protocol violations committed by Dr. Meyer during the course of the TRANQUILITY II trial and explain why the FDA did not accept Dr. Meyer's response to the Form 483 Letter it issued after the audit in December 2022 (*i.e.*, the Meyer Response).  Thus, while Defendants argued that Dr. Meyer's protocol violations amounted to mere "documentation" issues that could have been corrected during the Class Period, these new allegations show that an extreme level of misconduct occurred during the TRANQUILITY II trial and that the problems identified by the FDA in its Form 483 Letter were a part of a much larger problem and very different in nature than Defendants' claim. As Plaintiffs previously argued, Defendants knew the TRANQUILITY II trial data was irreparably tainted by Dr. Meyer's trial protocol violations,

which is why the FDA refused to credit the trial data and ultimately forced BioXcel to conduct the trial anew.

In light of the foregoing, Plaintiffs respectfully request an opportunity to amend the Second Amended Complaint to include the additional information they have obtained. The standard for granting leave to amend is liberal. "Rule 15(a) declares that leave to amend shall be freely given when justice so requires . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotations omitted). Leave should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182; *see also Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (adhering to the liberal standard set forth in Rule 15 and reversing denial of leave to amend in a federal securities fraud action). There has been no bad faith or undue delay, and leave to amend will not cause undue prejudice to Defendants. No formal discovery has been taken in this action, and there is no scheduling order in place. As such, Plaintiffs respectfully submit that their motion for leave to amend be granted under the liberal standard of Rule 15(a).

## II.     RELEVANT BACKGROUND

On December 5, 2023, Plaintiffs filed their First Amended Complaint for Violations of the Federal Securities Laws. ECF No. 90. On February 6, 2024, Defendants moved to dismiss. ECF No. 106. On July 11, 2024, the Court granted Defendants' motion. ECF No. 128 (the "MTD Order").

The MTD Order sustained two of Plaintiff's alleged false and misleading statements: 1) Defendants' statements in BioXcel's annual report on Form 10-K dated March 16, 2023,

- 4 -

concerning its reliance on third parties and the need for them to "successfully perform contractual legal and regulatory duties" (¶¶ 264-266); and 2) Risinger's statement on May 9, 2023, when he told investors that the TRANQUILITY II trial was "completed" (¶¶ 274-277). *See* MTD Order at 22-23, 31. The MTD Order nevertheless dismissed these claims on the basis that Plaintiffs failed to plead scienter for the two statements. MTD Order at 35.

On August 1, 2024, Plaintiffs filed the SAC. ECF No. 130. Plaintiffs' SAC featured Dr. Meyer's response to the Form 483, *i.e.*, the Meyer Response. On September 6, 2024, Defendants moved to dismiss, arguing *inter alia* that the Meyer Response did not rectify the pleading deficiencies from the previous iteration of the complaint. ECF No. 134. On October 11, 2024, Plaintiffs opposed Defendants' motion. ECF No. 135. Plaintiffs argued in opposition that the Meyer Response undermined Defendants' arguments by showing that the trial protocol errors committed in the TRANQUILITY II trial were material and, importantly, not "correctable" at any point during the Class Period. Plaintiffs also argued that the gravity of the protocol errors was evidenced by the fact that BioXcel appeared to be conducting the TRANQUILITY II trial anew in response to directives received from the FDA during recent meetings.

On January 24, 2025, Plaintiffs' counsel received new, relevant information from CW8, a former employee of Segal Trials. Segal Trials was responsible for conducting the TRANQUILITY II trial under the supervision of Dr. Caitlin Meyer. CW8 confirms that the trial protocol errors were, in fact, quite severe and intentional. Patient enrollments were fabricated by admitting participants into the trial that should have been excluded. For example:

- CW8 reported that Dr. Meyer would "redo" patient assessments to give patients specific "rates, even if they were untrue." Put differently, Dr. Meyer would change a clinical rater's score to falsely indicate that a patient experienced agitation, even

when they had not, solely to justify enrolling the patient in the TRANQUILITY II trial (¶51);

- CW8 reported that Dr. Meyer was "fabricating the data and participation of subjects" and "falsifying [] medical records."  According to CW8, Dr. Meyer was "cooking the books" by "aggressively enroll[ing] subjects into the trial, regardless of the ones who did not meet criteria by not scoring in the appropriate assessment tool range." CW8 reported that "answers to questions would be changed" and "scores would be altered" (¶59);

- CW8 reported that "diagnoses [were] being given that [were] false or being added to a patient's medical history in bad faith." Dr. Meyer "stated she could assess them [the patients] and diagnose dementia easily" in order to include them in the trial. CW8 also reported that Dr. Meyer would give "a regular dementia diagnosis" to patients who should have been "medically disqualified due to a diagnosis of Parkinson's Disease or Vascular dementia" because their memory loss was not attributable to probable Alzheimer's disease (¶61);

- CW8 reported that Dr. Meyer purposefully aggravated patients so that they would present symptoms of agitation, thereby rendering the patient eligible for inclusion in the trial. Dr. Meyer directed employees to "get the subject[s] as upset as possible on purpose" in order to fabricate episodes of agitation by, among other things, instructing phlebotomists to give "multiple uncomfortable needle sticks to draw blood" while simultaneously asking the patient "to do something cognitively draining such as counting backwards from 82, by threes." At Dr. Meyer's direction, staff members would report the incident and use it as an opportunity to dose the

- 6 -

patient for displaying agitation, even though that agitation had been purposefully fabricated by the employee (¶65);

- CW8 reported that Dr. Meyer's conduct was driven by monetary incentives provided by BioXcel. CW8 noted that the employees "were promised a bonus if they made sure the [enrollment] numbers were really good" and that Dr. Meyer would frequently talk about how the employees could win a contest for achieving the highest levels on enrollments. CW8 said the employees were sometimes offered "gift cards" or a "$200 bonus" and "various incentives" (¶54).

These allegations are also corroborated by other new, allegations from former Segal Trials employees who worked on the TRANQUILITY II trial. In pertinent part, the additional CWs stated that:

- CW9 reported that BioXcel and Segal Trials focused on rapid enrollment. CW9 received emails announcing "competitions between teams, to see who could get the most people enrolled." The emails included "updates and incentives" with graphics of racecars. The pressure to enroll patients was "very high" and, according to CW9, "the agreement between BioXcel and Segal was that they were going to enroll . . . 70%" of patients." (¶¶71-73);

- CW10, an employee of Segal Trials, worked closely with Defendant Mehta and reported to him regularly. CW10 reported that Mehta had known "pretty much everything" about the problems with TRANQUILITY II, referring to the trial protocol violations that occurred and were identified in the FDA's Form 483 Letter (¶¶77-78);

- CW11 reported that Segal Trials did not properly train its staff which gave way to routine regulatory violations. CW11 noted that many employees involved in the trial were "very new to clinical research. New to eligibility criteria, and stuff." CW11 reported that "record-keeping was just abysmal" on the trial and that clinical research associates would frequently notice errors in the paperwork for the TRANQUILITY II trial (¶¶80-83).

On February 3, 2025, the Court granted Plaintiff leave to file the instant motion and present the above information in a PTAC for consideration.

## III.    ARGUMENT

### A.    Legal Standard for Deciding a Rule 15(a)(2) Motion

Leave to amend is "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2). Justice requires leave when there are "at least colorable grounds for relief . . . ."  *Abbey v. Skokos*, 303 F. App'x 911, 913 (2d Cir. 2008). The judicial policy favoring amendment is so strong that the burden is on the non-moving party to demonstrate bad faith or undue prejudice. *See Anthony v. City of N.Y.*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice"). Therefore, leave is generally denied only when amending would be futile, or the non-movant establishes prejudice or bad faith associated with the amendment. *See Panther Partners Inc. v. Ikanos Commc'ns*, *Inc*., 681 F.3d 114, 121 (2d Cir. 2012) (finding amendment not futile).

"In assessing whether the proposed complaint states a claim" for the purpose of determining whether amendment would be futile, a court will consider "the proposed amendment[s] . . . along with the remainder of the complaint. . . . accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine

whether the allegations plausibly give rise to an entitlement to relief[.]" *Id.* at 119. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). Thus, even significant amounts of "time, effort and money . . . expended in litigating [the] matter" cannot establish the prejudice that the non-movant must show to preclude leave to amend. *See id.*

In deciding whether to permit amendment, courts apply the "'permissive standard' of Rule 15 . . . 'consistent with [the] strong preference for resolving disputes on the merits.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, *LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). Amendment is proper when "the proposed complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Given the stringent standards applicable to securities fraud claims brought under the Exchange Act, leave to amend is often necessary to allow a plaintiff to develop sufficient factual support for their claims at the pleading stage. *See, e.g.*, *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009) ("leave to amend should be granted liberally in cases alleging securities fraud"); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (recognizing importance of liberally allowing amendment in view of complicated pleading rules applied to securities fraud claims, and allowing filing of third amended complaint).

Moreover, leave to amend a complaint is particularly appropriate post-dismissal. *See In re Express Scripts/Anthem Erisa Litig.*, 285 F. Supp. 3d 655, 690 (S.D.N.Y. 2018) ("[W]hile Plaintiffs have already had opportunities to amend the original complaint, none were in the context of a motion to dismiss decision and the Court has therefore not yet provided guidance as to how

Plaintiffs' claims may be adequately made."); *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp 3d 628, 656 (S.D.N.Y. 2015) ("The usual practice in this Circuit upon granting a motion to dismiss is to permit amendment of the complaint."). *See also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."); *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead[.]"). That is because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190.

### B. The New Allegations in the PTAC Directly Address Key Deficiencies Identified in the MTD Order While Also Undermining Defendants' Arguments in Support of Dismissal

Amendment is not futile here because the PTAC pleads additional facts that, if accepted, cure deficiencies identified in the MTD Order and contradict Defendants' arguments on the motion to dismiss. "A court may deny a motion to amend on the basis of futility only where no colorable grounds exist to support the proposed claim." *Express Scripts*, 285 F. Supp. 3d at 690.

A complaint alleging securities fraud under Section 10(b) of the Exchange Act must "state with particularity the circumstances constituting [the] fraud." FED. R. CIV. P. 9(b). When a plaintiff alleges a false statement or omission, the complaint must specify "the reason or reasons why the statement is misleading" and must "state with particularity all facts on which that belief is formed." 15 U.S.C. §78u-4(b)(1). Additionally, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. §78u–4(b)(2)(A).

In the MTD Order, the Court rejected Plaintiffs' claims because the AC failed to plead scienter for the two statements it sustained and otherwise failed to plead falsity for Defendants'

statements concerning the TRANQUILITY II trial's "enrollment" status. As set forth herein, the new allegations of the PTAC make clear that the alleged misstatements and omissions at issue were indeed false or, at minimum, materially misleading. In addition, the PTAC's allegations establish a strong inference of scienter against Defendants.

### 1.      Falsity

Plaintiffs pursue Exchange Act claims for misrepresentations and omissions made by Defendants concerning their violation of the TRANQUILITY II trial's study protocol. Defendants not only concealed their receipt of the Form 483 for nearly six months, but also hid the known fact that their primary investigator (Dr. Meyer) was enrolling patients in the trial that should have been excluded. Plaintiffs allege that this conduct created an acute risk of adverse regulatory action that ultimately materialized and effectively rendered the trial void, resulting in a significant waste of money and delay.

The Court previously upheld two of Defendants' statements as false and misleading. The first statement—a risk disclosure Defendants made concerning BioXcel's reliance on third parties in the Form 10-K filed on March 16, 2023—was actionable because, "although presented in a hypothetical form, a reasonable investor may have concluded that the risk disclosed by this statement had already materialized based on issuance of the Form 483 letter . . . While the statement may be literally true, presenting this information as a risk disclosure – when there was evidence that these risks had already materialized by the time the disclosure was made – was misleading." MTD Order at 23. The second statement—Risinger's statement on May 9, 2023, claiming that the TRANQUILITY II trial was "completed"—was actionable because "a reasonable investor may have understood the statement to indicate that there were no outstanding issues with

the trial or loose ends to tie up" which was not true in light of the Form 483 Letter. MTD Order at 31.

Plaintiffs' new allegations in the PTAC fortify the MTD Order's holding. Dr. Meyer's conduct during the course of the TRANQUILITY II trial was indefensible. They demonstrate the severe risks associated with hiring Segal Trials. Thus, the risk disclosure did not come anywhere close to providing investors with a reasonable understanding of the risks they faced vis-à-vis BioXcel's reliance on third parties. Likewise, the allegations further demonstrate the falsity ofRisinger's statement about the TRANQUILITY II trial being "complete[]." The new facts demonstrate that TRANQUILITY II in fact included patients who did not meet the inclusion and exclusion criteria for the study, and these patients should have been excluded. Enrollment was not "complete."

The SAC also re-asserted claims the Court had previously dismissed based on new facts available to Plaintiffs at the time they filed the SAC. In March 2023, Defendants told investors that the TRANQUILITY II trial was "fully enrolled" (¶ 260) and that patient enrollment was "complete" (¶ 262). Plaintiffs' SAC alleged that these statements were false and/or materially misleading because they omitted to disclose that 32 patients at Dr. Meyer's trial site (which housed a total of 60 patients) cited in the Form 483 were not properly admitted. The new facts in the PTAC further support these allegations by demonstrating that at least some if not all of these patients were knowingly admitted into the trial under false pretenses. *See* ¶¶ 261, 263. Thus, while the MTD Order initially rejected Plaintiffs' allegations because the violations were supposedly "correctable" and not conclusive of patients "not properly enrolled" (MTD Order at 28), the new allegations show otherwise. Given the circumstances behind the enrollment of patients within the TRANQUILITY II trial, Plaintiffs' allegations now show that the subjects in the trial were not

properly enrolled and enrollment was not complete. *See Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 178-79 (2d Cir. 2020) (affirming falsity of "enrollment" statements where defendants allegedly enrolled "ineligible individuals").

Importantly, these new allegations address the MTD Order's holding that "Plaintiffs seem to draw too strong an inference from the Form 483 itself, which observes only that Dr. Meyer's site did not have "adequate case histories" or "sufficient documentation" regarding enrollment criteria." MTD Order at 28. The SAC remedied this by including facts in Dr. Meyer's response to the FDA showing that the documentation did not exist at the time of enrollment, and she tried to correct this through post hoc "notes to file," which was not an adequate remedy. ¶¶202, 205, 279. The new facts in the PTAC further bolster Plaintiffs' allegations that TRANQUILITY II was not "fully enrolled.". *See*, *e.g.*, ¶¶50-69. Thus, the Form 483 Letter at this point provides ***additional*** (and not the ***only***) evidence of the enrollment violations occurring within the trial.

The fact that the FDA required BioXcel to repeat the TRANQUILITY II trial solidifies Plaintiffs' point. Defendants reported statistically significant top line results for TRANQUILITY II on June 29, 2023. They had intended that TRANQUILITY II and TRANQUILITY III – developed with the FDA's input – would allow BioXcel to file an sNDA. ¶¶109-12. Yet the FDA demanded that Defendants repeat TRANQUILITY II before it could move on to at-home studies – let alone file for an sNDA. ¶306. This further supports the inference that Dr. Meyer's patients were not properly enrolled in the study, rendering misleading the statements that TRANQUILITY II was "fully enrolled" or that patient enrollment was "complete." ¶¶ 260-63.

### 2.      Scienter

Despite holding that Plaintiffs adequately alleged the element of falsity for two of Defendants' statements, the MTD Order determined that Plaintiffs failed to allege that Defendants

acted with scienter in making those statements. MTD Order at 35-42. Plaintiffs' new allegations in the PTAC cure any remaining scienter defects identified in the MTD Order. The PTAC also alleges scienter for Defendants' other alleged misrepresentations.

Plaintiffs' PTAC alleges a strong, cogent and compelling inference of scienter with facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness" as well as facts "showing that defendants had both motive and opportunity to commit the fraud." *Setzer v. Omega Healthcare Invs. Inc.*, 968 F.3d 204, 212 (2d Cir. 2020).

To demonstrate scienter via circumstantial evidence, plaintiffs must allege that defendants "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Empls' Ret. Sys. of Government of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (citation omitted). Defendants incentivized Segal Trials to enroll patients in the TRANQUILITY II trial at rapid speed. Segal Trials accomplished this by violating trial protocol and fraudulently enrolling patients into the trial that were not eligible to participate. *See* ¶¶50-69. This was "deliberate[] illegal behavior" and shows that Defendants knew their "public statements were not accurate" when discussing the trial's enrollment and completion.

The PTAC also demonstrates Defendants' knowledge of the Segal Trials' protocol violationsAs CW9 described, BioXcel and Segal Trials agreed to enroll 70% of potential trial participants, which was "unheard" of in terms of enrollment statistics. ¶73. Moreover, as CW10 confirmed, Defendant Mehta received direct reports from Segal Trials and knew about the protocol violations that were occurring during the trial. ¶¶77-78. Finally, given the breadth and severity of the protocol violations described by CW8, any scenario in which Defendants had no visibility into

what was occurring would strain credulity, particularly since the pressure to enroll patients rapidly was coming from BioXcel itself. Thus, Defendants' scienter is apparent. *See Salzman v. ImmunityBio, Inc.*, No. 23-cv-01216, 2024 U.S. Dist. LEXIS 109213, at \*27-30 (S.D. Cal. June 20, 2024) (statements about GMP compliance misleading where defendants concealed Form 483 and related manufacturing deficiencies); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at \*22 (S.D.NY. March 29, 2021) (allegations that Defendants "knew facts or had access to information suggesting that their public statements were not accurate" were made where allegations "had access to the FDA letters and were aware of internal concerns about misleading marketing"); *In re Able Labs Sec. Litig.*, 2008 WL 1967309, at \*16 (D.N.J. Marc 24, 2008) (Form 483 and warning letter "provided notice to the defendants that serious problems existed in the manufacturing process" and failure to investigate was an "extreme departure from the standards of ordinary care" demonstrating recklessness); *In re Emergent Biosolutions Inc. Sec. Litig.*, 2023 WL 5671608, at \*23-24 (D. Md. Sept. 1, 2023) (facts supporting inference that defendants knew about Form 483 and response "support a strong inference of scienter"); *Todd v. Staar Surgical Co.*, 2016 WL 6699284, at \*12 (C.D. Cal. April 12, 2016) (scienter alleged where defendants were "aware of adverse observations" by the FDA even before a Form 483 issued).

Plaintiffs' additional allegations now safely remove this case from the holding in *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020), which the MTD Order cited in the course of its scienter analysis. MTD Order at 41. *Schaeffer* held that even though defendants knew about the Form 483, scienter was lacking because the plaintiffs needed to "plead something more [than knowledge of the Form 483] to indicate why Defendants' failure to mention

the Form 483 was 'highly unreasonable,'" *i.e.*, reckless. *Id.* at *12.[2] Plaintiffs' PTAC identifies a litany of additional protocol violations, including fraudulent patient enrollments. *See*, *e.g.*, ¶¶50-69. In light of these additional protocol violations, concealing the Form 483 Letter when received was extremely reckless given the totality of the data integrity issues BioXcel faced at that point in time. Thus, unlike the defendants in *Schaeffer*, Defendants here had no legitimate justification for not disclosing the Form 483 Letter when receiving it. The facts are no different than, for example, those in *Salzman v. ImmunityBio, Inc.*, *supra*, where the defendants concealed a Form 483 while knowing they were liable for a host of additional manufacturing deficiencies. *See Salzman*, 2024 U.S. Dist. LEXIS 109213, at *27-30.

In addition to Plaintiffs' circumstantial evidence of scienter, the PTAC also pleads motive and opportunity. Defendant Mehta sold approximately 65,000 shares of BioXcel stock in March 2023 and another 60,000 shares in June 2023. ¶¶332-33. By concealing from the public the Form 483 Letter, Mehta delayed the inevitable controversy that would ultimately ensue over the TRANQUILITY II trial's data integrity. This allowed him to sell his 65,000 shares into favorable market conditions with an artificially inflated stock price for BioXcel shares. Indeed, had Mehta disclosed the Form 483 Letter, protocol violations, and need for additional clinical trial research to the public at any point prior to March 2023 (for example, after the Meyer Response in January 2023), BioXcel's stock price would have cratered and Mehta's stock sales would have netted approximately $2 million less in proceeds. ¶333. "[C]oncealing the negative information before the sale and setting the sale to occur prior to [reporting TRANQUILITY II's results] **were** discretionary choices, so it is sufficient at the pleadings stage to contribute to the plausibility of

---

[2] Plaintiffs opposition to the motion to dismiss the SAC demonstrates why, in any event, *Schaeffer*'s holding was incorrect. *See* ECF No. 135 at 26-27 & n.7.

- 16 -

the scienter allegations." *In re Biomarin Pharm. Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO, 2022

U.S. Dist. LEXIS 9445, at *40 (N.D. Cal. Jan. 6, 2022); *see also In re Viropharma Inc. Sec. Litig.*,

21 F. Supp. 3d 458, 473 (E.D. Pa. 2014) (scienter where defendants sold $8 million in stock weeks

before FDA issued denial, compared with only $400,000 sold during control period); *Azar v. Yelp,

Inc.*, No. 18-cv-00400-EMC, 2018 U.S. Dist. LEXIS 200769, at *58 (N.D. Cal. Nov. 27, 2018)

(Rule 10b5- 1 plan did not insulate defendant who withheld bad news to maintain share prices).

> ### C. The Proposed Amendment Would Not Prejudice Any of the Defendants, Who Cannot Show that the Amendment Is Undertaken in Bad Faith

Any party opposing a motion for leave to amend bears the burden of establishing that it

would suffer undue prejudice by the proposed amendment. *See Anthony*, 339 F.3d at 138 n.5. The

Second Circuit has warned that, "[i]n determining what constitutes 'prejudice,' [courts should]

consider whether the assertion of the new claim would: (i) require the opponent to expend

significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly

delay the resolution of the dispute[.]" *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.

1993). In determining whether parties have been unduly prejudiced by a proposed amendment,

"[c]ourts also consider the extent to which the new claims are related to the existing ones and

whether a party has had prior notice of a proposed new claim." *Duling v. Gristede's Operating

Corp.*, 265 F.R.D. 91, 99 (S.D.N.Y. 2010).

Defendants will not suffer undue prejudice if leave is granted to file the PTAC. The only

prejudice Defendants can plausibly articulate is that they will have to expend time and resources

opposing this motion (if they are so inclined) or in drafting additional motion to dismiss papers

(should the Court deem it necessary). But "the time, effort and money [the party opposing

amendment] expended in litigating th[e] matter . . . do[es] not arise to . . . 'substantial prejudice[.]'" *Block*, 988 F.2d at 351.

It was not until the MTD Order that Plaintiffs became aware of any deficiencies in their pleadings. *See Pehlivanian*, 153 F. Supp. 3d at 657 ("Because it is possible that Plaintiff can plead additional facts to remedy the deficiencies identified in this opinion without prejudice to Defendants, Plaintiff is granted leave to amend."); *Express Scripts*, 285 F. Supp. 3d at 690 (granting leave to amend after decision on motion to dismiss because this Court had "not yet provided guidance as to how Plaintiffs' claims may be adequately made"). *See also Kopchik v. Town of E. Fishkill, N.Y.*, 759 Fed. Appx. 31, 38 (2d. Cir. 2018) ("The opportunity to amend the complaint is appropriately presented *after* the district court rules on a motion to dismiss.") (emphasis in original); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 Fed. Appx. 21, 25 (2d. Cir. 2017) ("It is the District Court's ruling, not the defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies."). While it is Plaintiffs' position that the SAC cures the defects that the Court identified, the new facts Plaintiffs learned even further strengthen their allegations and close any potential remaining gaps identified by the Court's MTD Order. Moreover, no discovery has taken place in this action to date. *See DeWan v. Seiderman,* No. 17 Civ. 1315 (ER), 2017 WL 6048816, at *5 (S.D.N.Y. Dec. 5, 2017) (granting motion for leave to amend complaint, holding that "Defendant cannot state that he is surprised by this claim, or that he is unduly prejudiced since discovery has not begun").

Accordingly, under the circumstances and procedural posture of this case, it is inconceivable that Defendants could show "undue delay," "bad faith," or "dilatory motive" on Plaintiffs' part in moving to amend. *See Loreley*, 797 F.3d at 190 (identifying these items as grounds for denial). Plaintiffs submit that their prompt actions to file this motion and the PTAC

following the receipt of additional information relevant to the pleading deficiencies identified in the MTD Order negate any potential prejudice to Defendants.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and allow the filing of the PTAC.

Dated: February 24, 2025                         Respectfully submitted,

LEVI & KORSINSKY, LLP

 s/ Adam M. Apton
Adam M. Apton (*pro hac vice*)
33 Whitehall Street, 17th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

  -and-

Caitlin M. Moyna (*pro hac vice*)
Alexandra E. Forgione (*pro hac vice*)
GRANT & EISENHOFER P.A
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: cmoyna@gelaw.com
Email: aforgione@gelaw.com

*Co-Lead Counsel for Plaintiffs and the Class*