**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:23-cv-00915-SVN |
| Plaintiffs, | March 17, 2025 |
| v. | |
| BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   BACKGROUND ......................................................................................................4

III.  LEGAL STANDARD.................................................................................................9

IV.   ARGUMENT............................................................................................................10

    A.    Leave To Amend Should Be Denied As Futile Because The Proposed Complaint Fails To Plead A Strong Inference Of Scienter...................................10

        1.    Plaintiffs' New Allegations Do Not Plead Conscious Misbehavior Or Recklessness .................................................................................11

            a.    The New CWs Do Not Plead That Defendants Were Aware Of Or Recklessly Disregarded Segal Trials' Alleged Misconduct...................................................................................12

            b.    Allegations That BioXcel Desired To Quickly Enroll the TRANQUILITY II Trial Are Insufficient To Plead Scienter ........16

            c.    The Proposed Complaint's Allegations Concerning The EIR Process And The TRANQUILITY In-Care Trial Are Based On The Same Baseless Assumptions As The SAC.............18

    B.    The Nonfraudulent Inference Is More Compelling ..............................................21

    C.    Plaintiffs' Claims Should Be Dismissed With Prejudice.....................................22

V.    CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)..................................................................................................10

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ...................................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................10

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*,
2019 WL 422613 (S.D.N.Y. Feb. 4, 2019).........................................................................19

*Brown v. Montefiore Med. Ctr.*,
2022 WL 392313 (S.D.N.Y. Feb. 9, 2022)............................................................................9

*Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122 (2d Cir. 2008).....................................................................................................9

*Davison v. Ventrus Biosciences, Inc.*,
2014 WL 1805242 (S.D.N.Y. May 5, 2014) .......................................................................17

*De Jesus v. Sears, Roebuck & Co., Inc.*,
87 F.3d 65 (2d Cir. 1996).......................................................................................................22

*Dickerson v. BPP PCV Owners LLC*,
2024 WL 4696088 (S.D.N.Y. Nov. 6, 2024).......................................................................23

*Doe v. Indyke*,
465 F. Supp. 3d 452 (S.D.N.Y. 2020)..................................................................................19

*Friedman v. Bloomberg, L.P.*,
2022 WL 1004578 (D. Conn. Apr. 4, 2022).........................................................................9

*Gale v. Smith & Nephew, Inc.*,
989 F. Supp. 2d 243 (S.D.N.Y. 2013)....................................................................................9

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................................15

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008)..................................................................................12

*In re Gentiva Sec. Litig.*,
　932 F. Supp. 2d 352 (E.D.N.Y. 2013) .......................................................................17

*In re Livent, Inc. Noteholders Sec. Litig.*,
　151 F. Supp. 2d 371 (S.D.N.Y. 2001)........................................................................20

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
　501 F. Supp. 2d 452 (S.D.N.Y. 2006)..................................................................12, 14

*In re Merrill Lynch Ltd. P'ships Litig.*,
　7 F. Supp. 2d 256 (S.D.N.Y. 1997) ..........................................................................22

*In re Mindbody, Inc. Sec. Litig.*,
　489 F. Supp. 3d 188 (S.D.N.Y. 2020)..................................................................13, 17

*In re Philip Morris Int'l Inc. Sec. Litig.*,
　89 F.4th 408 (2d Cir. 2023) ......................................................................................20

*In re Wachovia Equity Sec. Litig.*,
　753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................................12

*Jackson v. Abernathy*,
　960 F.3d 94 (2d Cir. 2020)........................................................................................22

*Jackson v. Halyard Health, Inc.*,
　2018 WL 1621539 (S.D.N.Y. Mar. 30, 2018) ..........................................................13

*Kalnit v. Eichler*,
　264 F.3d 131 (2d Cir. 2001)......................................................................................12

*Mavashev v. Kaldykulov*,
　2024 WL 1345802 (E.D.N.Y. Mar. 30, 2024)..........................................................18

*Meyer v. Organogenesis Holdings Inc.*,
　727 F. Supp. 3d 368 (E.D.N.Y. 2024) ......................................................................17

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
　11 F.4th 90 (2d Cir. 2021) ........................................................................................10

*Plumbers Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*,
　753 F. Supp. 2d 166 (S.D.N.Y. 2010)........................................................................14

*Ret. Sys. of Gov't of the V.I. v. Blanford*,
　794 F.3d 297 (2d Cir. 2015)......................................................................................18

*Rynasko v. New York Univ.*,
　63 F.4th 186 (2d Cir. 2023) ........................................................................................9

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009)...............................................................................................11

*Saraf v. Ebix, Inc.*,
632 F. Supp. 3d 389 (S.D.N.Y. 2022).............................................................................11

*Sills v. United Nat. Foods*,
2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024)................................................................21

*Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*,
771 F. App'x 494 (2d Cir. 2019) (Summary Order) ..........................................................9

*Sun v. TAL Educ. Grp.*,
2023 WL 6394413 (S.D.N.Y. Sept. 29, 2023)................................................................15

*Tellabs Inc. v. Makor Issues & Rts. Ltd.*,
551 U.S. 308 (2007).........................................................................................................11

## STATUTES

15 U.S.C.
§ 78b(b)............................................................................................................................10
§ 78u-4(b)...................................................................................................................10, 11

## RULES

Fed. R. Civ. P.
9(b)..................................................................................................................................10
15.................................................................................................................................9, 19

Defendants BioXcel Therapeutics, Inc. ("BioXcel"), Vimal Mehta, Richard Steinhart, and Robert Risinger (collectively, "Defendants") submit this memorandum of law in opposition to Plaintiffs' Motion for Leave to Amend (Dkt. 141, the "Motion," cited as "Mot.").[1]

## I.       PRELIMINARY STATEMENT

Plaintiffs' Motion asks for yet another chance to correct pleading deficiencies originally identified in the Court's July 11, 2024 Dismissal Order (Dkt. 128) (the "Dismissal Order"). In its order dismissing the First Amended Complaint ("FAC"), the Court held that Plaintiffs failed to establish all but two of the statements they challenged were false or misleading, and that Plaintiffs had not pled a strong inference of Defendants' scienter as to the remaining statements. Plaintiffs then filed a Second Amended Complaint ("SAC"), but for the reasons set forth in Defendants' pending motion to dismiss, Dkt. 134, the new allegations in the SAC still failed to show that BioXcel's TRANQUILITY II trial data was certain to be rejected by FDA, and thus still failed to plead a viable scienter theory. Plaintiffs now request leave to file a Proposed Third Amended Complaint ("Proposed Complaint"), which features new allegations from former employees of Segal Trials, a clinical research group that managed certain TRANQUILITY II trial sites, who allege that their colleagues engaged in regulatory and ethical violations in conducting the TRANQUILITY II trial. These allegations still do not remedy the failings of Plaintiffs' prior complaints.

Plaintiffs' Motion makes several accusations against BioXcel (and characterizations of their new allegations) that are untethered from any factual support in the Proposed Complaint. A review of the actual allegations in Plaintiffs' Proposed Complaint reveals the futility of Plaintiffs' amendments. Plaintiffs propose to add several new paragraphs reciting opinions from former

---

[1] All emphases added, and internal quotations, citations, and alterations omitted, unless otherwise noted.

employees of Segal Trials, who believe that their employer did not train them well enough and committed certain regulatory violations to achieve BioXcel's enrollment goals. For at least one of those former employees, his or her concerns were serious enough to report to FDA (though that former employee does not allege reporting his or her concerns to any Defendant), and thereafter, FDA conducted the investigation that has been a focus of this case from the get-go. But that is not enough to plead that Defendants violated the federal securities laws. Under the PSLRA, Plaintiffs must plead—with particularity—facts indicating that Defendants had actual knowledge of the conduct alleged by the former employees (or that it was so obvious Defendants must have been aware of it), and that these facts contradicted their contemporaneous public statements. The Proposed Complaint fails to provide *actual facts* to reach the conclusions and inferences Plaintiffs urge.

The remainder of Plaintiffs' new allegations are likewise insufficient to change the outcome of the Court's Dismissal Order. First, Plaintiffs vainly attempt to cast allegations regarding BioXcel's push to enroll the TRANQUILITY II trial as impliedly authorizing Segal Trials to engage in the enrollment practices alleged by certain of the new confidential witnesses. But while Plaintiffs may plead that BioXcel—like most (or all) sponsors—wanted to enroll TRANQUILITY II swiftly so that it could generate the data from the study in support of its development program, Plaintiffs fail to plead any facts demonstrating that BioXcel directed anyone at Segal Trials to accomplish its enrollment goals by the means alleged by the new confidential witnesses. *See, e.g.,* ¶ 284.[2]

Next, Plaintiffs tout their new allegation that FDA issued an Establishment Inspection Report ("EIR") on August 1, 2024—many months after Dr. Meyer's response to FDA's December

---

[2] Cites to ¶ __ refer to Plaintiffs' Proposed Complaint, Dkt. 142-1.

2

2022 Form 483 Letter (the "Meyer Response"). But if this allegation is relevant to the inference that can be drawn regarding Defendants' scienter months earlier, it supports the *non-culpable* inference of scienter, not the other way around. According to CW8, he or she reported "serious concerns" regarding Segal Trials and Dr. Meyer to FDA in September and October 2022. ¶ 57. Later, in December 2022, FDA conducted its inspection that led to the Form 483 Letter and the Meyer Response. But the FDA webpage Plaintiffs reference in the Proposed Complaint indicates that when FDA issued its EIR on August 1, 2024, FDA not only closed its investigation, but also determined that *no further regulatory action was necessary*. In other words, this development (1) underscores that it would have been reasonable for Defendants to believe that the Meyer Response adequately addressed FDA's concerns in the Form 483—because that is also the conclusion FDA reached, and (2) further undermines the reliability of CW8—the star "witness" in the Proposed Complaint.

Finally, as in the SAC, Plaintiffs continue to bootstrap additional post-class period statements made by BioXcel to allege that TRANQUILITY II's inevitable failure is evidenced by BioXcel's upcoming trial, TRANQUILITY In-Care, which Plaintiffs cast as a "redo" of TRANQUILITY II. But these new allegations actually undermine Plaintiffs' theory, because the post-class period statements on which they are based make clear that TRANQUILITY In-Care is intended to expand upon—not replace—TRANQUILITY II.

Having failed for a third time to plead securities fraud, Plaintiffs' Motion should be denied, and the Court should grant Defendants' pending motion to dismiss the SAC with prejudice.

3

## II.    BACKGROUND[3]

### A.    Procedural Background

On June 29, 2023, BioXcel disclosed that it had just learned that Dr. Caitlin Meyer, a principal investigator at one of the clinical sites conducting BioXcel's phase three trial for its drug BXCL501, TRANQUILITY II, fabricated email correspondence regarding a serious adverse event at the trial site where she worked. ¶ 236. Along with the news of the fabricated email, BioXcel disclosed that Dr. Meyer's employer, Segal Trials, provided the email to FDA during an inspection of the applicable trial site. ¶¶ 169, 173, 236. It further disclosed that in connection with the inspection, FDA had issued a Form 483 to Dr. Meyer detailing its observations at the site, that Dr. Meyer had responded to the Form 483, and that no further action had been taken. ¶ 185; Dkt. 142-2 (Form 483); Dkt. 142-3 (Meyer Response). BioXcel's stock dropped following the announcements, and this lawsuit followed.

On December 5, 2023, Plaintiffs filed their FAC, alleging that BioXcel and its executives made eighteen statements between December 7, 2022, and June 14, 2023 that were actionably false or misleading under Section 10(b) of the Securities Exchange Act. Dkt. 90. On July 11, 2024, the Court issued a thorough opinion determining that Plaintiffs had failed to adequately plead that all but two of the eighteen challenged statements were false or misleading. With respect to the two remaining statements,[4] the Court held that Plaintiffs' reliance on "vague" confidential witness

---

[3] For a complete description of the relevant allegations and events, Defendants respectfully refer the Court to the "Background" section of their Motion to Dismiss the Second Amended Complaint ("Second MTD"), Dkt. 134-1 at 6-14. The abbreviated "Background" section in this brief discusses the procedural background and new allegations in the Proposed Complaint that are most relevant to the Court's consideration of Plaintiffs' Motion.

[4] The Court held that Plaintiffs adequately pled falsity for the following risk disclosure in BioXcel's 2022 10-K, dated March 16, 2023:

> "We rely on third parties to conduct our preclinical and clinical trials. If these third parties do not successfully perform their contractual legal and regulatory duties or meet expected deadlines, we may not be able to obtain regulatory approval for or commercialize our product candidates and our business could be substantially harmed.

allegations "generally untethered from the Individual Defendants and the statements at issue," among other allegations, failed to establish a "strong inference" of scienter as required by the PSLRA and binding case law. Dismissal Order at 42. The Court granted Plaintiffs leave to file an amended complaint to attempt to cure their pleading deficiencies. *Id.* at 44.

Plaintiffs filed the SAC on August 1, 2024, Dkt. 130, which Defendants moved to dismiss on September 6, 2024. Dkt. 134. The SAC challenges just six statements: (i) Dr. Mehta's comment on a March 9, 2023 earnings call that "[t]he TRANQUILITY II trial is 'fully enrolled'" (SAC ¶ 209); (ii) a similar statement in BioXcel's 2022 10-K (dated March 16, 2023) that "patient enrollment is complete for TRANQUILITY II" (*id.* ¶ 211); (iii) BioXcel's 2022 10-K risk disclosure about its reliance on third parties for clinical trials (*id.* ¶ 213); (iv) BioXcel's 2022 10-K cash runway projections (*id.* ¶ 216); (v) Dr. Risinger's statement on May 9, 2023 that TRANQUILITY II "is completed" (*id.* ¶ 223); and (vi) Dr. Mehta's optimism regarding submission of a supplemental new drug application ("sNDA") at a healthcare conference on June 8, 2023 (*id.* ¶ 225). While Defendants' motion remains pending, Plaintiffs filed the instant motion for leave to amend their complaint a third time. Dkt. 141.

### B.    The Proposed Third Amended Complaint

The Proposed Complaint challenges the same six statements as the SAC. *See* ¶¶ 259-79. The "new" allegations fall into four categories: (1) accounts from four new confidential witnesses ("CWs"), all low-level, former employees of Segal Trials who worked at Dr. Meyer's trial site,

---

. . .

If we or any of our CROs fail to comply with applicable GCPs, the clinical data generated in our clinical trials may be deemed unreliable and the FDA, the EMA or comparable foreign regulatory authorities may require us to perform additional clinical trials before approving our marketing applications."

Dismissal Order at 22. The Court also found that Plaintiffs' FAC sufficiently pled falsity for Dr. Risinger's May 9, 2023 statement that TRANQUILITY II was "completed." *Id.* at 31.

5

describing alleged protocol and regulatory violations by Dr. Meyer and Segal Trials; (2) allegations seeking to pin the blame for Segal Trials' alleged misconduct on BioXcel, by alleging that BioXcel exerted pressure on Segal Trials to enroll patients quickly; (3) additional allegations about FDA's post-Form 483 process and specifically, FDA's issuance of an EIR; and (4) additional allegations regarding the purported significance of BioXcel's TRANQUILITY In-Care trial.

### 1.      Confidential Witness Allegations

Confidential Witness 8.  The majority of Plaintiffs' new allegations come from CW8, who the Proposed Complaint describes as a Segal Trials employee who worked as a "Clinical Rater" at Dr. Meyer's site.  ¶ 50.  CW8 alleges that during the TRANQUILITY II trial, Dr. Meyer fabricated episodes of agitation, made false diagnoses, manipulated symptom ratings to support ineligible patients' enrollment in the trial, and coerced employees into participating in these unethical practices.  ¶¶ 51-67.  When CW8 allegedly expressed concerns to Segal Trials, CW8 allegedly learned that "Segal Trials had already been aware of these issues," and had "not taken any actions to address them."  ¶ 56.  CW8 also allegedly notified FDA of his or her "numerous concerns with Dr. Meyer's management" practices, and "details about the compliance and ethical violations occurring within TRANQUILITY II," in September and October 2022, before FDA conducted its inspection of Dr. Meyer's trial site in December 2022.  ¶¶ 58, 61.  CW8 does not allege ever raising any concerns to the Defendants.  CW8 vaguely alleges that "BioXcel actively monitored the enrollment data and results of TRANQUILITY II," but in support, merely alleges that BioXcel would send emails about BioXcel's stock price.  ¶ 69.  CW8 also recalls "townhall meetings attended by members of BioXcel," but does not allege what was discussed at those meetings.  *Id.*

Confidential Witness 9.  CW9 worked as a "Clinical Research Coordinator ('CRC') and Rater" for Segal Trials on the TRANQUILITY II clinical trial.  ¶ 70.  CW9 alleges he or she left

6

Segal Trials in November 2022—before the December FDA inspection of Dr. Meyer's site—because of discomfort "about their supervisor's willingness to engage in regulatory and ethical violations." ¶ 71. CW9 alleges that Segal Trials was "really fixed on quick enrollment," and alleges that his or her supervisors directed him or her to enroll patients "no matter what it takes." ¶¶ 71-73. CW9 vaguely contends that the pressure from Segal Trials to enroll patients somehow "spoke to the agreement between BioXcel and Segal Trials." ¶ 73. CW9 opines that "the agreement between BioXcel and Segal was that they were going to enroll, I wanna say, like 70% of the trial—which was, honestly, kind of unheard of." *Id.*

Confidential Witness 10. CW10 worked as a "Project & Clinical Rater Director" for Segal Trials. ¶ 76. CW10 does not allege any regulatory or ethical violations that occurred in the course of the TRANQUILITY II trial. CW10 alleges he or she provided Dr. Mehta with TRANQUILITY II updates "pretty much every week," ¶ 77, and that during FDA's inspection in 2022, CW10 met with Dr. Mehta "every single day," ¶ 78. Despite the supposed frequency of this contact, CW10 does not allege what information was contained in these "updates" or discussed in the meetings with Dr. Mehta. Instead, CW10 makes the sweeping assertion that Dr. Mehta knew "'pretty much everything' about the problems with TRANQUILITY II." ¶ 78.

Confidential Witness 11. CW11 worked as a Clinical Research Coordinator for Segal Trials. ¶ 79. CW11 alleges that he or she witnessed regulatory violations in connection with the TRANQUILITY II trial, including dishonest reporting and a lack of sufficient oversight from Dr. Meyer. ¶¶ 80-81. CW11 also alleges that Segal Trials personnel "were not properly trained," which resulted in the identification of "consistent errors" throughout the trial. ¶¶ 82-84. CW11 alleges that a Segal Trials Clinical Research Associate ("CRA") attempted to intervene, but that

the CRA's effort fell on "deaf ears." ¶ 85.  CW11 allegedly was "let go" after "a communication breakdown." ¶ 86.  CW11 makes no allegation specific to any Defendant.

### 2.    Other New Allegations

In a new section of the Proposed Complaint, entitled "BioXcel Hired Segal Trials to Accelerate the Trial," Plaintiffs allege that Dr. Meyer and Segal Trials went to improper lengths to ensure speedy enrollment of study participants.  *See* ¶¶ 146-152.  While Plaintiffs allege that "Segal Trials was attempting to accelerate TRANQUILITY II at BioXcel's directive," ¶ 152, Plaintiffs do not allege any facts supporting that BioXcel directed Segal Trials to accelerate enrollment by the means alleged by any of the new confidential witnesses (or by any other improper means).

Plaintiffs next plead that on August 1, 2024, FDA issued its EIR and published its final classification of the investigation that produced the Form 483 at issue in this case.  ¶ 195.  Plaintiffs allege that the "full eighteen months" between the original investigation and the EIR shows that Dr. Meyer's response to the Form 483 was unsatisfactory.  *Id*.  However, according to the FDA webpage Plaintiffs reference in the Proposed Complaint to support this allegation, FDA classified the investigation as "VAI," or "Voluntary Action Indicated," *see* Ex. 1 at 3, 5,[5] meaning that "***the agency is not prepared to take or recommend any administrative or regulatory action***" as a result of the observations in the Form 483, Ex. 2 at 2; *see also* Ex. 3 at 3 (explaining that "Voluntary Action Indicated" means that although "the inspection found objectionable conditions or practices"

---

[5] Plaintiffs do not include a citation for the webpage, but it is the Inspections Dashboard, *available at* https://datadashboard.fda.gov/ora/cd/inspections.htm.  The FDA Establishment Identifier ("FEI") number to search for the inspection at Dr. Meyer's trial site is 3024668889.  *See* Ex. A to SAC (Form 483 with FEI number).

described in the Form 483, FDA "determined the facility can voluntarily correct its deficiencies and will not recommend any action").[6]

Finally, as in the SAC, the Proposed Complaint incorporates additional post-class period allegations from BioXcel's SEC filings, earnings calls, and press releases that detail purported similarities between the TRANQUILITY II and TRANQUILITY In-Care clinical trials.  ¶¶ 215-234.  For example, the Proposed Complaint includes Vincent O'Neil's August 6, 2024 statement that BioXcel designed TRANQUILITY In-Care to be "substantially similar to TRANQUILITY II."  ¶¶ 228.  As reflected below, BioXcel's public statements referenced in the Proposed Complaint further indicate that TRANQUILITY In-Care is intended to expand upon, not substitute for, the TRANQUILITY II data.

## III.    LEGAL STANDARD

Although Rule 15(a) provides that courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Friedman v. Bloomberg, L.P.*, 2022 WL 1004578, at \*1 (D. Conn. Apr. 4, 2022) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)).  "To determine whether a proposed amendment is futile, courts analyze whether it would withstand a motion to dismiss." *Brown v. Montefiore Med. Ctr.*, 2022 WL 392313, at \*2 (S.D.N.Y. Feb. 9, 2022); *accord Steamfitters' Indus. Pension Fund v. Endo Int'l PLC,* 771 F. App'x 494, 495 (2d Cir. 2019) (Summary Order) ("We

---

[6] As the Court has recognized, it may consider the FDA webpages attached as Exhibits 1-3 under the judicial notice doctrine.  *See* Dismissal Order at 10 (taking judicial notice of statistics from FDA website, and citing *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023)).  For the avoidance of doubt, Defendants request judicial notice only as to the facts contained therein, which do not require the drawing of any inferences.  *See, e.g., Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 250 n.6 (S.D.N.Y. 2013) (taking judicial notice of FDA decision).

assess futility as we would a motion to dismiss, determining whether the proposed complaint contains enough facts to state a claim to relief that is plausible on its face.").

## IV.    ARGUMENT

The Court should deny Plaintiffs' motion for leave to amend as futile, because Plaintiffs' Proposed Complaint fails to state a claim for securities fraud. "To state a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), a plaintiff must plead (1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Dismissal Order at 14-15 (citing *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021)). The strict pleading requirements of Rule 9(b) require Plaintiffs to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and to "explain why the statements were fraudulent," *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, the PSLRA requires Plaintiffs to "state with particularity," among other things, specific "facts giving rise to a strong inference" that each defendant acted with the required intent to defraud—*i.e.*, "scienter." 15 U.S.C. § 78u-4(b).

### A.    Leave To Amend Should Be Denied As Futile Because The Proposed Complaint Fails To Plead A Strong Inference Of Scienter[7]

To plead scienter, Plaintiffs must allege (1) that defendants had the "motive and opportunity to commit fraud," or (2) "strong circumstantial evidence of conscious misbehavior or

---

[7] Herein, Defendants demonstrate why amendment is futile by analyzing the Proposed Complaint's failure to cure the scienter pleading deficiencies identified by the Court in its Dismissal Order, as Plaintiffs' failure to plead a strong inference of scienter in the Proposed Complaint is alone sufficient to render Plaintiffs' motion futile. Defendants otherwise renew their falsity and loss causation arguments as articulated in the Second MTD with respect to Plaintiffs' six remaining challenged statements. *See* Dkt. 134-1 at 14-27, 38-40. Should the Court permit Plaintiffs to file the Proposed Complaint, Defendants reserve their rights to move to dismiss the Proposed Complaint on any basis, including that the Proposed Complaint fails to plead an actionable false or misleading statement and fails to allege loss causation.

10

recklessness." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022).  Plaintiffs must state with particularity the facts evidencing scienter, *i.e.*, "the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 313 (2007) (citation omitted); *see* 15 U.S.C. § 78u-4(b)(2).  In order for an inference of scienter to qualify as "strong," it "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Dismissal Order at 35 (citing *Tellabs*, 551 U.S. at 314).

In the Dismissal Order, the Court held that Plaintiffs failed to plead scienter.  Dismissal Order at 42.  The Proposed Complaint would compel the same outcome.

### 1. Plaintiffs' New Allegations Do Not Plead Conscious Misbehavior Or Recklessness

To plead "conscious misbehavior," Plaintiffs must plausibly allege Defendants had "actual knowledge" of the information contradicting their alleged misleading statements.  *Saraf v. Ebix, Inc.*, 632 F. Supp. 3d 389, 397 (S.D.N.Y. 2022).  Meanwhile, to establish recklessness, Plaintiffs must allege particularized facts establishing "a state of mind approximating actual intent, and not merely a heightened form of negligence."  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).  To meet this bar, Plaintiffs must allege conduct that is "highly unreasonable" and that represents such "an extreme departure from the standards of ordinary care" that the danger of misleading investors was "*either known to the defendant or so obvious that the defendant must have been aware of it*."  *Id.* (emphasis original).  Finally, where, as here, Plaintiffs fail to plead motive,[8] they must "produce a stronger inference of recklessness" and "the strength of the circumstantial allegations must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d

---

[8] The Proposed Complaint does not amend Plaintiffs' allegations regarding Defendants' "motive and opportunity to commit fraud."  As set forth in Defendants' Second MTD, Plaintiffs' motive allegations fail as a matter of law.  *See* Dkt. 134-1, at 35-40.  Defendants incorporate those arguments here.

11

131, 142-43 (2d Cir. 2001).  Just as with Plaintiffs' First and Second Amended Complaints, the Proposed Complaint is completely devoid of a single well-pled fact alleging that Defendants were aware of, or recklessly disregarded, any information that contradicted their public statements.  *See* Dismissal Order at 42; Second MTD at 33.  While Plaintiffs' latest CW allegations assert misconduct at Segal Trials more directly than previous iterations of the complaint, Plaintiffs utterly "fail to connect the misconduct or knowledge of the misconduct to any of the individual named defendants."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006).  And the remainder of the "new" allegations do even less to tip the scale towards a strong inference of scienter.

>    a.    **The New CWs[9] Do Not Plead That Defendants Were Aware Of Or Recklessly Disregarded Segal Trials' Alleged Misconduct**

At the outset, Plaintiffs contend that because Defendants "received direct updates from Segal Trials," they "were aware of the protocol violations occurring within the TRANQUILITY II trial."  Mot. at 3; *see also* ¶ 276 ("Defendants, including Mehta in particular, received updates regularly from Segal Trials and therefore knew about or recklessly disregarded the protocol violations occurring in the enrollment process.").  That is a non-sequitur, and it is not what the CW allegations actually say (or support).  Three of the four new CWs (8, 9, 11) do not allege having ever communicated with the Individual Defendants—or anyone else at BioXcel.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (rejecting allegations from CWs who never alleged they "met the Individual Defendants, reported any concerns, received any instructions, or made any personal contact with them during the Class Period."); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 221 (S.D.N.Y. 2008) (confidential witnesses who "do[] not

---

[9] The Proposed Complaint repeats the FAC and SAC's allegations from CWs 1-7.  For the reasons described in the Dismissal Order and in the Second MTD, these allegations are insufficient to establish a strong inference of scienter.

ordinarily participate in discussions with [Company] executives" do not support an inference of recklessness).

CW10 is the only one who alleges any direct contact with an Individual Defendant, alleging that Dr. Mehta received "updates" regarding TRANQUILITY II. *See* ¶ 78. But despite CW10's claims to have provided Dr. Mehta with weekly updates, and to have met with Dr. Mehta every day during the FDA inspection in December 2022, ¶ 78, CW10 does not provide a single fact about what was discussed with Dr. Mehta, much less say that protocol violations were communicated to Dr. Mehta. *See Jackson v. Halyard Health, Inc.*, 2018 WL 1621539, at *9 (S.D.N.Y. Mar. 30, 2018) (CW allegations of meetings with senior management fail to support strong inference of scienter where they do not "include any specific allegations as to the information actually discussed at the alleged meetings"). Instead, CW10 offers only a vague, meaningless statement that Dr. Mehta "had known 'pretty much everything' about the problems with TRANQUILITY II." ¶ 78. But the Proposed Complaint does not put forth any theory of how CW10, a "Project & Clinical Rater Director" for Segal Trials (one of several vendors with whom BioXcel contracted with to conduct the TRANQUILITY II trial) was in a position to know that BioXcel's CEO knew "*pretty much everything*" about "problems" with TRANQUILITY II. *See In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 204-05 (S.D.N.Y. 2020) (stating requirement that CWs be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged," and rejecting CW allegations where CW lacked "direct knowledge" of the challenges at issue). Moreover, this statement is exactly the type of "quite vague and conclusory" allegation that the Court previously found insufficient to plead scienter. Dismissal Order at 42 (rejecting prior CW statements).

13

Plaintiffs' other new CW allegations fare no better. CW8 alleges that he or she witnessed a range of improper practices at Segal Trials and by Dr. Meyer, and opines that these practices resulted in the enrollment of ineligible patients in TRANQULITY II. *E.g.*, ¶ 58. While CW8 alleges that he or she shared "serious concerns" with both Segal Trials and FDA (prior to FDA's inspection), ¶ 57, CW8 never alleges to have spoken with any of the Defendants, or that Defendants were made aware of CW8's concerns. Instead, CW8 merely alleges that "BioXcel actively monitored the enrollment data and results of TRANQUILITY II." ¶ 69. But tellingly, as support for that conclusion, CW8 claims that BioXcel sent CW8 and other Segal Trials employees emails about BioXcel's stock price, which CW8 found odd. *Id*. Accepting this allegation as true, it is unclear how such activity supports CW8's statement that BioXcel actively monitored the enrollment data and trial results. And even if BioXcel did monitor the data and results (as most sponsors would), this amounts to nothing more than an allegation that Defendants'—via their active monitoring—"should have known" of the alleged protocol violations, which is insufficient. *See Plumbers Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 185-86 (S.D.N.Y. 2010) (allegations that defendants "monitored" data did not "give rise to a strong inference of scienter in the absence of any particularized allegation" that defendants actually possessed "contrary information"). In fact, CW8's own allegation that Dr. Meyer manipulated "the paperwork and data" BioXcel monitored to "***support*** a patient's enrollment in the trial," ¶ 62, negates an inference that BioXcel's alleged monitoring should have put the Company on notice of ineligible (if any) patients. CW8 also alleges that BioXcel employees, including Dr. Risinger, attended town hall meetings, ¶ 69, but does not include any facts about what was discussed at those meetings. *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d at 484 (Plaintiffs

must show "specific contradictory information was available to the defendants at the same time they made their misleading statements.").

CW9's opinion that it was "kind of unheard of" for Segal Trials to enroll 70% of potential trial participants, ¶ 73, is akin to Plaintiffs' (already rejected) allegation from CW1 that it was "strange" that "40% of patients would be" with Dr. Meyer, SAC ¶ 18. *See* Dismissal Order at 42. CW9's personal views on what is heard of (or not) in the conduct of clinical trials simply are not "probative of [D]efendants' mental state." *See Sun v. TAL Educ. Grp.*, 2023 WL 6394413, at *31 (S.D.N.Y. Sept. 29, 2023); *see also* Dismissal Order at 42 (rejecting similar CW allegations as "untethered from the Individual Defendants and the statements at issue"). Likewise, CW11's opinions—that Segal Trials did not properly train its allegedly inexperienced employees and had deficient record-keeping practices—are likewise irrelevant to the Court's consideration of any Individual Defendant's state of mind in connection with any particular challenged statement. ¶¶ 80-82. At bottom, Plaintiffs' attempts to plead Defendants' knowledge boil down to their contention that it would "strain credulity" that Defendants were unaware of Segal Trial's alleged misconduct (Mot. at 14-15). This is akin to an argument that Defendants "should have known" about the alleged misconduct, which as noted above, does not plead scienter. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011) ("mere allegations that defendants 'would have' or 'should have' had such knowledge is insufficient").

Despite proposed allegations from four new CWs—which constitute Plaintiffs' primary basis for their Proposed Complaint—Plaintiffs still have not set forth any well-pled facts (as opposed to vague and conclusory statements) alleging that any Individual Defendant had knowledge of information that directly contradicted the challenged public statements at the time they were made. Plaintiffs' string citations to cases featuring defendants who *did* actually know

15

of negative information contradicting their own statements thus remain inapt. *See* Mot. at 14-15. In *Salzman v. ImmunityBio, Inc.*, the defendants were allegedly "well-informed" of severe deficiencies with Good Manufacturing Practices ("GMP") but nonetheless told investors that they were "not experiencing GMP difficulties" and "had in fact established GMP manufacturing capacity at scale." 2024 WL 3100274, at *11-12 (S.D. Cal. June 20, 2024). In *Rosi v. Aclaris Therapeutics, Inc.*, the defendants continued to engage in a marketing campaign after being directed by FDA to stop the campaign because the claims made in the campaign were misleading. 2021 WL 1177505, at *16 (S.D.N.Y. Mar. 29, 2021). In *In re Able Laboratories Securities Litigation*, the defendants claimed they were fully compliant with FDA requirements despite failing to "investigat[e] or follow[] up" on a Form 483 and subsequent warning letter. 2008 WL 1967509, at *15-17. In *In re Emergent BioSolutions Inc. Securities Litigation*, the complaint alleged that CWs personally informed the defendants about problems with a facility and that the issues were not improved following the issuance of a Form 483. 2023 WL 5671608, at *13-26 (D. Md. Sept. 1, 2023). And in *Todd v. STAAR Surgical Co.*, the court held that the defendants were plausibly aware of issues before the issuance of a 2014 Form 483 because the defendants had failed to correct a Form 483 they received in 2013, and an FDA inspector discussed the issues with management prior to the issuance of the 2014 Form 483. 2016 WL 6699284, at *13 (C.D. Cal. Apr. 12, 2016).

        b.        **Allegations That BioXcel Desired To Quickly Enroll the TRANQUILITY II Trial Are Insufficient To Plead Scienter**

Plaintiffs' proposed allegations regarding BioXcel's desire for speedy enrollment in TRANQUILITY II fare no better. *See* ¶¶ 146-52 ("BioXcel Hired Segal Trials To Accelerate The Trial"). Plaintiffs attempt to connect their allegations of Segal Trials' misconduct to BioXcel, asserting that "[b]y fabricating enrollment and trial data, Segal Trials was attempting to accelerate

16

TRANQUILITY II at BioXcel's directive." ¶ 152.  Plaintiffs do not even allege who at BioXcel directed this acceleration of enrollment, but more importantly, Plaintiffs do not allege "that any of the [Individual] Defendants were [ ] aware of the practice[s]" described by the CWs that Segal Trials allegedly employed to hasten enrollment.  *See In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 378, 380 (E.D.N.Y. 2013) (rejecting CW allegations that failed to plead executives' knowledge as "insufficient to allege scienter"); *see also Meyer v. Organogenesis Holdings Inc.*, 727 F. Supp. 3d 368, 397 (E.D.N.Y. 2024) (no scienter where plaintiffs "failed to connect the Individual Defendants" to the alleged illegal scheme).  These allegations thus add nothing to Plaintiffs' existing "quite vague and conclusory" CW allegations that senior management at BioXcel "put a lot of stress on the clinical team[] to . . . get people enrolled," ¶ 21 (CW1), and that C-suite level executives "thought it was going to be faster, doing the [TRANQUILITY II trial] at Segal [Trials]," ¶ 26 (CW2).  *See* Dismissal Order at 42.  And for all of their allegations about how the TRANQUILITY II trial was run, Plaintiffs plead no facts to suggest that any of the CWs were "in a position to opine" on the subject.  *See Mindbody*, 489 F. Supp. 3d at 204-05 (discrediting allegations from CWs "whose knowledge is limited" and due to the nature of their roles, had no direct knowledge of the challenges the Company was experiencing).  Taken together, Plaintiffs' allegations regarding enrollment pressures simply have "no obvious connection to Plaintiffs' fraud allegation that Defendants willfully lied" about the future prospects of BXCL501.  *See Davison v. Ventrus Biosciences, Inc.*, 2014 WL 1805242, at *11 (S.D.N.Y. May 5, 2014).

Plaintiffs' Motion offers the circular argument that Defendants were aware of the newly alleged misconduct because BioXcel "incentivized Segal Trials to enroll patients in the TRANQUILITY II trial at rapid speed," is responsible for Segal Trials' "illegal behavior," and thus "knew their public statements were not accurate."  Mot. at 14.  As an initial matter, the

17

allegations of "incentives" all concern incentives provided by Segal Trials, not BioXcel.  *See* ¶¶ 54, 72 (discussing emails "from management at Segal Trials").  Moreover, the conclusion that BioXcel knew of and was responsible for (unadjudicated) "illegal behavior" does not necessarily follow from the premise that BioXcel sought speedy enrollment, absent particularized allegations that Defendants were aware that Segal Trials was achieving enrollment objectives through the allegedly inappropriate practices described in the Proposed Complaint.  *Blanford*, which Plaintiffs cite, holds that circumstantial evidence can support an inference of scienter when it shows Defendants "engaged in deliberately illegal behavior" or "knew facts or had access to information suggesting that their public statements were not accurate."  Mot. at 14 (citing *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015).  But Plaintiffs allege Segal Trials employees, not Defendants, deliberately "violat[ed] trial protocol and fraudulently enrol[led] patients into the trial that were not eligible to participate."  Mot. at 14.  Plaintiffs have not pled the existence of illegal incentives provided by BioXcel, or that a general desire to get TRANQUILITY II enrolled in a prompt fashion equates to illegal behavior or fraudulent intent.  *See id*; *c.f.* Dismissal Order at 36 ("[T]he fact that BioXcel may have been anxious about meeting its milestones as a general matter . . . does not suffice to plead a motive to commit fraud with particularity.").

        **c.**      **The Proposed Complaint's Allegations Concerning The EIR Process And The TRANQUILITY In-Care Trial Are Based On The Same Baseless Assumptions As The SAC**

Finally, Plaintiffs' Proposed Complaint includes revisions to their discredited arguments concerning the timing of FDA's issuance of an EIR and the Company's post-Class Period statements on the Tranquility In-Care trial.  As a threshold matter, any argument that these revisions support Plaintiffs' Motion is waived due to Plaintiffs' failure to mention these revisions, let alone develop such an argument, in their opening brief.  *See Mavashev v. Kaldykulov*, 2024 WL

18

1345802, at *12 (E.D.N.Y. Mar. 30, 2024) (citing cases for proposition that arguments insufficiently developed or not raised in opening brief are forfeited); *Doe v. Indyke*, 465 F. Supp. 3d 452, 468 n.8 (S.D.N.Y. 2020) (declining to consider argument not raised in opening brief); *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 2019 WL 422613, at *4 n.3 (S.D.N.Y. Feb. 4, 2019) (same).  And on the merits, these proposed revisions are futile, as they continue to rely on the same misconceptions of FDA's inspection and approval processes as the SAC.

Issuance of EIR.  In their SAC, Plaintiffs asserted that if FDA accepted the Meyer Response as sufficient, FDA would have issued an EIR for the inspection that resulted in the Form 483 within 45 days.  *See* SAC ¶¶ 115-116.  Accordingly, Plaintiffs reasoned, FDA's non-issuance of an EIR must have demonstrated the insufficiency of the response (and thus, Defendants' knowledge of that insufficient response), upon the expiration of the 45 days.  *See* SAC ¶ 150.  Plaintiffs' Proposed Complaint now acknowledges, as it must, that the EIR *has* been issued, but alleges that FDA's purported delay in issuing the EIR suggests the Meyer Response was inadequate.[10]  *See* ¶ 195.  As an initial matter, both variations of Plaintiffs' theory rest on a misreading of the relevant FDA Field Management Directive ("FMD").  As Defendants explained in the Second MTD, the FMD cited by Plaintiff ***does not*** require FDA to issue an EIR within 45 days of receiving a response, and Plaintiffs allege no facts that support their conjecture that Defendants should have inferred the final classification of FDA's inspection from how long that inspection remained open.  *See* Second MTD at 16-17; Second MTD Reply at 3-4.

_____

[10] Plaintiffs do not allege the contents of the EIR.  Instead, Plaintiffs state that their counsel has requested a copy of the EIR through a Freedom of Information Act request and "reserves the right to include information received in response, if any." ¶ 195 n.1.  To the extent Plaintiffs contemplate the filing of yet another amendment (their *fourth*) at some unspecified future date, Plaintiffs do not have any "right" to reserve.  As Plaintiffs themselves acknowledge, Rule 15 requires Plaintiffs to obtain leave of court if they wish to further amend their complaint.  *See* Fed. R. Civ. P. 15(a)(2); Mot. at 8 (describing standard for obtaining leave).

In any event, the Proposed Complaint belies Plaintiffs' speculation that Defendants should have equated FDA's delay in issuing an EIR with an adverse determination. Specifically, the public FDA webpage cited by Plaintiff to plead the existence of the EIR, *see* ¶ 195 n.1, states that FDA's inspection into the Form 483 issues was closed on August 1, 2024 with a classification of "Voluntary Action Indicated," Ex. 1 at 3, 5, which denotes that although "the inspection found objectionable conditions or practices" described in the Form 483, FDA "determined the facility can voluntarily correct its deficiencies and ***will not recommend any action***," Ex. 3 at 3. Taken together, the allegations in the Proposed Complaint would establish that after CW8 reported his or her "numerous concerns" to the FDA, ¶ 58: FDA inspected the trial site in December 2022 and issued a Form 483, ¶¶ 4, 282; Dr. Meyer responded, ¶ 5; and FDA eventually closed the inspection without ordering any further action, *see* Ex. 1 at 3, 5; ¶ 195 n.1.

If anything, the Proposed Complaint puts the proverbial nail in the coffin of Plaintiffs' theory: FDA's issuance of an EIR and final decision on the Form 483 refutes Plaintiffs' conjecture regarding the correlation between the length of the issuance of an EIR and an adverse outcome, and is instead consistent with the non-culpable inference that Defendants believed the Meyer Response would adequately address FDA's concerns. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted . . . by facts of which the court may take judicial notice."); *cf. In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 420-22 (2d Cir. 2023) (holding that for opinion statements, "FDA's ultimate endorsement" of a defendant's interpretation "*conclusively* establishes" the reasonableness of that defendant's beliefs (emphasis in original)).

Statements Concerning TRANQUILITY In-Care Trial. Plaintiffs also allege additional statements made by BioXcel and its executives in SEC filings and on earnings calls between

20

August 2024 and February 2025 regarding the Company's TRANQUILITY In-Care trial, in an attempt to bolster their unfounded assertion that BioXcel was forced by FDA to "repeat" the TRANQUILITY II trial because the trial's data was unusable. *See* ¶¶ 228-34. In reality, these statements demonstrate that the TRANQUILITY In-Care trial is designed to expand on, rather than replace, the TRANQUILITY II data, including by enrolling patients in a wider variety of care settings and by obtaining additional repeat-dose data. *See, e.g.*, ¶ 230 (discussing goal of obtaining "additional data" to support sNDA submission that includes patients in at-home setting); ¶ 231 (discussing goal of obtaining "additional efficacy data," including "repeat-dose efficacy data"); ¶ 234 (discussing effort to study BXCL501 "in the at-home setting"); *see also* Second MTD, Dkt. 134-1 at 35-36; Second MTD Reply, Dkt. 137 at 9. In asserting that the TRANQUILITY In-Care trial is a "repeat" of TRANQUILITY II, Plaintiffs continue to disregard their own allegations that TRANQUILITY II was intended to support an sNDA *together with TRANQUILITY III*, which was paused for unrelated reasons. *See* ¶ 109. In other words, TRANQUILITY II was never meant to support an sNDA on its own. And in any event, as with the SAC, Plaintiffs cannot explain why descriptions of post-Class Period feedback from FDA or the commencement of a new clinical trial would demonstrate scienter for statements made up to eighteen months earlier. *See* Second MTD Reply, Dkt. 137 at 9 (the "question for scienter is what information '***was available to the Defendants at the time***' they made their statements" (quoting *Sills v. United Nat. Foods*, 2024 WL 4188324, at *11 (S.D.N.Y. Sept. 13, 2024))).

**B.      The Nonfraudulent Inference Is More Compelling**

The alleged "new, highly material and relevant information" that Plaintiffs seek to add, Mot. at 1, still fails to plead an inference of scienter that is "at least as compelling as the non-culpable inference" that can be drawn from the Complaint. *See* Dismissal Order at 42. While

Plaintiffs' new CW allegations, if true, may demonstrate that former employees of Segal Trials believed their employer committed ethical and regulatory protocol violations, that is the extent of what they show.  With respect to the *Individual Defendants'* states of mind, the more compelling inference remains that they (and thus, BioXcel)[11] had no reason to believe the observations in the Form 483 or the Meyer Response called into question the integrity of the data from the TRANQUILITY II trial or BioXcel's ability to seek FDA approval using the data from this study. Plaintiffs' new allegations regarding FDA's issuance of an EIR, which point to FDA's final determination that no further action is required regarding the issues identified in the Form 483, only strengthen that inference.

### C.      Plaintiffs' Claims Should Be Dismissed With Prejudice

In light of Plaintiffs' indication that they may seek a *fourth amendment* in the future, *see* ¶ 195 n.1, Defendants renew their request that the SAC be dismissed with prejudice should the Court disallow the current proposed amendment, s*ee* Second MTD, Dkt. 134-1 at 40.  As courts in this circuit have recognized, "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges"; instead, "plaintiffs have the responsibility to plead their case adequately, without defendants' or the Court's assistance."  *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997).  Here, Plaintiffs have had "ample prior opportunity to allege a claim," *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (affirming denial of leave to amend after the plaintiff was accorded four opportunities to plead their claims), including by filing the SAC and briefing the merits of Proposed Complaint after having been put on notice by the Court of the

---

[11] Plaintiffs' failure to plead scienter for any Individual Defendant precludes their ability to plead corporate scienter as to BioXcel.  *See Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) ("[T]he 'most straightforward' way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement.").

deficiencies of their claims, *see Dickerson v. BPP PCV Owners LLC*, 2024 WL 4696088, at \*3 (S.D.N.Y. Nov. 6, 2024) (denying leave to amend due to the plaintiff's "repeated failure to address deficiencies of her legal claims").  Under these circumstances, permitting any further amendment would only serve to delay the resolution of this action and impose additional expenses on Defendants, who have already incurred significant costs in defending this action.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated: March 17, 2025
      San Diego, CA

Respectfully submitted,

LATHAM & WATKINS LLP

By:    */s/ Colleen C. Smith*
      Colleen C. Smith (*pro hac vice*)
      12670 High Bluff Drive
      San Diego, CA 92130
      Tel: (858) 523-5400
      Fax: (858) 523-5450
      Email: colleen.smith@lw.com

      Jessica Bengels [ct29396]
      1271 Avenue of the Americas
      New York, NY 10020
      Tel: (212) 906-1200
      Fax: (212) 751-4864
      Email: jessica.bengels@lw.com

      Michele D. Johnson (*pro hac vice*)
      650 Town Center Drive, 20th Floor
      Costa Mesa, CA 92626
      Tel: (714) 540-1235
      Fax: (714) 755-8290
      Email: michele.johnson@lw.com

      Sarah Tomkowiak (*pro hac vice*)
      555 Eleventh Street, NW, Suite 1000
      Washington, D.C. 20004
      Tel: (202) 637-2200
      Fax: (202) 637-2201
      Email: sarah.tomkowiak@lw.com

      Meryn C. N. Grant (*pro hac vice*)
      355 South Grand Avenue
      Los Angeles, CA 90071
      Tel: (213) 485-1234
      Fax: (213) 891-8763
      Email: meryn.grant@lw.com

      *Attorneys for Defendants*

24