**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER, <br><br> Defendants. | Civil Action No.: 3:23-cv-00915-SVN |

**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY**
**AND FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT........................................................................................................3

     A.    Defendants Confuse the Standards for Granting Leave to Amend and Stating a Claim for Relief under the Exchange Act...............................................................3

     B.    Defendants' "Futility" Argument Is Premised Upon a Misguided Statement of the Law on Scienter. ...................................................................................................4

          1.    Direct Notice Is Not Required for Scienter and Is Not a Prerequisite to Liability..................................................................................................4

          2.    Defendants Cannot Evade Liability by Blaming Segal Trials and Dr. Meyer. ...................................................................................................7

          3.    The FDA Refused to Accept the TRANQUILITY II Trial Data.................8

          4.    Defendants' "Nonfraudulent Inference" Is Unconvincing. ........................9

     C.    Defendants Do Not Challenge Any Other Section 10(b) Elements.......................10

III.  CONCLUSION....................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Able Labs. Sec. Litig.*,
No. 05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538 (D.N.J. Mar. 24, 2008) ...................... 7

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*,
19 F.4th 145 (2d Cir. 2021) ................................................................................................. 4

*Cruz v. TD Bank, N.A.*,
742 F.3d 520 (2d Cir. 2013) ................................................................................................ 3

*Dayle B. v. Saul*,
No. 3:20-cv-00359 (TOF), 2021 U.S. Dist. LEXIS 80855 (D. Conn. Apr. 28, 2021) ..... 10

*Empls' Ret. Sys. of Government of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015) ............................................................................................ 5, 7

*In re Facebook, Inc.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013) ................................................................................ 9

*Frater v. Hemispherx Biopharma, Inc.*,
996 F. Supp. 2d 335 (E.D. Pa. 2014) ................................................................................. 9

*Homyk v. Chemocentryx, Inc.*,
No. 21-cv-03343-JST, 2023 U.S. Dist. LEXIS 91306 (N.D. Cal. Feb. 23, 2023) ............. 5

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
818 F.3d 85 (2d Cir. 2016) ............................................................................................... 10

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
797 F.3d 160 (2d Cir. 2015) ........................................................................................... 2, 3

*In re Moody's Corp. Sec. Litig.*,
599 F. Supp. 2d 493 (S.D.N.Y. 2009) ................................................................................ 4

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ................................................................................................ 3

*In re Pfizer Inc. Sec. Litig.*,
936 F. Supp. 2d 252 (S.D.N.Y. 2013) ................................................................................ 9

*Pommer v. Medtest Corp.*,
961 F.2d 620 (7th Cir. 1992) .............................................................................................. 9

**Page(s)**

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006)............................................................................. 3

*Rosi v. Aclaris Therapeutics, Inc.*,
    No. 19-cv-7118 (LJL), 2021 U.S. Dist. LEXIS 59670 (S.D.N.Y. Mar. 29, 2021)............. 7

*Salzman v. ImmunityBio, Inc.*, No. 23-cv-01216-GPC-VET, 2024 U.S. Dist. LEXIS 109213
    (S.D. Cal. June 20, 2024)........................................................................ 6, 7

*Sawabeh Info. Servs. Co. v. Brody*,
    832 F. Supp. 2d 280 (S.D.N.Y. 2011).............................................................. 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................. 4

*United States v. Botti*,
    711 F.3d 299 (2d Cir. 2013)....................................................................... 10

*Van Dongen v. CNinsure Inc.*,
    951 F. Supp. 2d 457 (S.D.N.Y. 2013).............................................................. 8

*Weston v. DocuSign, Inc.*,
    669 F. Supp. 3d 849 (N.D. Cal. 2023)............................................................. 6

## I.     INTRODUCTION

Second Circuit precedent allows plaintiffs in securities fraud actions to freely amend their pleadings following a court's ruling on the pleadings. This rule coincides with the general policy favoring liberal amendments and deciding cases on the merits. These considerations are all the more pertinent here where Plaintiffs' new allegations create the strong inference that Defendants acted with scienter when deciding to withhold material adverse information from investors concerning BioXcel's flagship TRANQUILITY II trial during the Class Period.

Nevertheless, Defendants argue that Plaintiffs' motion should be denied because the new allegations do not give rise to an inference of scienter. Defendants are wrong. Their argument is premised on a flawed application of the law as well as a mischaracterization of Plaintiffs' theory of liability. Plaintiffs in securities fraud actions are not required to plead "smoking-gun" evidence of scienter or otherwise prove their cases at the pleading stage. Instead, Plaintiffs only need to allege that Defendants had motive and opportunity to commit fraud or show circumstantial evidence of conscious misbehavior or recklessness. Plaintiffs do both. Between Defendant Vimal Mehta's $2.5 million proceeds from his insider stock sales and Plaintiffs' confidential witnesses describing blatant patient enrollment fraud, there should be no doubt that Defendants were acting with scienter when discussing the TRAQUILITY II trial. The protocol violations occurring under Dr. Meyer's watch exponentially elevated the regulatory risk associated with the trial. By concealing the violations and the increased risks they created, Defendants materially misled investors and violated the federal securities laws.

Defendants try to claim they were unaware of Dr. Meyer's misconduct, effectively labeling her as a "rogue employee." But this argument lacks credibility. The TRANQUILITY II trial was by far the most important clinical trial in BioXcel's past, present and future history. Its progress

dictated BioXcel's ability to access funding under its financing agreements and Dr. Meyer, perhaps more so than any other employee, was integral to its outcome as the trial's principal investigator. BioXcel had a legal obligation to monitor the trial under FDA regulation and, indeed, received weekly updates from the company that employed her, Segal Trials. Defendants' supervision of the trial only increased after the FDA issued its Form 483 Letter. Consequently, Defendants cannot credibly disclaim knowledge of the protocol violations or the increased level of regulatory risks they posed.

The significance of the protocol violations is underscored by the fact that the FDA made BioXcel re-do the TRANQUILITY II trial. Defendants respond to this allegation by claiming the subsequent "In-Care" trial was not a "re-do" but instead an "expansion" of the trial. Defendants' spin is unsupported by the facts and runs contrary to BioXcel's descriptions of its interactions with the FDA (during regulatory Type B meetings) and the protocol of the new trial (which "mirrored" the initial trial, according to Mehta). Similarly, they claim that BioXcel's receipt of an EIR (Establishment Inspection Report) approximately 18 months after the FDA's Form 483 Letter somehow vindicates them. The EIR does not remediate the protocol violations retroactively or somehow make Defendants' prior statements any less misleading. If anything, the timing of the EIR shows that it was provided in conjunction with BioXcel's agreement to re-do the TRANQUILITY II trial, thereby confirming that the protocol violations remained an open issue up until the point when BioXcel finally agreed to re-do the trial.

Defendants disregard the impact of these allegations in hopes of avoiding liability. But the standard for granting leave to amend is lenient. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiffs' motion should be granted.

II.     **ARGUMENT**

A.      **Defendants Confuse the Standards for Granting Leave to Amend and Stating a Claim for Relief under the Exchange Act.**

Plaintiffs must allege a strong inference of scienter to properly state a claim under Section 10(b) of the Exchange Act and Rule 10b-5(b). *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). That requirement, however, is not meant to interfere with the Second Circuit's policy in favor of liberally granting leave to amend and deciding cases on the merits. *See Loreley*, 797 F.3d at 190.

Denying Plaintiffs' motion for leave to amend would run contrary to routine practice within the Second Circuit, where courts recognize that plaintiffs should be given an opportunity to present a full record of facts to support their claims following an order of dismissal. *See*, *e.g.*, *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013) ("[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead[.]"); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."). Defendants appear to ignore this aspect of the case law when arguing that Plaintiffs' new allegations fail to state a claim for the "third" time. *See*, *e.g.*, Defendants' Opposition to Plaintiffs' Motion for Leave to Amend, ECF No. 143 ("Defs. Br."), p. 3. The Court ruled only once on Plaintiffs' allegations and, at that, in the context of Plaintiffs' First Amended Complaint. Plaintiffs' present request for leave to amend was not prompted by a second dismissal order but instead the discovery of new facts. These new facts make Plaintiffs' claims against Defendants even stronger than they currently appear in the Second Amended Complaint. Thus, the Proposed Third Amended Complaint should supersede the Second Amended Complaint in the proceedings in accordance with Second Circuit practice concerning amendment of the pleadings. *See Loreley*, 797 F.3d at 190 ("[w]ithout the benefit of a ruling, many

a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies"); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 518 (S.D.N.Y. 2009) ("leave to amend should be granted liberally in cases alleging securities fraud").

### B. Defendants' "Futility" Argument Is Premised Upon a Misguided Statement of the Law on Scienter.

Plaintiffs allege violations under the Securities Exchange Act of 1934 as modified by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 ("PSLRA"). While the PSLRA carries special pleading standards for fraud claims, they are not meant to create a near-impossible hurdle for plaintiffs to overcome, as Defendants would lead this Court to believe. The PSLRA does not turn the motion to dismiss into a trial by papers. All factual allegations in the complaint are still required to be accepted as true and common-sense inferences should not be disregarded. *See Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150 (2d Cir. 2021) (emphasizing that courts "must be careful not to mistake heightened pleading standards for impossible ones"). With that, it takes little to see that Plaintiffs' new allegations (from the Second and Proposed Third Amended Complaints) adequately state a claim for relief under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5(b).

### 1. Direct Notice Is Not Required for Scienter and Is Not a Prerequisite to Liability.

Defendants' futility argument focuses heavily on Plaintiffs' confidential witnesses. They argue that without direct communications between the confidential witnesses and the Individual Defendants, Plaintiffs' inference of scienter is insufficient. Def. Br. at 12. But this sort of direct "smoking-gun" evidence is not required. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) ("The inference that the defendant acted with scienter need not be irrefutable, *i.e.*,

of the smoking-gun genre, or even the most plausible of competing inferences") (internal quotations omitted). Instead, as the Second Circuit has made clear, "the scienter requirement is met where the complaint alleges facts showing either: 1) a motive and opportunity to commit the fraud; or 2) strong circumstantial evidence of conscious misbehavior or recklessness. Circumstantial evidence can support an inference of scienter in a variety of ways, including where defendants (1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Empls' Ret. Sys. of Government of the Virgin Islands v. Blanford*, 794 F.3d 297, 306 (2d Cir. 2015) (internal citations and quotations omitted).

Plaintiffs' allegations (from both the Second and Proposed Third Amended Complaints) meet the requirements for pleading scienter. They show motive and opportunity *as well as* circumstantial evidence of conscious misbehavior or recklessness. With regard to the former, Defendant Mehta sold over 130,000 shares of BioXcel stock between March 2023 and June 2023 for more than $2.5 million in profits. Proposed Third Amended Complaint (ECF No. 142-1) ("PTAC"), ¶¶332-33. These sales were predetermined in time and amount pursuant to the terms of a 10b-5 trading plan. Thus, to preserve the value of the shares and protect against losses, Mehta intentionally withheld from investors any and all adverse information about the TRANQUILITY II trial protocol violations until *after* the sales were completed. *See id.* at ¶335. These allegations alone demonstrate the motive and opportunity ordinarily required for purposes of pleading scienter. *See Homyk v. Chemocentryx, Inc.*, No. 21-cv-03343-JST, 2023 U.S. Dist. LEXIS 91306, *54 (N.D. Cal. Feb. 23, 2023) ("[W]here a corporate officer retains control over the timing of public disclosure of adverse facts — and withholds such disclosure until after their pre-planned

stock sales have occurred — such sales may still support a finding of scienter."); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 885 (N.D. Cal. 2023) (same).

In addition to motive and opportunity, Plaintiffs also allege circumstantial evidence of conscious misbehavior or recklessness. The Form 483, the Meyer Response, and the FDA's refusal to issue an EIR coalesce and give rise to the inference that Defendants unquestionably knew about or recklessly disregarded the alleged trial protocol violations during the Class Period. *See* PTAC at ¶¶286-99. Plaintiffs' new confidential witness allegations add details around the nature and breadth of the violations that were occurring, making it all the more likely that Defendants knew about them or were deliberately disregarding the fact they were occurring in hopes of completing the trial as quickly as possible. As CW8 detailed, Dr. Meyer was manipulating screening examinations to exceed enrollment targets, meaning that patients were being "enrolled" in the trial that did not qualify and should not have been included under the trial's protocol. *See id*. at ¶¶50-69. These new allegations underscore the Court's prior holding concerning the potential "'correctability'" of the protocol violations; given the severity of the violations, the likelihood of them being "correct[ed]" is virtually nil thereby making Defendants' statements even more misleading than previously alleged. *See* Order, ECF No. 128, p. 23 (quoting *Salzman v. ImmunityBio, Inc.*, No. 23-cv-01216-GPC-VET, 2024 U.S. Dist. LEXIS 109213, *28 (S.D. Cal. June 20, 2024)). In the same vein, these new allegations stand in stark contrast to, for example, Defendants "trial completion" statements and, now, are in no way consistent with what the "reasonable investor" understood. *Id*. at p. 41.

Defendants attempt to sidestep these allegations by arguing that they did not know about the protocol violations while they were occurring. Defs. Br. at 13-15. In support of their argument, Defendants cite cases holding that general "should have known" allegations are insufficient to

allege scienter. But Defendants' cases by and large do not deal with biopharmaceutical companies who, by law, are obligated to monitor clinical trials to ensure compliance with FDA-approved trial protocols. *See* PTAC at ¶¶162-66. Moreover, Defendants' cases do not involve scenarios where, as here, the FDA identifies protocol violations that lead to an internal investigation. *See id*. at ¶¶168-208. These allegations make it exceedingly likely that Defendants either "knew facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor." *Blanford*, 794 F.3d at 306.[1]

### 2.      Defendants Cannot Evade Liability by Blaming Segal Trials and Dr. Meyer.

Defendants no longer try to downplay the protocol violations as mere "documentation issues" (*see* Transcript, ECF No. 129, p. 82:14-16), but instead change tack with an attempt at scapegoating Dr. Meyer as a rogue employee (Defs. Br. at 16-18). This argument lacks credibility. Dr. Meyer was BioXcel's principal investigator for the company's most important drug; indeed, the success or failure of the TRANQUILITY II trial dictated whether and to what extent BioXcel would be able to continue as a going concern under its financing arrangements with its two largest investors, Oaktree Capital Management and the Qatar Investment Authority. *See* PTAC at ¶¶309-11, 321-25. Given the importance of the trial, Defendants of course paid close attention to every development and especially its progress in terms of enrollment. This explains why Dr. Meyer's

---

[1] Plaintiffs cited the following cases in their opposition to Defendants' pending motion to dismiss, which remain applicable and persuasive in terms of illustrating the alleged theory of scienter. *See*, *e.g.*, *Salzman*, 2024 U.S. Dist. LEXIS 109213, at *35-38 (scienter where defendants concealed Form 483 and related manufacturing deficiencies); *Rosi v. Aclaris Therapeutics, Inc.*, No. 19-cv-7118 (LJL), 2021 U.S. Dist. LEXIS 59670, *67-69 (S.D.N.Y. Mar. 29, 2021) (allegations that Defendants "knew facts or had access to information suggesting that their public statements were not accurate" were made where allegations "had access to the FDA letters and were aware of internal concerns about misleading marketing"); *In re Able Labs. Sec. Litig.*, No. 05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538, *56-57 (D.N.J. Mar. 24, 2008) (Form 483 and warning letter "provided notice to the defendants that serious problems existed in the manufacturing process" and failure to investigate was an "extreme departure from the standards of ordinary care" demonstrating recklessness).

company, Segal Trials, provided Defendant Mehta with weekly updates on the trial followed by daily updates once the FDA commenced its inspection. *See id*. at ¶¶76-78, 315-19.

The importance of the drug to BioXcel also undermines the notion that Defendants were unaware of the enrollment bonuses being paid by Segal Trials. Defs. Br. at 17-18. To access additional funding under its financing agreements, BioXcel needed to achieve regulatory milestones (namely, the filing of an NDA for BXCL501 which depended on the completion and outcome of the TRANQUILITY II trial). *See* PTAC at ¶¶133, 141, 254, 283-85. Thus, far from being a "circular argument" (Defs. Br. at 17), these allegations present a perfectly logical conclusion: BioXcel prioritized speed and outcomes over data integrity and adherence to trial protocol.

### 3. The FDA Refused to Accept the TRANQUILITY II Trial Data.

The severity of Defendants' trial protocol violations was made abundantly clear when the FDA told BioXcel in post-Class Period regulatory meetings (specifically, Type B meetings) that it would have to conduct another clinical trial to collect additional patient data. *See* PTAC at ¶¶220-34.[2] There should be no doubt that this is what happened. The trial protocols are nearly identical and were described as such by Defendant Mehta and BioXcel's Chief Medical Officer. *See id*. at ¶¶225-28, 233. Incredulously, Defendants attempt to spin this development as BioXcel's efforts "to expand on, rather than replace, the TRANQUILITY II data." Defs. Br. at 21. Defendants' narrative makes no sense and runs contrary to Plaintiffs' allegations. It is hardly a logical interpretation of what occurred. *See Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 470-471 (S.D.N.Y. 2013) (denying motion to dismiss where defendants' interpretation of facts were no

---

[2] Defendants claim that Plaintiffs waived any arguments based on these allegations. Defs. Br. at 18. Contrary to Defendants' argument, Plaintiffs referred to these points in their opening motion papers. *See* Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend (ECF No. 141-1), pp. 5, 13.

more plausible than that of plaintiffs); *In re Pfizer Inc. Sec. Litig.*, 936 F. Supp. 2d 252, 261 (S.D.N.Y. 2013) (accepting plaintiffs interpretation of defendants' drug trial results); *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 303 (S.D.N.Y. 2011) (ambiguities in e-mails were incapable of being resolved on motion to dismiss).

Similarly, Defendants attempt to vindicate themselves and Dr. Meyer by putting a favorable spin on Plaintiffs' allegations about the EIR. Defs. Br. at 19-20. But the fact that an EIR was potentially received in August 2024 in no way, shape or form supports the conclusion that the TRANQUILITY II protocol violations occurring years earlier were immaterial or otherwise did not warrant disclosure, as Defendants essentially argue. *See Pommer v. Medtest Corp.*, 961 F.2d 620, 623 (7th Cir. 1992) (representation was false when made notwithstanding fact that defendant ultimately obtained patent two years later); *In re Facebook, Inc.*, 986 F. Supp. 2d 487, 518 n.28 (S.D.N.Y. 2013) (rejecting"[d]efendants' hindsight defense" even though "Facebook ultimately reported revenues in line with its original estimates"). Instead, as discovery will likely show, the FDA issued the EIR only after BioXcel agreed to re-do the TRANQUILITY II trial. *See* PTAC at ¶¶225-32 (BioXcel submitted proposed protocol for new trial in September 2024).

### 4.        Defendants' "Nonfraudulent Inference" Is Unconvincing.

Defendants' penultimate point is their underwhelming claim that they had "no reason to believe the observations in the Form 483 or the Meyer Response called into question the integrity of the data from the TRANQUILITY II trial." Defs. Br. at 22. Defenses premised on good faith beliefs, however, are given little weight at the pleading stage. *See, e.g.*, *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 350 (E.D. Pa. 2014) (inference of scienter outweighed "good faith error" where defendants were "sophisticated scientists running a regulated, publicly traded corporation"). That rings true here especially where the facts show a litany of serious

protocol violations combined with motive and opportunity to conceal the adverse information until being able to successfully unload millions of dollars of stock. *See Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96-97 (2d Cir. 2016) (scienter alleged where defendants concealed misconduct of supposed "rogue employees" in hopes of having additional time to remediate problems).

### C.    Defendants Do Not Challenge Any Other Section 10(b) Elements.

Defendants oppose Plaintiffs' motion for leave to amend solely on scienter grounds. They do not make any arguments concerning the adequacy of Plaintiffs' falsity or loss causation allegations. Instead, Defendants reserve the right to make these arguments when moving to dismiss Plaintiffs' Third Amended Complaint in the future. *See* Defs. Br. at 10 n.7. Defendants' reservation of rights does not qualify as a proper argument on the motion and, therefore, constitutes a waiver. *See United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) (arguments appearing only in footnotes are generally regarded as waived); *see also Dayle B. v. Saul*, No. 3:20-cv-00359 (TOF), 2021 U.S. Dist. LEXIS 80855, at *33 n.8 (D. Conn. Apr. 28, 2021) (disregarding argument relegated to footnote). Consequently, for the purposes of the present motion, Defendants concede that Plaintiffs' Proposed Third Amended Complaint adequately alleges all remaining elements of their Section 10(b) and Section 20(a) claims.

### III.    CONCLUSION

Plaintiffs respectfully request leave to file the Proposed Third Amended Complaint so the Court can consider the complete record of facts in support of their claims at the pleading stage.

//

//

//

//

- 10 -

Dated: April 7, 2025

Respectfully submitted,

LEVI & KORSINSKY, LLP

 s/ Adam M. Apton
Adam M. Apton (*pro hac vice*)
33 Whitehall Street, 17th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

   -and-

Caitlin M. Moyna (*pro hac vice*)
GRANT & EISENHOFER P.A
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: cmoyna@gelaw.com

*Co-Lead Counsel for Plaintiffs and the Class*