**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER,<br><br>          Defendants. | Civil Action No.: 3:23-cv-915-SVN |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Lead Plaintiffs Tonya Hills and Oklahoma Law Enforcement Retirement System ("Plaintiffs") respectfully submit as supplemental authority the revised Opinion of the United States District Court for the District of New Jersey filed August 19, 2025 in *Levon v. CorMedix Inc., et al.*, No. 2:21-cv-14020-JXN-CLW. Plaintiffs submitted the initial version of the decision which was withdrawn because it contained erroneous citations and/or parentheticals. The *Levon* court has since revised the opinion. Plaintiffs are now submitting it again as supplemental authority because it weighs heavily in favor of denying Defendants' motion to dismiss. The revised Opinion deals with facts and legal issues that are very similar to those raised here and appropriately resolves them in favor of the plaintiffs by denying the defendants' motion to dismiss. A copy of the revised Opinion is attached as Exhibit A.

The *Levon* case focuses on statements about the timing and likelihood of FDA approval for CorMedix's "DefenCath" biopharmaceutical product. The plaintiffs alleged that these statements

1

misled investors by concealing known but undisclosed FDA inspection violations relating to DefenCath, thereby giving investors an overly optimistic and unrealistic perception of CorMedix's operations and prospects for FDA approval. The defendants' statements in *Levon* fell primarily into two categories: 1) statements about CorMedix's current state of FDA compliance and the importance of manufacturing deficiencies identified in a recent audit (Opinion at *9); and 2) statements concerning the timing and status for FDA approval (Opinion at *10-12).

CorMedix's statements about its FDA compliance were "actionable" because they put "in play" the topics of "manufacturing readiness, the first CRL, and the FDA's concerns regarding the DefenCath NDA," thereby triggering a duty to disclose additional information necessary to make the statements not misleading. The omitted information included *inter alia* that "the Audit concluded [CorMedix's manufacturer] would likely not pass FDA inspection and that numerous manufacturing deficiencies existed at the CMO" and that CorMedix "could not quickly resolve the identified manufacturing deficiencies to comply with cGMP standards, especially in light of the Audit and the FDA's concerns." Opinion at *9. BioXcel's statements about its ability to rely on the Tranquility II trial data are analogous to these statements and materially misleading for the same reasons. Indeed, Defendant Mehta put "in play" the issues surrounding the Form 483 and the integrity of the trial data when telling investors that BioXcel could file the sNDA if the FDA did not require them to "generate anything" else in terms of clinical trial data. *See* Second Amended Complaint, ECF No. 128, ¶225. Absent from Defendant Mehta's public statement was the reality that the Tranquility II trial data was already known to be irretrievably corrupt due to missing documentation from dozens of patient files. *Id*. at ¶226.

Similarly, with respect to the second category of misrepresentations, "CorMedix's statements regarding the timeline for FDA approval created a parallel duty to disclose the issues

at [its manufacturer's] facility impeding the proscribed timeline." Opinion at *10. "Defendants' statements that DefenCath was 'on track' are similarly actionable because the statements misrepresented the status of the DefenCath NDA at the time the statements were made. . . . [C]ourts have consistently determined alleged misstatements that selectively disclosed to investors what information was provided to the FDA are actionable." *Id*. at *11. "Consequently, Defendants knew or should have known based on FDA guidelines, FDA communications, and cGMP standards, that the outstanding fill line concerns at [CorMedix's manufacturer]—although unrelated to DefenCath—would impact DefenCath's approval. Defendants continued to comment on the likelihood of DefenCath's approval, which created a duty that Defendants address the Moderna contamination and its impact on DefenCath's approval." *Id*. at *12. Defendants' statements about the status of the Tranquility II trial are analogous and, once again, materially misleading for the same reasons. They told investors that enrollment was "complete" and that the trial was "fully enrolled" while concealing the existence of significant data integrity issues that they knew remained unresolved (and would in fact remain unresolved until BioXcel agreed to re-do the trial). *See* Second Amended Complaint, ECF No. 128 at ¶¶210, 212; *see also id*. at ¶¶173-83.[1]

The *Levon* case also supports Plaintiffs' scienter allegations. The Form 483 and Meyer Response are analogous to the audit received by CorMedix; they both placed the defendants on notice of a heightened risk concerning FDA approval. Yet contrary to this information, the defendants in both cases (in *Levon* and here) acted as if nothing was wrong and that they did not

---

[1] Plaintiffs' confidential witness allegations in the Proposed Third Amended Complaint emphasizes this point, making Defendants' statements all the more misleading in light of the additional information showing that Tranquility II's enrollment was not "complete" in any ordinary sense of the term. *See* Proposed Third Amended Complaint, ECF No. 142-1, ¶¶50-69 (CW8 explaining how Dr. Meyer manipulated screening examinations to enroll patients that would not have otherwise qualified for trial).

face extraordinary obstacles in the regulatory process going forward. *See* Opinion at \*22-23. The fact that the defendants provided misleading information in response to analyst questions bearing directly on these issues only strengthens the inference of scienter. *See id*. at \*24. In addition, the critical nature of the regulatory objectives further underscores the scienter inference pursuant to the "core operations" doctrine. *See id*. at \*23. Plaintiffs make the same allegations and arguments here, which should lead to the same outcome—the denial of Defendants' motion to dismiss.

Dated: August 20, 2025                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/  Adam M. Apton*
Adam M. Apton (*pro hac vice*)
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Tonya Hills and Co-Lead*
*Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Caitlin M. Moyna (*pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: cmoyna@gelaw.com

*Counsel for Oklahoma Law Enforcement*
*Retirement System and Co-Lead Counsel for the*
*Class*