**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated<br><br>            Plaintiffs,<br><br>           v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER<br><br>           Defendants. | Case No. 3:23-cv-00915-SVN<br><br><br>August 24, 2025 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants BioXcel Therapeutics, Inc., Vimal Mehta, Richard Steinhart, and Robert Risinger ("Defendants") respectfully submit this response to Plaintiffs' Notice of Supplemental Authority (ECF No. 157) ("Notice").

Contrary to Plaintiffs' description of *CorMedix*, the facts there are not "very similar" to this case. *See* Notice at 1. The differences are stark: In *CorMedix*, the plaintiffs pleaded that the defendant company conducted an internal audit of a third-party manufacturer that "concluded that [the manufacturer] would not pass FDA inspection." *Levon v. CorMedix*, 2025 WL 2400346, at *17 (D.N.J. Aug. 19, 2025). The audit "cautioned CorMedix of the very issues the FDA subsequently identified" in a "Complete Response Letter" ("CRL") refusing to approve CorMedix's new drug application. *Id.* at *18. A CRL "reflects [the] FDA's complete review of the data submitted" and signals the FDA's determination "that it will not approve an application

1

in its present form." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 118 F.4th 322, 331 (3d Cir. 2024) (citing 21 CFR § 314.110(a) (internal quotations omitted)). Despite the "complete" nature of the CRL the company received, the *CorMedix* Court noted that the defendants "downplayed the issues underlying the First CRL" and continued to project unjustified confidence that issues would be resolved within "weeks." 2025 WL 2400346, at *3-4.

BioXcel did not receive a CRL—rather, Plaintiffs rely on the FDA's issuance of a Form 483 to Dr. Caitlin Meyer (an investigator employed by Segal Trials, which BioXcel contracted to perform the TRANQUILITY II study), and Dr. Meyer's response ("Meyer Response"). In contrast to the alleged facts in *CorMedix*, "the Form 483 itself provides that corrective action to remedy the [FDA's] observations was possible . . . ," ECF No. 128, at 28, and the Meyer Response contains responses fully addressing FDA's "observations," including, *e.g.*, that "all subjects met inclusion/exclusion criteria," ECF No. 130-2, at 9-11. The contents of the Form 483 and Meyer Response are not "analogous" to the contents of the CorMedix Audit (Notice at 3),p which the *CorMedix* Court found to be "directly" contradictory to the defendants' public statements, *CorMedix*, 2025 WL 2400346, at *21.

Plaintiffs' attempt to draw specific analogies between the statements at issue in *CorMedix* and the challenged statements in this case fails. *First*, Plaintiffs contend that the statements about FDA compliance in *CorMedix* are just like Dr. Mehta's June 8, 2023, statement about BioXcel's "ability to rely on the TRANQUILITY II trial" and "materially misleading for the same reasons." Notice at 2. But Dr. Mehta's statement says nothing about FDA compliance and makes no promises that BioXcel had met all of the FDA's approval requirements. To the contrary, Dr. Mehta implied there might be some gaps to fill and hinted that the FDA might not even allow BioXcel to file just on TRANQUILITY II data:

> We will have a conversation with the FDA, *ask them what do we need to file the sNDA, and then fill those gaps* and file it.  *If* they allow us to file with TRANQUILITY II, we'll be ready to go, basically, *if* we don't need to generate anything.

SAC ¶ 225 (emphases added).  This is a far cry from the statements at issue in *CorMedix*, which reported that the FDA's concerns had been addressed:  "we and the manufacturer have adequately addressed the concerns the [FDA] identified in the CRL and PAAL"; "CorMedix and [its CMO] have adequately addressed the concerns the [FDA] identified during the review of the original NDA . . . ."  *CorMedix*, 2025 WL 2400346, at *9.

Nor is it the case that Dr. Mehta's statement is rendered false because, as Plaintiffs contend in the Notice, "the TRANQUILITY II trial data was already known to be irretrievably corrupt due to missing documentation from dozens of patient files."  Notice at 2.  That is because the factual allegations do not support this conclusion.  Instead, and as this Court previously noted, the Form 483 itself "says nothing regarding the future of the TRANQUILITY II trial and does not even explicitly require corrective action."  Dismissal Order, ECF No. 128, at 21.

*Second*, Plaintiffs contend the discussions of the FDA approval timeline in *CorMedix* are like the TRANQUILITY II enrollment status statements at issue here.  Notice at 2-3.  Plaintiffs stretch to make this comparison.  In *CorMedix*, the defendants affirmed that the company's product was "on schedule towards an anticipated approval" despite internal conclusions that CorMedix's manufacturer could not pass "required" pre-approval inspections.  2025 WL 2400346, at *3, *10.  Here, not only did Dr. Mehta offer no guarantees about the FDA's acceptance of a new drug application based on the TRANQUILITY II data (SAC ¶ 225), neither he nor the other Defendants implied anything at all about the timing of a sNDA—much less the FDA regulatory process or communications—in reporting the uncontroverted fact that TRANQUILITY II was "fully enrolled" (SAC ¶ 209) and that patient enrollment was "complete" (SAC ¶ 211).  These statements

3

were true, and Plaintiff alleges no facts to show that Defendants possessed any information contradicting them.  Rather, as the Court previously noted, the Form 483 is not "a determination that the subjects of the investigation were, in fact, not properly enrolled," Dismissal Order, ECF No. 128 at 28, a conclusion that is buttressed by the Meyer Response.

*Finally*, Plaintiffs seek to leverage *CorMedix* for the general point that "core operations" allegations can bolster an inference of scienter.  Notice at 4.  But as *CorMedix* observes, "the core operations doctrine on its own is not sufficient to establish scienter" and should instead be taken "in consideration when viewing the entirety" of the allegations.  2025 WL 2400346, at *23; *see also Point12 Diversified Fund, LP v. TMC The Metals Co.*, 2025 WL 1920340, at *22 (E.D.N.Y. July 11, 2025) ("[T]he core operations theory . . . is not independently sufficient to raise a strong inference of scienter") (internal quotation omitted).  There are no individualized allegations that any Defendant had knowledge of, or access to, "specific information" contrary to any statements in this case.  *CorMedix*, 2025 WL 2400346, at *23; *see also* ECF No. 143 (Defs.' Opp. to Plfs.' Mot. for Leave to Amend), at 12-16; ECF No. 134 (Defs.' Mot. to Dismiss Second Am. Compl.), at 32-37.  Here, there are no other allegations supporting a strong inference of scienter for the "core operations" doctrine to bolster.

Dated:  August 24, 2025
       Atlanta, Georgia

Respectfully submitted,

LATHAM & WATKINS LLP

By:    /s/ *Colleen C. Smith*

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Tel: (858) 523-5400
Fax: (858) 523-5450
Email: colleen.smith@lw.com

Jessica Bengels [ct29396]
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jessica.bengels@lw.com

Michele D. Johnson (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: michele.johnson@lw.com

Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201

Meryn C. N. Grant (*pro hac vice*)
355 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 485-1234
Fax: (213) 891-8763
Email: meryn.grant@lw.com

*Attorneys for Defendants*