## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, AND ROBERT RISINGER, <br><br> Defendants. | Civil Action No.: 3:23-cv-00915-SVN |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   ARGUMENT................................................................................................................... 2

      A.    Legal Standard for Reconsideration........................................................................ 2

      B.    Reconsideration Is Unwarranted Because The Court Did Not Overlook Any
            Controlling Law or Data. ....................................................................................... 2

      C.    Defendant Steinberg Still Faces Liability as a Control-Person under Section 20(a)
            of the Exchange Act................................................................................................ 5

III.  CONCLUSION.................................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
  19 F.4th 145 (2d Cir. 2021) ............................................................................................ 6

*In re Aphria Sec. Litig.*,
  No. 18-cv-11376 (GBD), 2020 U.S. Dist. LEXIS 181054, 2020 U.S. Dist. LEXIS 181054
  (S.D.N.Y. Sep. 30, 2020) ................................................................................................. 7

*In re Arqit Quantum Inc. Sec. Litig.*,
  774 F. Supp. 3d 505 (E.D.N.Y. 2025) ........................................................................... 2, 7

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012) ............................................................................................... 3

*Baum v. Harman Int'l Indus.*,
  575 F. Supp. 3d 289 (D. Conn. 2021) ........................................................................ 2, 3, 6

*In re Gen. Motors LLC Ignition Switch Litig.*,
  427 F. Supp. 3d 374 (S.D.N.Y. 2019) ............................................................................... 2

*Patane v. Nestlé Waters N. Am., Inc.*,
  786 F. Supp. 3d 474 (D. Conn. 2025) ............................................................................... 6

*In re Star Gas Sec. Litig.*,
  241 F.R.D. 428 (D. Conn. 2007) ....................................................................................... 3

*In re Synchrony Fin. Sec. Litig.*,
  988 F.3d 157 (2d Cir. 2021) ............................................................................................. 5

*In re Teva Sec. Litig.*,
  No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 60195 (D. Conn. Mar. 30, 2021) .............. 2, 3

*In re XL Fleet Corp. Sec. Litig.*,
  No. 21-cv-2002 (LGS), 2022 U.S. Dist. LEXIS 29255 (S.D.N.Y. Feb. 17, 2022) ................... 7

**Statutes**

15 U.S.C. §78 .................................................................................................................... 6

15 U.S.C. §78t .................................................................................................................. 1, 6

**Rules**

D. Conn. L. Civ. R. 7 .......................................................................................................... 2

Lead Plaintiffs Tonya Hills and Oklahoma Law Enforcement Retirement System ("OLERS") (together with Ms. Hills, "Lead Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendants' Motion for Reconsideration (ECF No. 167). For the foregoing reasons, Defendants' motion should be denied.

## I.    PRELIMINARY STATEMENT

Motions for reconsideration should be reserved for correcting mistakes that would otherwise result in manifest injustice. No such mistake exists here. Defendant Richard Steinhart was BioXcel's CFO. As such, he attended the same board meetings as CEO Vimal Mehta and CMO Robert Risinger and was privy to the same information about Tranquility II's enrollment status and milestone progress under the company's financing agreements. The Court correctly drew an inference of scienter against these individuals given Dr. Meyer's intentional protocol violations, their knowledge of the Form 483 letter and Dr. Meyer's response, their respective experience with clinical trials, and BioXcel's heavy reliance on FDA approval for continued funding. ECF No. 163 at 31. Defendants have not identified any new controlling decision or data to justify upsetting this holding.

Nor does Defendants' motion present any benefit in terms of efficiency or avoiding unnecessary work and confusion. As CFO of BioXcel, Steinhart signed the company's quarterly and annual reports with the SEC and was responsible for its day-to-day affairs. This makes him liable as a "control person" under Section 20(a) of the Exchange Act and, in turn, "jointly and severally" liable for BioXcel's violations of Section 10(b). 15 U.S.C. §78t(a). Defendants did not dispute this allegation previously and cannot raise any new argument now. Consequently, there is no practical reason to reverse the Court's Section 10(b) holding against Steinhart when he still faces the same liability vis-à-vis Section 20(a). His involvement in this lawsuit will continue

regardless. It will not narrow the scope of discovery or potential liability faced by Defendants. If, by chance, discovery exonerates Steinhart, he can always avail himself of Rule 56 and file a motion for summary judgment once discovery has concluded. *See*, *e.g.*, *In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505, 537 & n.27 (E.D.N.Y. 2025) (declining to address additional arguments where plaintiffs already adequately alleged liability and "[d]efendants will have the opportunity to raise these arguments at a later stage in this proceeding after discovery has concluded").

## II.   ARGUMENT

### A.   LEGAL STANDARD FOR RECONSIDERATION.

Local Civil Rule 7(c)(1) makes clear that motions for reconsideration are generally denied "unless the movant can point to controlling decisions or data that the court overlooked." D. Conn. L. Civ. R. 7(c)(1). Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Baum v. Harman Int'l Indus.*, 575 F. Supp. 3d 289, 293 (D. Conn. 2021) (internal quotations omitted). "The strict limits governing motions for reconsideration seek 'to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 U.S. Dist. LEXIS 60195, at \*20-21 (D. Conn. Mar. 30, 2021) (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 378 (S.D.N.Y. 2019)).

### B.   RECONSIDERATION IS UNWARRANTED BECAUSE THE COURT DID NOT OVERLOOK ANY CONTROLLING LAW OR DATA.

The Court carefully analyzed the pleadings and correctly evaluated Lead Plaintiffs' allegations. Yet Defendants now claim a mistake was made with respect to Steinhart's liability

under Section 10(b) of the Exchange Act. What they refer to as a mistake, however, falls woefully short of the requirements for granting reconsideration. Indeed, Defendants do not point to any controlling decisions or data overlooked by the Court. For that reason alone, Defendants' motion for reconsideration should be denied. *See Baum*, 575 F. Supp. 3d at 301 (defendants did not demonstrate "clear error under the standard for reconsideration" by simply disagreeing with court's initial holding); *In re Teva Sec. Litig.*, 2021 U.S. Dist. LEXIS 60195, at *24-25 (rejecting motion for reconsideration where argument "simply re-raise[d] the same issue . . . already decided"); *In re Star Gas Sec. Litig.*, 241 F.R.D. 428, 431 (D. Conn. 2007) ("plaintiffs have demonstrated no 'valid basis' . . . for vacating the judgment as they identify no new law or matters the Court overlooked justifying such action. Nor do they identify any new evidence, as defined in Rule 60(b), entitling them to relief from judgment.") (citations omitted).

In any event, instead of identifying any material supposedly overlooked, Defendants blatantly present the same arguments they already briefed and ask for a different result. *See*, *e.g.*, ECF No. 167-1 ("As Defendants argued in both their motion to dismiss the SAC and their opposition to Plaintiffs' motion for leave to file the TAC . . . ."). This squarely contradicts the rules governing motions for reconsideration. As the Second Circuit stated, motions for reconsideration are not "vehicle[s] for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotations omitted).

Defendants also fail to explain why the Court's analysis was wrong. As it was supposed to do, the Court considered Lead Plaintiffs' allegations of scienter collectively and determined they were sufficient at the pleading stage. *See* ECF No. 163 at 31 ("Plaintiffs allege the following circumstantial evidence supports an inference of recklessness . . . . Taken together, the Court find

3

that this evidence supports a finding of scienter because the inference of scienter [is both] cogent and at least as compelling as any opposing inference one could draw from the facts alleged.") (internal quotations omitted). In making its determination against Steinhart, the Court relied on:

- Defendants' knowledge that Dr. Meyer was engaging in intentional protocol violations to meet enrollment requirements;

- Defendants' knowledge of the Form 483 letter and the Meyer Response;

- BioXcel's heavy reliance on FDA approval for BXCL501 for continued funding; and

- Steinhart's sale of stocks.

*Id*.

While Defendants argue that Steinhart did not know about Dr. Meyer's protocol violations, the Form 483 letter, or Dr. Meyer's response (ECF No. 167-1 at 8-9), Lead Plaintiffs' allegations say otherwise. For example, on June 29, 2023, Risinger admitted that, "The FDA did the audit back in December. ***We were aware of it, and we have been monitoring that site even more closely***." ECF No. 164 at ¶287. Risinger's references to "we" included his co-defendants, Mehta and Steinhart, who were present during the Q&A session on the call.[1] Lead Plaintiffs' allegations are to be accepted as true and credited as such (over any attorney argument Defendants may present to the contrary). Thus, when Lead Plaintiffs alleged that Steinhart knew about the Form 483 and Dr. Meyer's response (*id.* at ¶¶287-88, 296-98), the Court was correct in crediting those

---

[1] *See* ECF No. 134-10, p. 2 ("Joining us on today's call are Dr. Vimal Mehta, Chief Executive Officer; and Dr. Rob Risinger, Chief Medical Officer of Neuroscience. ***Richard Steinhart, Chief Financial Officer***; Dr. Frank Yocca, Chief Scientific Officer; and Matt Wiley, Chief Commercial Officer, will also join us for the Q&A.") (emphasis added).

allegations. *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021) ("even securities plaintiffs need not prove their entire case within the confines of the complaint").

Defendants also overlook the Court's consideration of BioXcel's need for financing under its loans from Oaktree and QIA. ECF No. 163 at 31. Steinhart, as CFO, was responsible for overseeing BioXcel's cash burn and negotiating the release of additional funds under the company's financing agreements. *See* ECF No. 164 at ¶¶16, 127-33, 309-11. BioXcel's critical need for cash would have focused Steinhart's attention on the progress of the Tranquility II trial and, in turn, the protocol violations that Defendants presently claim he was unaware of (without any factual support).

Consequently, Defendants are wrong when they say in their motion that the "stock sales" are the only allegations supportive of scienter. *See* ECF No. 167-1 ("All that is left, then, of TAC allegations specific to Steinhart's mental state concern his stock sales."). Lead Plaintiffs rely on more than just Steinhart's stock sale; they point to Steinhart's knowledge of the protocol violations which sufficiently show for purposes at the pleading stage that his statements in BioXcel's annual report were made with scienter. *See* ECF No. 163 at 14 (analyzing statement included in BioXcel's March 16, 2023, Form 10-K signed by Mehta and Steinhart stating "[p]atient enrollment is complete for TRANQUILITY II").

C.      **DEFENDANT STEINBERG STILL FACES LIABILITY AS A CONTROL-PERSON UNDER SECTION 20(A) OF THE EXCHANGE ACT.**

Thousands of hours have already been spent litigating the sufficiency of the pleadings. There is no need to prolong this phase of the case, especially when the outcome of Defendants' instant request will have no impact on the course of the litigation. Regardless of whether Steinhart remains a Section 10(b) defendant, he still faces liability under Section 20(a).

Section 20(a) of the Exchange Act provides in pertinent part that, "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ." 15 U.S.C. §78t(a). "Person" includes companies. 15 U.S.C. §78(c)(a)(9). Steinhart controlled BioXcel and, in particular, made the false and misleading "patient enrollment" statement that appeared in the company's annual report on Form 10-K filed with the SEC on March 16, 2023. *See* ECF No. 164 at ¶262. *See also id*. at ¶¶375-78. Defendants did not contest Steinhart's status as a control-person other than by arguing that Lead Plaintiffs failed to plead an underlying primary violation. *See* ECF No. 134-1 at 40. Consequently, Defendants cannot raise that argument now. *See Patane v. Nestlé Waters N. Am., Inc.*, 786 F. Supp. 3d 474, 483 (D. Conn. 2025) ("Plaintiffs have forfeited the argument they now raise and denies their motion for clarification or reconsideration."). *See also Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 152 (2d Cir. 2021) (reversing dismissal of Section 20(a) claim where a 10(b) claim was pled as to a primary violator).

This eliminates any practical or legal benefit to granting reconsideration. Steinhart will face "joint and several" liability for BioXcel. He will be subject to the same scope of discovery in the litigation as it progresses. This is not a scenario in which a party's involvement in the action could be eliminated if reconsideration is granted. Consequently, Defendants' motion is at odds with the underlying purpose of motions for reconsideration in general, which suggests further that it should be denied at this stage of the litigation. *See Baum*, 575 F. Supp. 3d at 293 (reconsideration is an "extraordinary remedy" that serves "the interests of finality and conservation of scarce judicial resources").

6

## III.    CONCLUSION

Lead Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration in its entirety. The relief they request is extraordinary. If the record ultimately proves Steinhart did not act with scienter, they may move for summary judgment later in the case. But for now, given Lead Plaintiffs' allegations on the whole, there is no reason to revisit the Court's decision on the motion to dismiss. *See In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d at 537 & n.27 (declining to address additional arguments where "[d]efendants will have the opportunity to raise these arguments at a later stage"); *In re XL Fleet Corp. Sec. Litig.*, No. 21-cv-2002 (LGS), 2022 U.S. Dist. LEXIS 29255, at *9 (S.D.N.Y. Feb. 17, 2022) (denying motion to dismiss in entirety where "[a]t least one of these categories -- statements about XL Fleet's sales pipeline and revenue projections -- is sufficiently alleged and warrants denial"); *In re Aphria Sec. Litig.*, No. 18-cv-11376 (GBD), 2020 U.S. Dist. LEXIS 181054, 2020 U.S. Dist. LEXIS 181054, at *26-27 (S.D.N.Y. Sep. 30, 2020) ("Having determined that at least some of the Aphria Defendants' statements regarding the operational status and condition of the LATAM assets are actionable, it is unnecessary at this point to consider whether all of Defendants' other alleged misstatements or omissions, including those regarding undisclosed conflicts of interest, are independently actionable.").

*[Signature blocks on following page]*

7

Dated: October 14, 2025                    Respectfully submitted,


                                           **LEVI & KORSINSKY, LLP**


                                           */s/ Adam M. Apton*

                                           Adam M. Apton (*pro hac vice*)
                                           33 Whitehall Street, 27th Floor
                                           New York, NY 10004
                                           Tel: (212) 363-7500
                                           Fax: (212) 363-7171
                                           Email: aapton@zlk.com


                                                 -and-

                                           **GRANT & EISENHOFER P.A.**
                                           Caitlin M. Moyna (*pro hac vice*)
                                           485 Lexington Avenue
                                           New York, NY 10017
                                           Tel.: (646) 722-8500
                                           Fax: (646) 722-8501
                                           Email: cmoyna@gelaw.com

                                           *Co-Lead Counsel for Plaintiffs and the Class*

8