**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TONYA HILLS and OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>BIOXCEL THERAPEUTICS, INC., VIMAL MEHTA, RICHARD STEINHART, and ROBERT RISINGER<br><br>Defendants. | Case No. 3:23-cv-00915-SVN<br><br>October 28, 2025 |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Defendants BioXcel Therapeutics, Inc., Vimal Mehta, Richard Steinhart, and Robert Risinger ("Defendants"), by and through their undersigned counsel of record, answers the Third Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint," ECF No. 164) as follows. On September 29, 2025, the Court entered an order which dismissed certain of Plaintiff's claims. Accordingly, Defendants are not required to answer Plaintiff's allegations solely supporting those claims.

**PREAMBLE**

On June 29, 2023, BioXcel announced positive results from its TRANQUILITY II clinical trial. At the same time, BioXcel informed investors that it had recently uncovered issues regarding the conduct of one investigator in that trial—a fabricated email record

1

regarding a serious adverse event.  To fully apprise investors of the potential impact of the recently uncovered misconduct, BioXcel disclosed that more than six months earlier, the U.S. Food and Drug Administration ("FDA") had conducted an inspection of that investigator's clinical trial site and was provided the fabricated email.  BioXcel also noted that the FDA had issued a Form 483 in connection with that inspection.

BioXcel's disclosures of the recently uncovered investigator misconduct were timely and fulsome.  That is not what this case is about.  Instead, Plaintiff's federal securities fraud claims allege that the previous issuance of the Form 483 somehow rendered BioXcel's statements updating investors on the status of the TRANQUILITY II trial false.  The Court has already dismissed the majority of Plaintiff's securities fraud claims based on the issuance of the Form 483 and rejected its attempt to recover losses for a decline in BioXcel's stock price that was wholly unrelated to its claims.

The few remaining claims are similarly meritless.  In those claims, Plaintiff challenges two statements reporting that "enrollment" for TRANQUILITY II was complete, and a later statement that the last patient had completed the trial.  The crux of Plaintiff's claims is that these statements were misleading because Defendants did not also disclose the existence of the Form 483.  Plaintiff posits that the observations in the Form 483 were severe and could not be remedied. From there, Plaintiff leaps to the conclusion that Defendants knew all of the implicated patient data could not be included in the TRANQUILITY II results, rendering the trial unusable to support an sNDA, and rendering their statements reporting on its enrollment and completion false.  Plaintiff's claims are based on a fundamental misunderstanding (or mischaracterization) of the Form 483 and the FDA regulatory process. The observations in the Form 483 were correctable and did not impact patient eligibility or compromise the integrity of

2

the data generated by the study.  No one, other than Plaintiffs, has said otherwise.  Nor has the FDA made any determination that, based on the observations in the Form 483, the TRANQUILITY II results are somehow unusable.

At bottom, BioXcel disclosed material issues related to its TRANQUILITY II trial as they arose.  Defendants statements reporting on the status of the trial were and remain true.  And, the TRANQUILITY II data continues to support BioXcel's development of BXCL501.

For this reason, Defendants deny any and every allegation that suggests or implies that any remaining challenged statement was false or misleading or that any Defendant otherwise engaged in improper conduct.  Defendants specifically deny that they violated the federal securities laws, that they caused Plaintiffs or any member of the putative class any recoverable damages, and that they acted negligently, in bad faith, or with the requisite fraudulent intent.  They also deny that they controlled any person who violated the federal securities laws.  This general denial shall be considered incorporated into the following specific responses to Plaintiffs' allegations.

Any factual averment admitted herein is admitted only to the specific fact admitted and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or in the Complaint as a whole.  Moreover, except to the extent expressly admitted herein, Defendants specifically deny any allegations contained in the Complaint's headings, which are listed below for organizational purposes only.

## RESPONSES TO SPECIFIC ALLEGATIONS

### I.    INTRODUCTION (NEW)

1.    Defendants admit that BioXcel is a clinical stage biopharmaceutical company utilizing novel artificial intelligence-based approaches to identify the next wave of medicines across neuroscience and immuno-oncology.  Defendants further admit that at the time the

3

Complaint was filed, BioXcel was developing BXCL501, an investigational proprietary, orally dissolving film designed for the treatment of agitation associated with psychiatric and neurological disorders.  Defendants also admit that BioXcel has a strategic financing agreement with Oaktree Capital Management, LP and the Qatar Investment Authority that released tranches of funding to BioXcel based on the achievement of designated milestones.  Except as expressly admitted, Defendants deny the allegations in Paragraph 1.

2.	Defendants admit that on December 15, 2021, BioXcel announced the initiation of a program to evaluate BXCL501 for the treatment of acute agitation associated with Alzheimer's disease.  Defendants further admit that the program included a Phase III study named TRANQUILITY II, which was designed to evaluate the safety and efficacy of BXCL501 in adults 65 years and older who exhibit acute agitation associated with all forms of dementia, including Alzheimer's disease, in assisted living or residential facilities.  Defendants also admit that BioXcel engaged Segal Trials to conduct part of the TRANQUILITY II trial.  Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 2 regarding confidential witness testimony, and on that basis deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 2.

3.	Defendants admit that the FDA conducted an inspection of BioXcel's North Miami, Florida TRANQUILITY II trial site, where approximately 40% of the subjects participating in the trial were enrolled, from December 5 to December 21, 2022.  Defendants admit that an employee of Segal Trials, Dr. Caitlin Meyer, was the principal investigator at the site, and that TRANQUILITY II was Dr. Meyer's first clinical study as a principal investigator. Except as expressly admitted, Defendants deny the allegations in Paragraph 3.

4

4.      Defendants admit that the FDA conducted an inspection of BioXcel's North Miami, Florida TRANQUILITY II trial site from December 5 to December 21, 2022. Defendants further admit that the FDA issued a Form 483 on December 21, 2022 containing three observations from the FDA's investigation.  That document speaks for itself.  To the extent that Paragraph 4 mischaracterizes the Form 483, and the context in which it was issued, Defendants otherwise deny those allegations.  Defendants further admit that on or around June, 21, 2023, BioXcel received confirmation that Dr. Meyer had fabricated email correspondence regarding the reporting of a serious adverse event.  Except as expressly admitted, Defendants deny the allegations in Paragraph 4.

5.      In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required with respect to those allegations.  Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.  That document speaks for itself. Because Paragraph 5 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations related to the Meyer Response.  Except as expressly admitted, Defendants deny the allegations in Paragraph 5.

6.      Defendants deny the allegations in Paragraph 6.

7.      Defendants deny the allegations in Paragraph 7.

## II.    JURISIDICTION AND VENUE

8.      Defendants admit that the Complaint purports to assert claims arising under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

9.      Defendants admit that this Court has jurisdiction over this matter as a putative securities class action claiming violations of Section 10(b) and 20(a) of the Exchange Act, pursuant to 28 U.S.C. §§ 1331 and 1337 and § 27 of the Exchange Act.

10.     Defendants admit that venue is proper in this District pursuant to § 27 of the Exchange Act and 28 U.S.C. §1391(b).  Defendants further admit that during the alleged Class Period and at the time of the filing of the Complaint, BioXcel's principal offices were located in this District.

11.     The allegations in Paragraph 11 constitute a conclusion of law to which no response is required.

## III.    PARTIES

### A.    LEAD PLAINTIFFS

12.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 12, and on that basis deny them.

13.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 13, and on that basis deny them.

### B.    DEFENDANTS

14.     Defendants admit that BioXcel LLC was founded in 2006, and that Dr. Mehta co-founded BioXcel as a spinout in 2017 and led BioXcel's Initial Public Offering in 2018, which raised approximately $60 million.  Defendants further admit BioXcel incorporated in Delaware on March 29, 2017, and is headquartered in New Haven, Connecticut.  Defendants further admit that BioXcel trades on the NASDAQ under the ticker "BTAI."  Defendants further admit that BioXcel has raised approximately $500 million in capital to support BioXcel's R&D and commercial efforts.  Except as expressly admitted, Defendants deny the allegations in Paragraph 14.

15.     Defendants admit that Dr. Mehta co-founded BioXcel LLC in 2006 and serves as BioXcel's Chief Executive Officer.  Defendants further admit that as of September 30, 2023, Dr. Mehta, through his beneficial ownership of BioXcel LLC, beneficially owned approximately

31.5% of BioXcel. Defendants further admit that Dr. Mehta holds a Ph.D. in chemistry from the University of Delhi, India and completed a Post-Doctoral Fellowship in chemistry at the University of Montpellier, France. Except as expressly admitted, Defendants deny the allegations in Paragraph 15.

16. Defendants admit that Mr. Steinhart serves as BioXcel's Senior Vice President and Chief Financial Officer. Defendants further admit that before joining BioXcel, Mr. Steinhart served as Vice President and CFO at Remedy Pharmaceuticals, Inc., and as Senior Vice President, Finance and Chief Financial Officer of MELA Sciences. Defendants further admit that before joining Remedy Pharmaceuticals, Mr. Steinhart served as an independent consultant to biotechnology and medical device companies. Defendants further admit that Mr. Steinhart is a member of the Board of Directors of Actinium Pharmaceuticals, Inc. and Atossa Genetics, Inc. Defendants further admit that Mr. Steinhart holds B.B.A. and M.B.A. degrees from Pace University and is a Certified Public Accountant (inactive). Except as expressly admitted, Defendants deny the allegations in Paragraph 16.

17. Defendants admit the allegations concerning Dr. Risinger's biographical details included in Paragraph 17. Defendants admit that a summary of a clinical trial titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov, and that under "Investigators," the protocol reflects the following: "Study Chair: Robert Risinger, MD, BioXcel Therapeutics." Except as expressly admitted, Defendants deny the allegations in Paragraph 17.

C. CONFIDENTIAL WITNESSES

1. CW1

7

18.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 18 regarding CW1's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 18.

19.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 19 regarding CW1's knowledge and actions, and on that basis deny the allegations in Paragraph 19.

20.     Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.  That document speaks for itself.  To the extent that Paragraph 20 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny those allegations.  Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 20 regarding CW1's knowledge and actions, and on that basis deny the allegations in Paragraph 20.

21.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 21 regarding CW1's knowledge and actions, and on that basis deny the allegations in Paragraph 21.

22.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 22 regarding CW1's knowledge and actions, and on that basis deny the allegations in Paragraph 22.

23.     Defendants admit that BioXcel entered into strategic financing agreements with funds managed by Oaktree Capital Management, L.P. and Qatar Investment Authority. Defendants further admit that, as described in BioXcel's April 19, 2022 Form 8-K, BioXcel may borrow funds under the Oaktree agreement upon satisfaction of certain conditions, including among other things receipt of certain regulatory and financial milestones.  Defendants otherwise

lack knowledge or information sufficient to admit or deny the allegations of Paragraph 23 regarding CW1's knowledge and actions, and on that basis deny the allegations in Paragraph 23.

### 2. CW2

24. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 24 regarding CW2's knowledge and actions, and on that basis deny the allegations in Paragraph 24.

25. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 25 regarding CW2's knowledge and actions, and on that basis deny the allegations in Paragraph 25.

26. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 26 regarding CW2's knowledge and actions, and on that basis deny the allegations in Paragraph 26.

27. Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023. That document speaks for itself. To the extent that Paragraph 27 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny those allegations. Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 27 regarding CW2's knowledge and actions, and on that basis deny them.

28. Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 28 regarding CW2's knowledge and actions, and on that basis deny the allegations in Paragraph 28.

29. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 29 regarding CW2's knowledge and actions, and on that basis deny the allegations in Paragraph 29.

30. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 30 regarding CW2's knowledge and actions, and on that basis deny the allegations in Paragraph 30.

**3. CW3**

31. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 31 regarding CW3's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 31.

32. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 32 regarding CW3's knowledge and actions, and on that basis deny the allegations in Paragraph 32.

33. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 33 regarding CW3's knowledge and actions, and on that basis deny the allegations in Paragraph 33.

34. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 34 regarding CW3's knowledge and actions, and on that basis deny the allegations in Paragraph 34.

35. Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023. That document speaks for itself. To the extent that Paragraph 35 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny those allegations. Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 35 regarding CW3's knowledge and actions, and on that basis deny them.

**4. CW4**

36. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 36 regarding CW3's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 36.

37. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 37 regarding CW3's knowledge and actions, and on that basis deny the allegations in Paragraph 37.

38. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 38 regarding CW3's knowledge and actions, and on that basis deny the allegations in Paragraph 38.

### 5.    CW5

39. Defendants admit that Dr. Risinger met with BioXcel executives.  Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 39 regarding CW5's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 39

### 6.    CW6

40. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 40 regarding CW6's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 40

41. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 41 regarding CW6's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 41.

42. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 42 regarding CW6's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 42.

### 7.     CW7

43.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 43 regarding CW7's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 43

44.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 44 regarding CW7's knowledge and actions, and on that basis deny the allegations in Paragraph 44.

45.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 45 regarding CW7's knowledge and actions, and on that basis deny the allegations in Paragraph 45.

46.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 46 regarding CW7's knowledge and actions, and on that basis deny the allegations in Paragraph 46.

47.     Defendants admit that on September 18, 2018, BioXcel announced the appointment of Dr. Chetan D. Lathia as Senior Vice President and Head, Translational Medicine, Clinical Pharmacology and Regulatory Affairs.  Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 47 regarding CW7's knowledge and actions, and on that basis deny the allegations in Paragraph 47.

48.     Defendants admit that Cedric Burg is no longer employed at BioXcel. Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 48 regarding CW7's knowledge and actions, and on that basis deny the allegations in Paragraph 48.

49.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 49 regarding CW7's knowledge and actions, and on that basis deny the allegations in Paragraph 49.

### 8.    CW8 (NEW)

50.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 50 regarding CW8's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 50

51.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 51 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 51.

52.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 52 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 52.

53.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 53 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 53.

54.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 54 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 54.

55.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 55 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 55.

56.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 56 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 56.

57.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 57 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 57.

58.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 58 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 58.

59.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 59 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 59.

60.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 60 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 60.

61.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 61 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 61.

62.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 62 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 62.

63.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 63 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 63.

64.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 64 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 64.

65.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 65 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 65.

66.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 66 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 66.

67.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 67 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 67.

68.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 68 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 68.

69.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 69 regarding CW8's knowledge and actions, and on that basis deny the allegations in Paragraph 69.

**9.     CW9 (NEW)**

70. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 70 regarding CW9's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 70.

71. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 71 regarding CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 71.

72. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 72 regarding CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 72.

73. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 73 regarding CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 73.

74. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 74 regarding CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 74.

75. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 75 regarding CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 75.

### 10.    CW10 (NEW)

76. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 76 regarding CW10's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 76.

77.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 77 regarding CW10's knowledge and actions, and on that basis deny the allegations in Paragraph 77.

78.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 78 regarding CW10's knowledge and actions, and on that basis deny the allegations in Paragraph 78.

### 11.     CW11 (NEW)

79.     Defendants admit that BioXcel announced on December 15, 2021, the initiation of BioXcel's program to evaluate BXCL501 for the treatment of acute agitation associated with Alzheimer's disease.  Defendants further admit that program had two studies, including TRANQUILITY II.  Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 79 regarding CW11's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 79.

80.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 80 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 80.

81.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 81 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 81.

82.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 82 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 82.

83.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 83 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 83.

84.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 84 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 84.

85.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 85 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 85.

86.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 86 regarding CW11's knowledge and actions, and on that basis deny the allegations in Paragraph 86.

## IV.    FACTS

### A.    BACKGROUND OF BIOXCEL

87.    Defendants admit that BioXcel is a clinical stage biopharmaceutical company utilizing novel artificial intelligence-based approaches to identify the next wave of medicines across neuroscience and immuno-oncology.  Defendants further admit that BioXcel LLC was founded in 2006, and that Dr. Mehta co-founded BioXcel as a spinout and led BioXcel's Initial Public Offering in 2018.  Defendants further admit BioXcel incorporated in Delaware on March 29, 2017.  Defendants further admit that BioXcel had 183 full-time employees as of December 31, 2022.  Defendants further admit that on August 14, 2023, BioXcel announced that it would be reducing its workforce from approximately 190 to 80 employees.  Defendants further admit that BioXcel expanded its institutional sales force to 70 representatives in December 2022 to cover over 1,700 target hospitals as of February 28, 2023.  Defendants further admit that Dr.

Mehta has raised approximately $500 million in capital to support BioXcel's R&D and commercial efforts.  Except as expressly admitted, Defendants deny the allegations in Paragraph 87.

88.     Defendants admit that BioXcel filed its Form 10-K for the annual period ended December 31, 2022, on March 16, 2023, which includes the quoted language in Paragraph 88. That document speaks for itself.  To the extent Paragraph 88 mischaracterizes the statements from the March 16, 2023 Form 10-K and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 88.

89.     Defendants admit that BioXcel's Form 10-K for the fiscal year ended December 31, 2022, states as follows:  "We are focused on utilizing cutting-edge technology and innovative research to develop high-value therapeutics aimed at transforming patients' lives. We employ a proprietary AI platform to reduce therapeutic development costs and potentially accelerate development timelines. Our approach leverages existing approved drugs and/or clinically evaluated product candidates together with big data and proprietary machine learning algorithms to identify new therapeutic indications.  We believe this differentiated approach has the potential to reduce the expense and time associated with drug development in diseases with substantial unmet medical needs."  Except as expressly admitted, Defendants deny the allegations in Paragraph 89.

90.     Defendants admit that BioXcel had four product candidates, BXCL501, BXCL502, BXCL701, and BXCL702.  Defendants further admit that BXCL501 is an investigational proprietary, orally dissolving film for the treatment of agitation associated with psychiatric and neurological disorders.  Defendants further admit that BioXcel planned to

19

evaluate BXCL502 initially as a monotherapy and possibly as a combination with BXCL501 for the chronic treatment of agitation in patients with dementia or other stress-related illnesses. Defendants further admit that BXCL701 is an investigational, oral innate immune activator currently being developed as a potential therapy for the treatment of aggressive forms of prostate cancer, pancreatic cancer and other solid and liquid tumors. Defendants further admit that BXCL702 is being evaluated for treatment of solid tumors. Defendants further admit that BXCL501 was most advanced clinical development program. Except as expressly admitted, Defendants deny the allegations in Paragraph 90.

**B.    BIOXCEL DECIDED TO REPURPOSE BXCL501 TO TREAT AGITATION IN ALZHEIMER'S PATIENTS**

91.    Defendants admit that BioXcel's neuroscience and immuno-oncology AI machine learning and drug discovery and development platform led to the identification and rapid development of IGALMI ( "Dex" or "BXCL510") as well as the advancement of other potential indications. Defendants further admit that Dex, launched in the U.S. as Precedex™ in 1999, is a selective α2a adrenergic receptor agonist that has a strong safety record and has been studied in over 130 clinical trials to date that has been sold in the European Union ("EU") and other countries under the trade name Dexdor® as a sedative for intensive care patients. Defendants further admit that on April 6, 2022, the FDA approved Dex to be self-administered by patients, under the supervision of a health care provider, that is placed under the tongue or behind the lower lip and is used for the acute treatment of agitation associated with schizophrenia and bipolar disorder I or II in adults. Defendants further admit that BXCL501 is an investigational proprietary, orally dissolving, film formulation of Dex for the treatment of agitation associated with psychiatric and neurological disorders. Except as expressly admitted, Defendants deny the allegations in Paragraph 91.

92.     Defendants admit that BioXcel hosted a Fourth Quarter 2021 Financial Results Conference Call on March 10, 2022, which includes the quoted language in Paragraph 92.  The transcript for that call speaks for itself.  To the extent Paragraph 92 mischaracterizes Dr. Mehta's statements and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 92.

93.     Defendants admit that IGALMI was commercially launched in July 2022. Defendants further admit that BioXcel filed its Form 10-K for the annual period ending December 31, 2022, on March 16, 2023.  The March 16, 2023 Form 10-K speaks for itself. Defendants further admit that BioXcel's net product revenues for the year ended December 31, 2022 were $375,000, for the three months ended March 31, 2023 were $206,000, and for the three months ended June 30, 2023 were $457,000.  Except as expressly admitted, Defendants deny the allegations in Paragraph 93.

94.     Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 94 regarding CW6's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 94.

**C.     BIOXCEL ANNOUNCED CLINICAL TRIAL STUDIES TO GAIN FDA APPROVAL OF BXCL501 FOR THE TREATMENT OF ALZHEIMER'S RELATED AGITATION**

95.     Defendants admit that BioXcel issued a press release on December 15, 2021, titled "BioXcel Therapeutics Initiates Pivotal Phase 3 Program of BXCL501 for Acute Treatment of Agitation in Patients with Alzheimer's Disease."  The December 15, 2021 press release speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 95.

96.     Defendants admit that BioXcel issued a press release on December 15, 2021, titled "BioXcel Therapeutics Initiates Pivotal Phase 3 Program of BXCL501 for Acute Treatment

of Agitation in Patients with Alzheimer's Disease."  The December 15, 2021 press release speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 96.

97.    Defendants admit that BioXcel issued a press release on December 15, 2021, titled "BioXcel Therapeutics Initiates Pivotal Phase 3 Program of BXCL501 for Acute Treatment of Agitation in Patients with Alzheimer's Disease."  The December 15, 2021 press release speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 97.

**D.    THE DETAILS OF BIOXCEL'S PIVOTAL PHASE III CLINICAL TRIAL, TRANQUILITY II**

98.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on https://clinicaltrials.gov, speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 98.

99.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on https://clinicaltrials.gov, speaks for itself.  Defendants lack knowledge or information sufficient to admit or deny the generic allegations regarding all "FDA clinical trials" and on that basis deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 99.

100.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on

https://clinicaltrials.gov, speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 100.

101. Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov. The study description, as reflected on https://clinicaltrials.gov, speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 101.

102. Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov. The study description, as reflected on https://clinicaltrials.gov, speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 102.

103. Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov. The study description, as reflected on https://clinicaltrials.gov, speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 103.

104. Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov. The study description, as reflected on https://clinicaltrials.gov, speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 104.

105.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on https://clinicaltrials.gov, speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 105.

106.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on https://clinicaltrials.gov, speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 106.

107.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on https://clinicaltrials.gov, speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 107.

108.    Defendants admit that a general description of a study titled "Dexmedetomidine in the Treatment of Agitation Associated With Dementia (TRANQUILITY II)," sponsored by BioXcel, is available at https://clinicaltrials.gov.  The study description, as reflected on https://clinicaltrials.gov, speaks for itself.  Defendants further admit that the study was first submitted on February 28, 2022, and that an extension of time to submit its results was first submitted on July 25, 2023.  Except as expressly admitted, Defendants deny the allegations in Paragraph 108.

**E.    DEFENDANTS TOLD INVESTORS THAT THE TRANQUILITY II TRIAL WOULD BE USED TO SUPPORT AN sNDA FOR BXCL501**

109.    Defendants admit that, on December 15, 2021, after BioXcel's initial Breakthrough Therapy designation meetings with the FDA, BioXcel announced the initiation of a program to evaluate BXCL501 for the treatment of acute agitation associated with Alzheimer's disease.  Defendants further admit that the program's two studies, TRANQUILITY II and TRANQUILITY III, were designed to evaluate the safety and efficacy of BXCL501 in adults 65 years and older across the range of illness including mild, moderate, and severe dementia in assisted living or residential facilities and nursing homes.  Except as expressly admitted, Defendants deny the allegations in Paragraph 109.

110.    Defendants admit that BioXcel hosted a First Quarter 2022 Financial Results Conference Call on May 9, 2022, which includes the quoted language in Paragraph 110.  The transcript of that call speaks for itself.  To the extent Paragraph 110 mischaracterizes Dr. Mehta's statements and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 110.

111.    Defendants admit that Dr. Mehta gave a presentation during the Bank of America Healthcare Conference on May 12, 2022, which includes the quoted language in Paragraph 111. The transcript of that presentation speaks for itself.  To the extent Paragraph 111 mischaracterizes the question Dr. Mehta was asked or Dr. Mehta's statements and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 111.

112.    Defendants admit that BioXcel hosted a Second Quarter 2022 Financial Results Conference Call on August 9, 2022, which includes the quoted language in Paragraph 112.  The transcript of that call speaks for itself.  To the extent Paragraph 112 mischaracterizes Dr. Mehta's

25

statements and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 112.

### F.    BIOXCEL HIRED AN INEXPERIENCED AND UNQUALIFIED PRINCIPAL INVESTIGATOR TO RUN TRANQUILITY II

113.    Defendants admit to engaging Segal Trials to conduct part of the TRANQUILITY II trial.  Defendants admit that an employee of Segal Trials, Dr. Caitlin Meyer, was the principal investigator of a site in North Miami, Florida where approximately 40% of the subjects participating in the trial were enrolled.  Defendants lack knowledge or information sufficient to determine when exactly Dr. Meyer began working on TRANQUILITY II, and on that basis deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 113.

114.    Defendants admit that BioXcel confirmed Dr. Meyer was a licensed medical professional at the time of her appointment to her role as principal investigator of the TRANQUILITY II North Miami, FL clinical site.  Defendants lack knowledge or information sufficient to admit or deny the remaining allegations regarding her specific licenses in Paragraph 114, and on that basis deny those allegations.

115.    Defendants admit that the Meyer Response contains observations from dates prior to September 2022.  Defendants also admit that the inclusion/exclusion criteria for TRANQUILITY II were set forth in a trial protocol and the requirements therein speak for themselves.  Because Paragraph 115 mischaracterizes the contents of the Meyer Response, and the context in which it was made, Defendants otherwise deny the allegations regarding the Meyer Response.  Defendants admit that Dr. Meyer was the principal investigator at the North Miami, FL Tranquility II trial site, and that the objective of TRANQUILITY II was to determine the safety and efficacy of BXCL501 dosing for episodes of agitation associated with dementia

26

when they occur (given as needed), for a maximum of 28 doses within a 12-week treatment period.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding Dr. Meyer's board certifications or Segal Trials' LinkedIn page, and on that basis deny those allegations.  Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 115 because the phrase "complicated and sophisticated tests" is non-specific and undefined.  Except as expressly admitted, Defendants deny the allegations in Paragraph 115.

116.    Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 116 as the publicly available professional biographies of Dr. Meyer referenced therein are not specified, and on that basis deny the allegations.

117.    Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023, which contains the quoted language in Paragraph 117.  To the extent that Paragraph 117 otherwise mischaracterizes the Meyer Response, and the context in which it was made, Defendants otherwise deny the allegations regarding the Meyer Response. Except as expressly admitted, Defendants deny the allegations in Paragraph 117.

118.    Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.  That document speaks for itself.  To the extent that Paragraph 118 mischaracterizes the Meyer Response, and the context in which it was made, Defendants otherwise deny the allegations in Paragraph 118.

119.    Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.  That document speaks for itself.  To the extent that Paragraph 119 mischaracterizes the Meyer Response, and the context in which it was made, Defendants otherwise deny those allegations. Defendants lack knowledge or information sufficient to admit

or deny the allegations regarding Dr. Meyer's actions or state of mind with respect to enrollment, and on that basis deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 119.

**G.   BIOXCEL'S FINANCING DEPENDED ON OBTAINING REGULATORY APPROVAL FOR BXCL501 FOR TREATMENT OF AGITATION IN ALZHEIMER'S PATIENTS**

120.   Defendants admit IGALMI received FDA approval on April 6, 2022 for the acute treatment of agitation associated with schizophrenia or bipolar I or II disorder in adults. Defendants further admit that IGALMI was the only BioXcel product approved for commercial sale during the Class Period, and that during that period IGALMI failed to generate substantial revenue for the Company. Defendants also admit that BioXcel has incurred significant operating losses since its inception, and has historically been reliant on outside sources of funding to sustain its operations. Except as expressly admitted, Defendants deny the allegations in Paragraph 120.

121.   Defendants admit that in order for BioXcel to become and remain profitable, the Company needed to develop and commercialize one or more product or product candidates with significant market potential. Defendants further admit that BioXcel has historically been reliant on outside sources of funding to sustain its operations, and that financing agreements with select third parties contained designated milestones upon which funds would be disbursed. Except as expressly admitted, Defendants deny the allegations in Paragraph 121.

122.   Defendants admit that BioXcel issued a press release on May 9, 2022, which includes the quoted language in Paragraph 122. To the extent Paragraph 122 mischaracterizes the May 9, 2022 press release and the context in which it was made, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 122.

123.    Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023, which includes the language quoted in Paragraph 123.  To the extent Paragraph 123 mischaracterizes BioXcel's statements in the March 16, 2023 Form 10-K, and the context in which they were made, Defendants deny the allegations regarding the March 16, 2023 Form 10-K.  Except as expressly admitted, Defendants deny the allegations in Paragraph 123.

124.    Defendants admit that BioXcel's strategic financing agreement with Oaktree Capital Management, LP and the Qatar Investment Authority included (1) a Credit Agreement dated April 19, 2022, providing up to $135 million in a delayed draw term loan; (2) a Revenue Interest Financing Agreement, dated April 19, 2022, providing up to $120 million in capped revenue interest financing on net sales of IGALMI and any other future BXCL501 products; and (3) rights to purchase up to $5 million of BioXcel common stock.  The terms of the Credit Agreement and Revenue Financing Agreement are set forth in those agreements, which speak for themselves.  Except as expressly admitted, Defendants deny the allegations in Paragraph 124.

125.    Defendants admit that the Credit Agreement, dated April 19, 2022, created a first-lien term loan facility with an aggregate principal amount of $135,000,000 across three tranches: Tranche A ($70 million), Tranche B ($35 million), and Tranche C ($30 million).  The terms of the Credit Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 125 mischaracterizes the Credit Agreement, or the surrounding context, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 125.

126.    Defendants admit that the Credit Agreement, dated April 19, 2022, created a first-lien term loan facility with an aggregate principal amount of $135,000,000 across three tranches,

29

each with designated milestones.  Defendants further admit that BioXcel received $70 million in funding pursuant to Tranche A on April 28, 2022, following the FDA's approval of IGALMI on April 5, 2022.  The terms of the Credit Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 126 mischaracterizes the Credit Agreement, or the surrounding context, the Credit Agreement speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 126.

127.    Defendants admit that the Credit Agreement, dated April 19, 2022, created a first-lien term loan facility with an aggregate principal amount of $135,000,000 across three tranches, each with designated milestones.  Defendants further admit that $35 million in Tranche B funding is conditioned upon satisfaction of certain regulatory and financial milestones, including the receipt of approval from the FDA of an NDA for the use of BXCL501 for the acute treatment of agitation associated with Alzheimer's disease.  The terms of the Credit Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 127 mischaracterizes the Credit Agreement, or the surrounding context, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 127.

128.    Defendants admit that the Credit Agreement, dated April 19, 2022, created a first-lien term loan facility with an aggregate principal amount of $135,000,000 across three tranches, each with designated milestones.  Defendants further admit that $30 million in Tranche C funding is conditioned upon satisfaction of certain conditions, including specified minimum net sales of the Company attributable to sales of BXCL501 for a trailing twelve consecutive month period.  The terms of the Credit Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 128 mischaracterizes the Credit Agreement, or the

30

surrounding context, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 128.

129.    Defendants admit that the Revenue Interest Financing Agreement, dated April 19, 2022, provided BioXcel with up to $120 million in capped revenue interest financing across three tranches, each with designated milestones.  Defendants further admit that under the Revenue Interest Financing Agreement, BioXcel was obligated to make royalty payments ranging from 0.375% to 7.750% of net sales of IGALMI, and other future BXCL501 products, if any, approved for sale in the U.S., subject to a hard cap equal to 1.75x the total amount funded. The terms of the Revenue Interest Financing Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 129 mischaracterizes the Revenue Interest Financing Agreement, or the surrounding context, the Revenue Interest Financing Agreement speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 129.

130.    Defendants admit that the Revenue Interest Financing Agreement, dated April 19, 2022, provided BioXcel with up to $120 million in capped revenue interest financing across three tranches, each with designated milestones.  Defendants further admit that BioXcel received $30 million in funding pursuant to Tranche A on July 8, 2022.  The terms of the Revenue Interest Financing Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 130 mischaracterizes the Revenue Interest Financing Agreement, or the surrounding context, the Revenue Interest Financing Agreement speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 130.

131.    Defendants admit that the Revenue Interest Financing Agreement, dated April 19, 2022, provided BioXcel with up to $120 million in capped revenue interest financing across

31

three tranches, each with designated milestones.  Defendants further admit that Tranche B and Tranche C funding is conditioned upon receipt of certain regulatory and patent related milestones and specified minimum net sales of BXCL501 during any consecutive twelve-month period.  The terms of the Revenue Interest Financing Agreement are set forth in that agreement, which speaks for itself.  To the extent that Paragraph 131 mischaracterizes the Revenue Interest Financing Agreement, or the surrounding context, the Revenue Interest Financing Agreement speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 131.

132.    Defendants admit that BioXcel hosted a First Quarter 2022 Financial Results Conference Call on May 9, 2022, which includes the quoted language in Paragraph 132.  The transcript of that call speaks for itself.  To the extent Paragraph 132 mischaracterizes Dr. Mehta's quoted statements during the May 9, 2022 earnings call and the context in which they were made, Defendants deny the allegations regarding those statements.  Defendants further admit that UBS published an analyst report on May 11, 2022, which includes the quoted language attributed to UBS in Paragraph 132.  To the extent that Paragraph 132 mischaracterizes the May 11, 2022 UBS analyst report, and the context in which it was issued, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 132.

133.    Defendants admit that the Credit Agreement, dated April 19, 2022, created a first-lien term loan facility with an aggregate principal amount of $135,000,000 across three tranches, each with designated milestones.  Defendants further admit that the Revenue Interest Financing Agreement, dated April 19, 2022, provided BioXcel with up to $120 million in capped revenue interest financing across three tranches, each with designated milestones.  The Credit Agreement and the Revenue Interest Financing Agreement speak for themselves.  To the extent that

32

Paragraph 133 mischaracterizes Credit Agreement or Revenue Interest Financing Agreement, or the surrounding context, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 133.

134.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 134 regarding CW1's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 134.

135.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 135 regarding CW4's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 135.

**H.    UNDER FINANCIAL PRESSURE, BIOXCEL RUSHED THE TRANQUILITY II PIVOTAL TRIAL**

136.    Defendants admit that BioXcel publicly reported cash and cash equivalents, total operating expenses, and cash flows on a quarterly basis in accord with its obligations under the rules and regulations governing the same.  Defendants lack knowledge or information regarding both the source(s) for the diagram in Paragraph 136 and the accuracy of the diagram's depiction of those statistics, and on that basis deny the allegations in Paragraph 136.  Defendants also lack knowledge or information sufficient to admit or deny the allegations of Paragraph 136 regarding CW4's knowledge and actions, and on that basis deny the allegations in Paragraph 136 attributed to CW4.  Except as expressly admitted, Defendants deny the allegations in Paragraph 136.

137.    Defendants admit that BioXcel filed a Form 10-Q for the period ended March 31, 2023 on May 9, 2023.  That document speaks for itself.  Defendants further admit that the May 9, 2023 Form 10-Q includes unaudited condensed consolidated statements of cash flows, reflecting cash and cash equivalents, for the three months ended March 31, 2023, of negative $28,204,000.  Defendants also admit that, as of the May 9, 2023 Form 10-Q, BioXcel had

33

received the first tranche of funding pursuant to the Revenue Interest Financing Agreement, dated April 19, 2022.  Except as expressly admitted, Defendants deny the allegations in Paragraph 137.

138.   Defendants admit that BioXcel filed a Form 10-Q for the period ended June 30, 2023 on August 14, 2023.  That document speaks for itself.  Defendants further admit that the August 14, 2023 Form 10-Q includes unaudited condensed consolidated statements of cash flows, reflecting cash and cash equivalents, for the six months ended June 30, 2023, of negative $66,180,000.  Except as expressly admitted, Defendants deny the allegations in Paragraph 138.

139.   Defendants admit that BioXcel engaged Segal Trials to conduct part of the TRANQUILITY II trial.  Defendants admit that Segal Trials' website currently states that it "is a privately held network of five research sites throughout South Florida conducting Phase I-IV research trials with emphasis on psychiatry, neurology, addiction, general medicine, healthy volunteers, infectious diseases, vaccines, psychedelics research, and women's health," which is available at www.segaltrials.com/about/.  Except as expressly admitted, Defendants deny the allegations in Paragraph 139.

140.   Defendants admit that an employee of Segal Trials, Dr. Caitlin Meyer, was the principal investigator of a site in North Miami, Florida where approximately 40% of the subjects participating in TRANQUILITY II were enrolled.  Except as expressly admitted, Defendants deny the allegations in Paragraph 140.

141.   Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 141 regarding CW1's, CW2's, or CW4's knowledge and actions, and on that basis deny the allegations in Paragraph 141.

142.     Defendants lack knowledge or information sufficient to admit or deny the conclusory allegations of Paragraph 142, and on that basis deny them.

143.     Defendants admit that analyst reports were issued by Berenberg Capital Markets on March 14 and May 10, 2022, and by Canaccord Genuity on December 5, 2022, which include the quoted language in Paragraph 143.  To the extent Paragraph 143 mischaracterizes the statements in those analyst reports and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 143.

144.     Defendants admit that analyst reports were issued by H.C. Wainwright & Co. on May 11, 2023, and by Canaccord Genuity on June 1, 2023, which include the quoted language in Paragraph 144.  To the extent Paragraph 144 mischaracterizes the statements in those analyst reports and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 144.

145.     Defendants admit that analyst reports were issued by UBS Global Research and Evidence Lab and Guggenheim on April 6, 2022, which include the quoted language in Paragraph 145.  To the extent Paragraph 145 mischaracterizes the statements in those analyst reports and the context in which they were made, Defendants deny those allegations.  Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 145 purporting to summarize the views of all investors, and on that basis deny them.  Except as expressly admitted, Defendants deny the allegations in Paragraph 145.

## I.     BIOXCEL HIRED SEGAL TRIALS TO ACCELERATE THE TRIAL (NEW)

146.     Defendants admit that BioXcel engaged Segal Trials to conduct part of the TRANQUILITY II trial.  Defendants further admit that approximately 40% of the subjects

participating in TRANQUILITY II were enrolled at a site in North Miami, Florida.  Defendants otherwise lack knowledge or information sufficient to admit or deny the allegations of Paragraph 146 regarding CW2's and CW9's knowledge or actions, and on that basis deny them.  Except as expressly admitted, Defendants deny the allegations in Paragraph 146.

147.    Defendants deny the summary allegation in the first sentence of Paragraph 147. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 147 regarding CW8's and CW9's knowledge and actions, and on that basis deny the allegations of Paragraph 147.

148.    Defendants deny the summary allegation in the first sentence of Paragraph 148. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 148 regarding CW8's and CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 148.

149.    Defendants deny the summary allegation in the first sentence of Paragraph 149. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 149 regarding CW8's and CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 149.

150.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 150 regarding CW8's and CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 150.

151.    Defendants deny the summary allegation in the first sentence of Paragraph 151. Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 151 regarding CW8's and CW9's knowledge and actions, and on that basis deny the allegations in Paragraph 151.

152.    Defendants deny the summary allegation in the first and second sentences of Paragraph 152.  Defendants also lack knowledge or information sufficient to admit or deny the allegations of Paragraph 152 regarding "fabricating enrollment and trial data," and on that basis deny them.

### J.    THE FDA'S CLINICAL TRIAL COMPLIANCE REQUIREMENTS

153.     Defendants admit that the FDA assesses compliance with statutory requirements and FDA regulations governing the conduct of non-clinical and clinical studies and applicable post-marketing activities.  Defendants further admit that applicable FDA regulations include regulations requiring sponsors to monitor the conduct and progress of a clinical investigation. Defendants further admit that the objective of FDA oversight is to ensure the reliability of safety and efficacy data submitted to the FDA in connection with marketing applications.  Except as expressly admitted, Defendants deny the allegations in Paragraph 153.

154.    Defendants admit that, according to the FDA's own website, the FDA's bioresearch monitoring program protects the rights and welfare of human subjects and assures the quality and integrity of data submitted to the agency.  Defendants further admit that the FDA issues a Form 483 when an investigator has observed conditions that may constitute violations of the Food, Drug, and Cosmetic Act or related federal law and regulation.  Defendants further admit that, under applicable FDA regulations, sponsors have certain enumerated responsibilities for conducting and monitoring clinical trials and investigations.  To the extent Paragraph 154 mischaracterizes the applicable FDA regulations, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 154.

### 1.    Bioresearch Monitoring

155.    Defendants admit that FDA's Bioresearch Monitoring Program ("BIMO") is "a comprehensive program of on-site inspections, data audits, and remote regulatory assessments

designed to monitor all aspects of the conduct and reporting of FDA regulated research."

Defendants further admit that the BIMO Program "was established to assure the quality and

integrity of data submitted to the agency in support of new product approvals and marketing

applications, as well as, to provide for protection of the rights and welfare of the thousands of

human subjects and animals involved in FDA regulated research."  Except as expressly admitted,

Defendants deny the allegations in Paragraph 155.

156.    Defendants admit that, through the BIMO Program, the FDA endeavors to verify

the accuracy and reliability of clinical trial data it receives in connection with research or

marketing applications, and assesses the quality and integrity of that data in support of regulatory

decision-making.  Defendants further admit that whether clinical data submitted to the FDA can

be used for the purposes of regulatory decision-making is established during the FDA's filing

review of a new drug application ("NDA").  Defendants further admit that the FDA conducts

both announced and unannounced inspections of clinical investigator sites in a variety of

circumstances when an NDA is not pending.  Defendants further admit that inspections may

involve interviews with the principal investigator, a review of study data, and inspection of other

records and documentation.  Defendants further admit that inspections are conducted pursuant to

21 CFR Parts 50, 56, 312, and/or 812 and in accordance with Good Clinical Practice ("GCP").

Except as expressly admitted, Defendants deny the allegations in Paragraph 156.

## 2.    A Form 483 and Its Consequences

157.    Defendants admit that, according to the FDA's own website, the FDA may issue a

Form 483 when an investigator has observed any conditions that in their judgment may

constitute violations of the Food, Drug, and Cosmetic Act or related federal law.  Defendants

lack knowledge or information sufficient to form a belief as to the truth of the allegations

regarding the frequency in which the FDA issues a written Form 483, and on that basis deny the

38

allegations in Paragraph 157. Defendants further lack knowledge or information sufficient to admit or deny the allegations regarding an FDA investigator's standard practice during the course of an investigation or inspection, and on that basis deny the allegations in Paragraph 157. Except as expressly admitted, Defendants deny the allegations in Paragraph 157.

158.     Defendants admit that the Form 483 states that "[i]f you have an objection regarding an observation, or have implemented, or plan to implement, corrective action in response to an observation, you may discuss the objection or action with the FDA representative(s) during the inspection or submit this information to FDA . . . ." Defendants further admit that a clinical investigator may respond to the observations in a Form 483 orally during the exit interview, or respond in writing after the inspection has concluded. Except as expressly admitted, Defendants deny the allegations in Paragraph 158.

159.     Defendants admit the allegations in Paragraph 159.

160.     Defendants admit that, according to the FDA's own website, any conditions or practices an investigator deems to be objectionable during inspections are listed on the Form 483 Inspection Observations. Defendants further admit that, according to the FDA's FMD-145, an Establishment Inspection Report ("EIR") "shall be transmitted within 45 calendar days of the determination that the inspection is closed per 21 C.F.R. § 20.64(d)(3)." Defendants further admit that 21 C.F.R. § 20.64(d)(3) states that an administrative action is not closed until "a final decision has been made not to take such action or such action has been taken and the matter has been concluded." Defendants lack knowledge or information sufficient to admit or deny the allegations purporting to describe the FDA's state of mind or actions in all circumstances, and on that basis deny the allegations in Paragraph 160. Except as expressly admitted, Defendants deny the allegations in Paragraph 160.

39

161.    Defendants admit that the FDA's FMDs are public-facing directives regarding the management of certain Office of Inspections and Investigations ("OII") field activities. Defendants further admit that FMDs are issued on the authority of the Associate Commissioner for Inspections and Investigations and approved by an Assistant Commissioner in OII. Defendants further admit that FMD-145 contains the quoted language in Paragraph 161. That document speaks for itself. To the extent Paragraph 161 mischaracterizes FMD-145, and the context in which it was made, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 161.

### 3.    A Sponsor's Responsibility

162.    Defendants admit that, under applicable FDA regulations, sponsors are responsible for selecting qualified investigators, providing them with the information they need to conduct an investigation properly, ensuring proper monitoring of the investigation(s), ensuring that the investigation(s) is conducted in accordance with the general investigational plan and protocols contained in the IND, maintaining an effective IND with respect to the investigations, and ensuring that FDA and all participating investigators are promptly informed of significant new adverse effects or risks with respect to the drug. Defendants further admit that BioXcel was the sponsor for the TRANQUILITY clinical trials. Defendants further admit that Dr. Risinger was designated as the "Study Chair" for the TRANQUILITY II trial, as made publicly available on https://www.clinicaltrials.gov. Defendants further admit that, under applicable FDA regulations, sponsors have certain enumerated responsibilities for clinical trials and investigations. Except as expressly admitted, Defendants deny the allegations in Paragraph 162.

163.    Defendants admit that 21 CFR § 312.50 contains the quoted language in Paragraph 163 (without Plaintiffs' alterations). The regulation speaks for itself. Except as expressly admitted, Defendants deny the allegation in Paragraph 163.

164.    Defendants admit that 21 CFR § 312.50 and 21 C.F.R. § 312.56 describe the responsibilities of sponsors in connection with clinical trials.  These regulations speak for themselves.  Except as expressly admitted, Defendants deny the allegation in Paragraph 164.

165.    Defendants admit that sponsors are required to monitor the progress of clinical investigations conducted pursuant to investigational new drug applications.  Defendants further admit that FDA guidance enables sponsors to use a variety of approaches to fulfill their monitoring responsibilities, including through audits of clinical trial sites, to ensure investigational activities are being carried out in accordance with the trial protocol, FDA regulations, and GCP.  Defendants admit that sponsor oversight is intended to protect the rights, safety, and welfare of participants in the clinical investigation and the integrity of the data submitted to FDA.  Except as expressly admitted, Defendants deny the allegation in Paragraph 165.

166.    Defendants admit that, to the best of their knowledge and based on their experience, when a study sponsor engages a principal investigator, there is typically a contract in place that requires the principal investigator notify the sponsor upon receipt of a Form 483. Except as expressly admitted, Defendants deny the allegations in Paragraph 166.

167.    Defendants deny the allegations in Paragraph 167.

**K.    THE FDA INVESTIGATED DR. MEYER'S TRIAL SITE AND ISSUED A FORM 483**

168.    Defendants deny the allegations in Paragraph 168.

169.    Defendants admit that the FDA's inspection of the North Miami, FL clinical trial site took place from December 5 to December 21, 2022.  Defendants further admit that the investigation was done pursuant to the FDA's Bioresearch Monitoring ("BIMO") program.  To the extent that the allegations in Paragraph 169 mischaracterize the BIMO program, Defendants

otherwise deny the allegations in Paragraph 169.  Except as expressly admitted, Defendants deny the allegations in Paragraph 169.

170. Defendants admit that the FDA has published a description of the BIMO Program, which is available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/fda-bioresearch-monitoring-information/bioresearch-monitoring-program-information.  To the extent that the allegations in Paragraph 170 mischaracterize the focus or scope of the BIMO Program, Defendants otherwise deny the allegations in Paragraph 170.  Except as expressly admitted, Defendants deny the allegations in Paragraph 170.

171. Defendants admit that on April 6, 2022, FDA approved BXCL501 (IGALMI) for the acute treatment of agitation associated with schizophrenia or bipolar I or II disorder in adults, as set forth in the associated label.  Defendants further admit that the TRANQUILITY II trial sought to evaluate the safety and efficacy of BXCL501 to treat agitation associated with dementia due to probable Alzheimer's disease, and potentially seek FDA approval for a new indication.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding the reason(s) BIMO inspections are typically initiated, and on that basis deny the allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 171.

172. Defendants admit that the FDA investigation was performed by Dr. Richard A. Lyght.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding Dr. Lyght's credentials and professional experience, and on that basis deny the allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 172.

173. Defendants admit the allegations in Paragraph 173.

174. Defendants admit that the Form 483 contains three observations from the FDA's investigation.  That document speaks for itself.  To the extent that Paragraph 174

mischaracterizes the Meyer Response, and the context in which it was made, Defendants otherwise deny the allegations in Paragraph 174.

175.    Defendants admit that the Form 483 contained observations from the FDA's investigation, including the quoted language in Paragraph 175.  To the extent the allegations in Paragraph 175 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 175.

176.    Defendants admit that the Form 483 contained observations from the FDA's investigation.  To the extent the allegations in Paragraph 176 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 176.

177.    Defendants deny the allegations in Paragraph 177.

178.    Defendants admit that the Form 483 contained observations from the FDA's investigation, including the quoted language in Paragraph 178.  To the extent the allegations in Paragraph 178 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 178.

179.    Defendants admit that the Form 483 contained observations from the FDA's investigation.  To the extent the allegations in Paragraph 179 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 179.

180.    Defendants lack knowledge or information sufficient to admit or deny the allegations regarding standard BIMO investigatory practices applicable to every inspection conducted by the FDA and the allegations regarding the specific aspects of Dr. Lyght's investigation, and on that basis deny those allegations.  To the extent the allegations in Paragraph

180 refer to and quote the contents of the Form 483, the Form 483 speaks for itself. To the extent that the allegations in Paragraph 180 mischaracterize the contents of the Form 483 and the context in which its observations were made, Defendants otherwise deny the allegations in Paragraph 180.

181. Defendants admit that the Form 483 contained observations from the FDA's investigation. That document speaks for itself. To the extent Paragraph 181 mischaracterizes the contents of the Form 483, including the severity of the observations and the context in which its observations were made, Defendants otherwise deny the allegations in Paragraph 181. Except as expressly admitted, Defendants deny the allegations in Paragraph 181.

182. Defendants admit that the Form 483 contained observations from the FDA's investigation. That document speaks for itself. To the extent Paragraph 182 mischaracterizes the contents of the Form 483, and the context in which its observations were made, Defendants otherwise deny the allegations in Paragraph 182. Defendants further admit that a clinical trial protocol is required to contain the criteria for patient selection and exclusion in order to define the patient population under investigation and to support the objective of the clinical trial. Except as expressly admitted, Defendants deny the allegations in Paragraph 182, including that the data from 25 patients could not be used to support an sNDA.

183. Defendants admit that the Form 483 contained observations from the FDA's investigation, including the quoted language Paragraph 183. To the extent the allegations in Paragraph 183 refer to and quote the contents of the Form 483, the Form 483 speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 183.

184. Defendants admit that the Form 483 contained observations from the FDA's investigation. To the extent the allegations in Paragraph 184 refer to and quote the contents of

the Form 483, the Form 483 speaks for itself.  To the extent Paragraph 184 mischaracterizes the contents of the Form 483, and the context in which its observations were made, Defendants otherwise deny the allegations in Paragraph 184.

185.    Defendants admit that a UDS, or urine drug screen, measures whether patients have drugs in their system.  To the extent the allegations in Paragraph 185 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  To the extent Paragraph 185 mischaracterizes the contents of the Form 483, including the severity of the observations and the context in which its observations were made, Defendants deny those allegations.  Defendants also admit that the TRANQULITY II Trial Protocol contains a list of exclusion criteria, including those cited in Paragraph 185. To the extent the allegations in Paragraph 185 refer to and quote the contents of the TRANQULITY II Trial Protocol, the TRANQULITY II Trial Protocol speaks for itself.  To the extent Paragraph 185 mischaracterizes the contents of the TRANQULITY II Trial Protocol, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 185.

186.    Defendants admit that, according to the TRANQUILITY II Trial Protocol, a UDS is required at screening, which is to be performed within 45 days before the first dose of the study drug.  Defendants further admit that, according to the TRANQUILITY II Trial Protocol, a UDS will be recollected if more than 21 days have passed since the initial collection at the screening visit.  To the extent the allegations in Paragraph 186 refer to and quote the contents of the TRANQULITY II Trial Protocol, the TRANQULITY II Trial Protocol speaks for itself.  To the extent Paragraph 186 mischaracterizes the contents of the TRANQULITY II Trial Protocol, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 186.

187.    Defendants admit that the Form 483 contained observations from the FDA's inspection of the North Miami trial site.  To the extent the allegations in Paragraph 187 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 187.

188.    Defendants deny the allegations in Paragraph 188.

**L.      DR. MEYER FABRICATED AN EMAIL TO HIDE A SECOND UNREPORTED SAE**

189.    Defendants admit that, as described in BioXcel's Form 8-K dated June 29, 2023, the Company disclosed that in May 2023 it discovered Dr. Meyer "may have fabricated email correspondence" regarding the reporting of an SAE.  Defendants further admit that on June 21, 2023, Dr. Meyer told BioXcel that she had fabricated email correspondence regarding the reporting of an SAE.  To the extent that the allegations in Paragraph 189 refer to and quote the contents of BioXcel's Form 8-K dated June 29, 2023, the Form 8-K dated June 29, 2023 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 189.

190.    Defendants admit that, as described in BioXcel's Form 8-K dated June 29, 2023, Dr. Meyer delayed in reporting two separate SAEs in connection with the TRANQUILITY II trial.  Defendants further admit that on June 21, 2023, Dr. Meyer told BioXcel that she had fabricated email correspondence regarding the reporting of an SAE.  Except as expressly admitted, Defendants the allegations in Paragraph 190.

191.    Defendants deny the allegations in Paragraph 191.

**M.      DR. MEYER'S RESPONSE TO THE FDA (REVISED)**

192.    Defendants admit the allegations in Paragraph 192.

193.    Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023, which contains the quoted language in Paragraph 193.  To the extent

Paragraph 193 otherwise mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations in Paragraph 193.  Except as expressly admitted, Defendants deny the allegations in Paragraph 193.

194.    Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023, which contains the quoted language in Paragraph 194.  To the extent Paragraph 194 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations in Paragraph 194.  Except as expressly admitted, Defendants deny the allegations in Paragraph 194.

195.    Defendants admit that the Meyer Response responds to each of the Form 483's three observations.  Defendants also admit that the FDA issued an EIR on August 1, 2024.  In its September 29, 2025 Order, the Court held that the remaining allegations in Paragraph 195 regarding Plaintiffs' interpretation of EIR-related regulations were "inaccurate" and do not support an inference of scienter.  Defendants deny the remaining allegations in Paragraph 195.

196.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  To the extent the allegations in Paragraph 196 refer to and quote the contents of the Form 483 and the Meyer Response, the Form 483 and the Meyer Response speak for themselves.  Except as expressly admitted, Defendants deny the allegations in Paragraph 196.

197.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  That document speaks for itself.  To the extent Paragraph 197 mischaracterizes the Meyer Response, and the context in which it was made, Defendants otherwise deny the allegations in Paragraph 197.  Except as expressly admitted,

47

Defendants deny the allegations in Paragraph 197, including that the patients were not properly enrolled.

198.    Defendants admit that the Form 483 contained observations from the FDA's investigation.  To the extent the allegations in Paragraph 198 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 198.

199.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  To the extent the allegations in Paragraph 199 refer to and quote the contents of the Meyer Response, the Meyer Response speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 199.

200.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  To the extent the allegations in Paragraph 200 refer to and quote the contents of the Meyer Response, the Meyer Response speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 200.

201.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  To the extent the allegations in Paragraph 201 refer to and quote the contents of the Meyer Response, the Meyer Response speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 201.

202.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  That document speaks for itself.  To the extent Paragraph 202 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny those allegations.  Defendants deny that there was no documentation or

evidence of patients having probable Alzheimer' disease.  Except as expressly admitted, Defendants deny the allegations in Paragraph 202.

203.    Defendants admit that the Form 483 contained observations from the FDA's investigation.  To the extent the allegations in Paragraph 203 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 203.

204.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  To the extent the allegations in Paragraph 204 refer to and quote the contents the Meyer Response, the Meyer Response speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 204.

205.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  That document speaks for itself.  To the extent Paragraph 205 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations in Paragraph 205.  Defendants further admit that the Meyer Response reflects that Dr. Meyer generated notes to file regarding the satisfaction of inclusion and exclusion criteria for the trial.  Except as expressly admitted, Defendants deny the allegations in Paragraph 205.

206.    Defendants admit that the Form 483 contained observations from the FDA's investigation.  To the extent the allegations in Paragraph 206 refer to and quote the contents of the Form 483, the Form 483 speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 206.

207.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  That document speaks for itself.  To the extent

Paragraph 207 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations in Paragraph 207.  Except as expressly admitted, Defendants deny the allegations in Paragraph 207.

208.  Defendants deny the allegations in Paragraph 208.

**N.  PLAINTIFFS' EXPERT'S CONCLUSIONS REGARDING THE IMPLICATIONS OF THE FORM 483 AND THE MEYER RESPONSE**

209.  Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 209, and on that basis deny the allegations.

210.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding Dr. Wooten's credentials, clinical trial experience, or professional background, and on that basis deny those allegations.  Defendants otherwise deny the allegations in Paragraph 210.

211.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding Dr. Wooten's review of materials related to this case or her experience with FDA clinical trials, and on that basis deny those allegations.  Defendants otherwise deny the allegations in Paragraph 211.

212.  Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  That document speaks for itself.  To the extent Paragraph 212 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations in Paragraph 212.  Defendants otherwise deny the allegations in Paragraph 212.

213.  Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483.  That document speaks for itself.  To the extent Paragraph 213 mischaracterizes the Meyer Response, and the context in which it was made,

Defendants deny the allegations in Paragraph 213. Defendants admit that the UDS measures whether patients have drugs in their system. Defendants otherwise deny the allegations in Paragraph 213.

214.    Defendants admit that the Meyer Response contains written responses to the observations identified in the FDA's Form 483. That document speaks for itself. To the extent Paragraph 214 mischaracterizes the Meyer Response, and the context in which it was made, Defendants deny the allegations in Paragraph 214. Defendants admit that the UDS measures whether patients have drugs in their system. Defendants otherwise deny the allegations in Paragraph 214.

**O.    POST CLASS PERIOD EVENT CONFIRM THAT THE TRANQUILITY II STUDY CANNOT BE USED TO SUPPORT AN sNDA FOR BXCL501 (NEW FACTS ADDED)**

215.  In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore no response is required to the allegations in Paragraph 215. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

216. In its September 29, 2025 Order, the Court held that Plaintiffs' allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation, and therefore Defendants deny the allegations in Paragraph 216 insofar as they relate to the August 14, 2023 disclosure. The Court also declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore to the extent that Paragraph 216 contains such allegations no response is required. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

217. In its September 29, 2025 Order, the Court held that Plaintiffs' allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation, and therefore Defendants deny the allegations in Paragraph 217 insofar as they relate to the August 14, 2023 disclosure. The Court also declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore to the extent that Paragraph 217 contains such allegations no response is required. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

218. In its September 29, 2025 Order, the Court held that Plaintiffs' allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation, and therefore Defendants deny the allegations in Paragraph 218 insofar as they relate to the August 14, 2023 disclosure. The Court also declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore to the extent that Paragraph 218 contains such allegations no response is required. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

219. In its September 29, 2025 Order, the Court held that Plaintiffs' allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation, and therefore Defendants deny the allegations in Paragraph 219 insofar as they relate to the August 14, 2023 disclosure. The Court also declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore to the extent that Paragraph 219 contains such allegations no response

52

is required. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

220. In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore no response is required to the allegations in Paragraph 220. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

221. In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore no response is required to the allegations in Paragraph 221. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

222. In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore no response is required to the allegations in Paragraph 222.

Defendants admit that on October 11, 2023, BioXcel had a Type B/Breakthrough Therapy designation meeting with the FDA to seek feedback from the FDA as to whether our data package consisting of TRANQUILITY I and II, along with the clinical pharmacology and toxicology programs previously discussed with the FDA, would be sufficient to support an sNDA submission for the potential use of BXCL501 to treat agitation in patients with mild to moderate dementia due to probable Alzheimer's disease in either the at-home or ALF setting, or, if not, what additional data would be required. Defendants further admit that a Type B meeting

53

with the FDA is typically held to discuss the overall development program for products granted breakthrough therapy designation status. Except as expressly admitted, Defendants deny the allegations in Paragraph 222.

223. In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore no response is required to the allegations in Paragraph 223. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

224. In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial and updates to BioXcel's risk disclosures, and therefore no response is required to the allegations in Paragraph 224.

Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2023 with the SEC on March 22, 2024, which includes the language quoted in Paragraph 224. That document speaks for itself. To the extent Paragraph 224 mischaracterizes BioXcel's statements in the March 22, 2024 Form 10-K, and the context in which they were made, Defendants otherwise deny the allegations regarding the March 22, 2024 Form 10-K. Except as expressly admitted, Defendants deny the allegations in Paragraph 224.

225. In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 225. To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

54

226.    In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 226.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

227.    In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 227.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

228.    In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 228.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

229.    In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 229.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

230.    In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 230.

Defendants admit that BioXcel filed a Form 10-Q for the quarterly period ended June 30, 2024 with the SEC on August 6, 2024, which includes the language quoted in Paragraph 230. That document speaks for itself.  To the extent Paragraph 230 mischaracterizes BioXcel's statements in the August 6, 2024 Form 10-Q, and the context in which they were made,

Defendants deny the allegations regarding the August 6, 2024 Form 10-Q.  Except as expressly admitted, Defendants deny the allegations in Paragraph 230.

231.   In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 231.

Defendants admit that BioXcel filed a Form 10-Q for the quarterly period ended June 30, 2024 with the SEC on August 6, 2024, which includes the language quoted in Paragraph 230. That document speaks for itself.  To the extent Paragraph 230 mischaracterizes BioXcel's statements in the August 6, 2024 Form 10-Q, and the context in which they were made, Defendants deny the allegations regarding the August 6, 2024 Form 10-Q.  Except as expressly admitted, Defendants deny the allegations in Paragraph 231.

232.   In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 232.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

233.   In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 233.

Defendants admit that BioXcel hosted a Third Quarter 2024 Earnings Conference Call on November 14, 2024, which includes the quoted language in Paragraph 233.  To the extent Paragraph 233 mischaracterizes Dr. Mehta's statements and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 233.

234.    In its September 29, 2025 Order, the Court declined to consider post-Class Period allegations, including allegations regarding the TRANQUILITY In-Care trial, and therefore no response is required to the allegations in Paragraph 234.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

## V.    THE TRUTH IS REVEALED

235.    Defendants admit BioXcel disclosed on June 29, 2023, that, in connection with FDA's inspection of the applicable trial site from December 5 through 21, 2022, FDA had issued a Form 483 to Dr. Meyer on December 21, 2022 identifying its observations at the site, that Dr. Meyer had responded to the Form 483, and that no further action had been taken.  Defendants further admit BioXcel announced on the same date that it had learned of Dr. Meyer's fabricated email the week before, that its investigation was ongoing, and that the fabricated email had been provided to FDA during FDA's inspection from December 5 through 21 2022.  Defendants further admit that BioXcel warned:  "Developments relating to the Company's TRANQUILITY II Phase 3 trial may impact the timing of the Company's development plans for, and prospects for regulatory approval of, BXCL501 for the acute treatment of agitation associated with dementia in patients with probable Alzheimer's disease."

In its September 29, 2025 Order, the Court held that the allegations in Paragraph 246 concerning alleged disclosures on August 14, 2023, failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiff's claims.

Except as expressly admitted, Defendants deny the allegations in Paragraph 235.

### A.    JUNE 29, 2023

57

236. Defendants admit that BioXcel filed a Form 8-K on June 29, 2023, which includes the quoted language in Paragraph 236. The June 29, 2023 Form 8-K speaks for itself. To the extent Paragraph 236 mischaracterizes the statements from the June 29, 2023 Form 8-K and the context in which they were made, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 236.

237. Defendants admit that BioXcel filed a Form 8-K on June 29, 2023, which includes the quoted language in Paragraph 237. The June 29, 2023 Form 8-K speaks for itself. To the extent Paragraph 237 mischaracterizes the statements from the June 29, 2023 Form 8-K and the context in which they were made, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 237.

238. Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 238. The transcript of that call speaks for itself. To the extent Paragraph 238 mischaracterizes the question Dr. Risinger was asked or Dr. Risinger's statements and the context in which they were made, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 238.

239. Defendants admit that BioXcel's stock price was lower at the close of trading on June 29, 2023, than it was at the close of trading on June 28, 2023. Except as expressly admitted, Defendants deny the allegations in Paragraph 239.

240. Defendants admit that analyst reports were issued by Guggenheim and Canaccord Genuity on June 29, 2023, which include the quoted language in Paragraph 240. To the extent Paragraph 240 mischaracterizes the statements in the analyst reports and the context in which

they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 240.

241.    Defendants deny the allegations in paragraph 241.

242.    Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 242.  The transcript of that call speaks for itself.  To the extent Paragraph 242 mischaracterizes the question asked and the context in which it was asked, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 242.

243.    Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 243.  The transcript of that call speaks for itself.  To the extent Paragraph 243 mischaracterizes the question Dr. Risinger was asked or Dr. Risinger's statements and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 243.

244.    Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 244.  The transcript of that call speaks for itself.  To the extent Paragraph 244 mischaracterizes the question asked and the context in which it was asked, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 244.

245.    Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 245.  The transcript of that call speaks for itself.  To the extent Paragraph 245 mischaracterizes the question

asked and the context in which it was asked, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 245.

**B.      AUGUST 14, 2023**

246.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 246 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

247.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 247 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

248.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 248 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

249.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 249 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

250.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 250 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

251.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 251 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

252.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 252 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

60

253.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 253 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

254.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 254 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

255.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 255 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

256.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 256 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

257.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 257 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

258.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 258 failed to establish loss causation and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

## VI.    DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

259.    Defendants deny the allegations in Paragraph 259.

### A.    MARCH 9, 2023:  TRANQUILITY II TRIAL WAS "FULLY ENROLLED" (NEW FACTS ADDED)

260.    Defendants admit that Dr. Mehta, Dr. Risinger, and Mr. Steinhart attended a March 9, 2023 earnings conference call to discuss the Company's FY2022 fourth-quarter and year-end earnings.  Defendants further admit that Dr. Mehta made public statements on the March 9, 2023 earnings call, including the language quoted in Paragraph 260 (without Plaintiff's emphasis).  The transcript of that call speaks for itself.  To the extent that Paragraph 260 mischaracterizes Dr. Mehta's quoted statement and the context in which it was made, including through added emphasis, Defendants otherwise deny the allegations regarding those statements.  Except as expressly admitted, Defendants deny the allegations in Paragraph 260.

261.    Defendants deny the allegations in Paragraph 261.

**B.    MARCH 16, 2023: "PATIENT ENROLLMENT IS COMPLETE FOR TRANQUILITY II." (NEW FACTS ADDED)**

262.    Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023, which includes the language quoted in Paragraph 262.  That document speaks for itself.  To the extent Paragraph 262 mischaracterizes BioXcel's statements in the March 16, 2023 Form 10-K and the context in which they were made, including through added emphasis, Defendants otherwise deny the allegations regarding the March 16, 2023 Form 10-K.  Except as expressly admitted, Defendants deny the allegations in Paragraph 262.

263.    Defendants deny the allegations in Paragraph 263.

**C.    MARCH 16, 2023: RISK DISCLOSURE ABOUT THIRD PARTY COMPLIANCE WITH LEGAL AND REGULATORY DUTIES (NEW FACTS ADDED)**

264.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 264 were not sufficient to plead a materially misleading statement or omission and therefore no

response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

265.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 265 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

266.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 266 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

**D.     MARCH 16, 203:  STATEMENT THAT BIOXCEL HAD ENOUGH CASH FOR THE NEXT TWELVE MONTHS**

267.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 267 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

268.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 268 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

269.     In its September 29, 2025 Order, the Court held that the allegations in Paragraph 269 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

270. In its September 29, 2025 Order, the Court held that the allegations in Paragraph 270 were not sufficient to plead a materially misleading statement or omission and therefore no response is required. To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

271. In its September 29, 2025 Order, the Court held that the allegations in Paragraph 271 were not sufficient to plead a materially misleading statement or omission and therefore no response is required. To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

272. In its September 29, 2025 Order, the Court held that the allegations in Paragraph 272 were not sufficient to plead a materially misleading statement or omission and therefore no response is required. To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

273. In its September 29, 2025 Order, the Court held that the allegations in Paragraph 273 were not sufficient to plead a materially misleading statement or omission and therefore no response is required. To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

### E.   MAY 9, 2023: STATEMENT THAT THE TRANQUILITY II TRIAL "IS COMPLETED" (NEW FACTS ADDED)

274. Defendants admit that on May 9, 2023, Dr. Risinger made public statements at the Bank of America Healthcare Conference, including the language quoted in Paragraph 274. To the extent that Paragraph 274 mischaracterizes the statements made by Dr. Risinger at the May 9, 2023 Bank of America Healthcare Conference and the context in which they were made, including through added emphasis, Defendants otherwise deny the allegations related to those statements. Except as expressly admitted, Defendants deny the allegations in Paragraph 274.

275.    Defendants deny the allegations in Paragraph 275.

276.    Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 276 regarding confidential witnesses' knowledge and actions, and on that basis deny them.  Defendants further deny any remaining allegations in Paragraph 276.

277.    Defendants deny the allegations in Paragraph 277.

**F.    JUNE 8, 2023: STATEMENT REGARDING TRANQUILITY II BEING USED TO SUPPORT AN sNDA FOR BXCL501**

278.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 278 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

279.    In its September 29, 2025 Order, the Court held that the allegations in Paragraph 279 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.  To the extent that a response is required, Defendants deny that there is any basis in law or fact for Plaintiffs' claims.

## VII.   SCIENTER ALLEGATIONS

280.    Defendants deny the allegations in Paragraph 280.

281.    Defendants deny the allegations in Paragraph 281.

**A.    THE INDIVIDUAL DEFENDANTS KNEW, OR RECKLESSLY DISREGARDED, THAT THEIR STATEMENTS WERE FALSE AND MISLEADING (REVISED)**

282.    Defendants admit that the FDA's inspection of the North Miami TRANQUILITY II clinical trial site took place from December 5 to December 21, 2022.  Defendants further admit that the Form 483 was issued to Dr. Meyer on December 21, 2022 following the FDA's investigation.  Except as expressly admitted, Defendants deny the allegations in Paragraph 282.

### 1.    BioXcel Pushes for an Expedited Trial (NEW)

283.    To the extent that Paragraph 283 contains confidential witness allegations, Defendants lack knowledge or information sufficient to admit or deny those allegations, and on that basis deny them.  Defendants otherwise deny the allegations in Paragraph 283.

284.    Defendants lack knowledge or information sufficient to admit or deny the allegations regarding confidential witnesses and the internal operation of Segal Trials in Paragraph 284, and on that basis deny them.  Defendants otherwise deny the allegations in Paragraph 284.

285.    Defendants lack knowledge or information sufficient to admit or deny the allegations regarding confidential witnesses in Paragraph 285, and on that basis deny them. Defendants otherwise deny the allegations of Paragraph 285.

### 2.    The Form 483 Letter

286.    Defendants admit that the FDA's inspection of the North Miami TRANQUILITY II clinical trial site took place from December 5 to December 21, 2022.  Defendants further admit that the Form 483 was issued on December 21, 2022, immediately following the FDA's investigation.  Defendants further admit that the Form 483 was issued prior to any filing of an sNDA for BXCL501.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the FDA's motivation for initiating the investigation into the North Miami clinical trial site, and on that basis deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 286.

287.    Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 287.  The transcript of the call speaks for itself.  To the extent Paragraph 287 mischaracterizes the question Dr. Risinger was asked or Dr. Risinger's statements and the context in which they were made,

66

Defendants deny those allegations.  Defendants further deny the allegations in Paragraph 287 to the extent they purport to assert that Defendants' knowledge of the Form 483 issued on December 21, 2022, provides a basis for liability for Defendants' public statements.  Except as expressly admitted, Defendants deny the allegations in Paragraph 287.

288.    Defendants admit that, to the best of their knowledge and based on their experience, when a study sponsor engages a principal investigator, there is typically a contract in place that requires the principal investigator notify the sponsor the upon receipt of a Form 483. Except as expressly admitted, Defendants deny the allegations in Paragraph 288.

289.    Defendants admit that sponsors are required to monitor the progress of clinical investigations conducted pursuant to investigational new drug applications.  Defendants further admit that FDA guidance enables sponsors to use a variety of approaches to fulfill their monitoring responsibilities to ensure investigational activities are being carried out in accordance with the trial protocol, FDA regulations, and GCP.   Defendants further admit that prior to or upon receipt of the Form 483, BioXcel was aware of the FDA's observations from the North Miami, FL site inspection.  Except as expressly admitted, Defendants deny the allegations in Paragraph 289.

290.    Defendants admit that prior to or upon receipt of the Form 483, BioXcel was aware of the FDA's observations from the North Miami, FL site inspection.  Except as expressly admitted, Defendants deny the allegations in Paragraph 290.

291.    Defendants admit that both a study sponsor and investigators are required, upon request from any properly authorized officer or employee of the FDA, at reasonable times, to permit such officer or employee to have access to and copy and verify and records and reports relating to a clinical investigation.  Defendants further admit that a study sponsor is obligated to

67

direct an investigator's compliance with the signed agreement (Form FDA-1572), the general investigational plan, or the requirements of Part 312 or other applicable parts upon discovering that an investigator is out of compliance.  Defendants further admit that sponsors are required to review and evaluate the evidence relating to the safety and effectiveness of the drug obtained from investigators.  Except as expressly admitted, Defendants deny the allegations in Paragraph 291.

292.    Defendants admit that the Form 483 is not a final agency determination of whether any condition is in violation of the Food, Drug, and Cosmetic Act, or any of its relevant regulations.  Defendants further admit that the FDA considers the Form 483, along with a sponsor's or investigator's responses and all other evidence or documentation collected on-site, to determine what further action, if any, is appropriate to protect public health.  Except as expressly admitted, Defendants deny the allegations in Paragraph 292.

293.    Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023, which includes the language quoted in Paragraph 293.  That document speaks for itself.  To the extent Paragraph 293 mischaracterizes BioXcel's statements in the March 16, 2023 Form 10-K, and the context in which they were made, Defendants deny the allegations regarding the March 16, 2023 Form 10-K.  Except as expressly admitted, Defendants deny the allegations in Paragraph 293.

294.    Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023, which includes the language quoted in Paragraph 294.  That document speaks for itself.  To the extent Paragraph 294 mischaracterizes BioXcel's statements in the March 16, 2023 Form 10-K, and the context in which they were

made, Defendants deny the allegations regarding the March 16, 2023 Form 10-K.  Except as expressly admitted, Defendants deny the allegations in Paragraph 294.

### 3.    The Meyer Response to the Form 483

295.    Defendants admit that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.  To the extent the allegations in Paragraph 295 refer to and quote the contents of the Meyer Response, the Meyer Response speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 295.

296.    Defendants admit that they were aware that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.  Defendants deny the allegations in Paragraph 296 to the extent they purport to assert that Defendants' knowledge of Dr. Meyer's response provides a basis for liability for Defendants' public statements.  Except as expressly admitted, Defendants deny the allegations in Paragraph 296.

297.    Defendants admit that BioXcel held a TRANQUILITY II Top Line Results Conference Call on June 29, 2023, which includes the quoted language in Paragraph 297 (without Plaintiffs' alterations).  The transcript of that call speaks for itself.  To the extent Paragraph 297 mischaracterizes Dr. Risinger's statement and the context in which it was made, Defendants deny those allegations.  Defendants admit that they were aware that Dr. Meyer provided a response to the FDA's Form 483 on January 13, 2023.   Except as expressly admitted, Defendants deny the allegations in Paragraph 297.

298.    Defendants deny the allegations in Paragraph 298.

### 4.    BioXcel's Failure to Timely Receive an EIR (REVISED)

299.    Defendants deny the allegations in Paragraph 299.

### 5.    Defendants' Experience with Clinical Trials

300. Defendants admit that Dr. Mehta and Dr. Risinger had significant experience with conducting and analyzing clinical trials. Defendants otherwise deny the allegations in Paragraph 300.

301. Defendants admit the allegations in Paragraph 301.

302. Defendants admit that during his tenure at BioXcel, Dr. Mehta has served as the Company's Chief Executive Officer ("CEO"). Defendants further admit that as CEO, Dr. Mehta was responsible for oversight and strategic decisions regarding clinical trials being conducted by the Company. To the extent that Paragraph 302 mischaracterizes Dr. Mehta's experience with clinical trials, Defendants deny the allegations in Paragraph 302. Except as expressly admitted, Defendants deny the allegations in Paragraph 302.

303. Defendants admit the allegations in Paragraph 303.

304. Defendants admit that Dr. Risinger has served as the "Study Chair" or "Study Director" of a number of clinical trials; that information is publicly available at https://www.clinicaltrials.gov. To the extent Paragraph 304 mischaracterizes or misrepresents the information regarding Dr. Risinger available on https://www.clinicaltrials.gov, Defendants deny those allegations. Except as expressly admitted, Defendants deny the allegations in Paragraph 304.

305. Defendants admit that they generally understand the regulatory requirements for conducting a well-controlled and adequate clinical trial, and the standards for FDA approval. Defendants otherwise deny the allegations in Paragraph 305.

### 6. The FDA Forced Defendants to Repeat TRANQUILITY II

306. Defendants admit that BioXcel met with the FDA regarding its BXCL501 development program, including in October 2023 and February 2024. Except as expressly admitted, Defendants deny the allegations in Paragraph 306.

70

### 7.    BioXcel Updated Its Risk Disclosures in August 2023

307.    Defendants admit that BioXcel filed a Form 10-Q for the quarterly period ended Juen 30, 2023 with the SEC on August 14, 2023, which includes the language quoted in Paragraph 307.  That document speaks for itself.  To the extent Paragraph 123 mischaracterizes BioXcel's statements in the August 14, 2023 Form 10-Q, and the context in which they were made, Defendants deny the allegations regarding the August 14, 2023 Form 10-Q.  Except as expressly admitted, Defendants deny the allegations in Paragraph 307.

308.    Defendants deny the allegations in Paragraph 308.

### 8.    The Success and Funding of the Company Depended on Approval for BXCL501 for Alzheimer's Patients

309.    Defendants admit that IGALMI is BioXcel's only FDA-approved product on the market.  Defendants further admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023 stating the Company is "dependent on the success of IGALMI, and three of our product candidates, BXCL501, BXCL502, and BXCL701."  Defendants further admit that, at the time of the March 16, 2023 10-K, BioXcel was sponsoring a Phase 1b/2 clinical proof-of-concept trial for BXCL701.  Except as expressly admitted, Defendants deny the allegation in Paragraph 309.

310.    Defendants admit that BioXcel entered into strategic financing agreements with funds managed by Oaktree Capital Management, L.P. and Qatar Investment Authority.  Defendants further admit that, as described in BioXcel's April 19, 2022 Form 8-K, BioXcel may borrow funds under the Oaktree agreement upon satisfaction of certain conditions, including among other things receipt of certain regulatory and financial milestones.  Defendants further admit that BioXcel filed a Form 10-Q for the quarterly period ended June 30, 2023 with the SEC on August 14, 2023 where the Company expressed "substantial doubt regarding our ability to

continue as a going concern."   Except as expressly admitted, Defendants deny the allegations in Paragraph 310.

311.    Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023, which includes the language quoted in Paragraph 311.  That document speaks for itself.  Defendants further admit that this language appears as a risk factor in subsequent SEC filings, including the Form 10-Q for the quarterly period ended March 31, 2023 filed on May 9, 2023.  Because Paragraph 311 mischaracterizes BioXcel's statements in the March 16, 2023 Form 10-K, and the context in which they were made, Defendants otherwise deny the allegations regarding the March 16, 2023 Form 10-K. Except as expressly admitted, Defendants deny the allegations in Paragraph 311.

**9.        Discussions with Analysts About TRANQUILITY II Trials**

312.    Defendants aver that some investors were interested in the progress of the TRANQUILITY II trial, and its other drug development programs.  Defendants lack knowledge or information sufficient to admit or deny the allegations regarding the particularized interests of all investors, and on that basis deny the allegations in Paragraph 312.

313.    Defendants admit that BioXcel held earnings calls on March 10, 2022,  August 9, 2022, November 10, 2022, March 9, 2023, and May 8, 2023, which include the quoted language in Paragraph 313.  Defendants further admit that BioXcel held a Commercial Day call on October 18, 2022, which includes the remaining quoted language in Paragraph 313.  The transcripts of those calls speak for themselves.  To the extent Paragraph 313 mischaracterizes the statements contained in the transcripts of those calls and the context in which they were made, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 313.

314.    Defendants admit that it was customary for Dr. Mehta, Dr. Risinger, and Mr. Steinhart to prepare in advance for questions from financial analysts, including questions regarding the TRANQUILITY trials.  Except as expressly admitted, Defendants deny the allegations in Paragraph 314.

### 10.    Defendants Mehta's and Risinger's Hands-On Involvement (NEW FACTS ADDED)

315.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 315 regarding the CWs, including CW1's knowledge or actions, and on that basis deny them.

316.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 316 regarding CW7's knowledge or actions, and on that basis deny them.

317.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 317 regarding CW10's knowledge or actions, and on that basis deny them.

318.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 318 regarding CW5's knowledge or actions, and on that basis deny them.

319.    Defendants deny the allegations in Paragraph 319.

### B.    MOTIVE AND OPPORTUNITY

320.    Defendants deny the allegations in Paragraph 320.

### 1.    Funding from Investors

321.    Defendants admit that BioXcel entered into strategic financing agreements with funds managed by Oaktree Capital Management, L.P. and Qatar Investment Authority.

Defendants further admit that, as described in BioXcel's April 19, 2022 Form 8-K, that BioXcel may borrow funds under the Oaktree agreement upon satisfaction of certain conditions, including among other things receipt of certain regulatory and financial milestones.  Defendants further admit that BioXcel filed a Form 10-Q for the quarterly period ended June 30, 2023 with the SEC on August 14, 2023 where the Company expressed "substantial doubt regarding our ability to continue as a going concern."  Except as expressly admitted, Defendants deny the allegations in Paragraph 321.

322.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 322 regarding CW4's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 322.

323.    Defendants admit that BioXcel filed a Form 10-K for the annual period ended December 31, 2022 with the SEC on March 16, 2023, which stated:  "In April 2022, we entered into financing agreements with affiliates of Oaktree Capital Management, L.P. and Qatar Investment Authority that provides for up to $260 million in gross funding to support the Company's commercial activities of IGALMI sublingual film and the expansion of clinical development efforts of BXCL501, which includes a Phase 3 program for the acute treatment of agitation in patients with Alzheimer's disease, and for general corporate purposes."  Except as expressly admitted, Defendants deny the allegations in Paragraph 323.

324.    Defendants admit that BioXcel's strategic financing agreement with Oaktree Capital Management, LP and the Qatar Investment Authority included (1) a Credit Agreement dated April 19, 2022, providing up to $135 million in a delayed draw term loan; (2) a Revenue Interest Financing Agreement, dated April 19, 2022, providing up to $120 million in capped revenue interest financing on net sales of IGALMI and any other future BXCL501 products; and

(3) rights to purchase up to $5 million of BioXcel common stock.  The terms of the Credit Agreement and Revenue Financing Agreement are set forth in those agreements, which speak for themselves.  Except as expressly admitted, Defendants deny the allegations in Paragraph 324.

325.    Defendants lack knowledge or information sufficient to admit or deny the allegations of Paragraph 325 regarding CW1's knowledge, position, and actions, and on that basis deny the allegations in Paragraph 325.

### 2. Unusual and Suspiciously Timed Insider Sales and Bonuses Tied to Performance

326.    The allegations in Paragraph 326 constitute a conclusion of law to which no response is required.

327.    The allegations in Paragraph 327 constitute a conclusion of law to which no response is required.

328.    The allegations in Paragraph 328 constitute a conclusion of law to which no response is required.

329.    The allegations in Paragraph 329 constitute a conclusion of law to which no response is required.

330.    The allegations in Paragraph 330 constitute a conclusion of law to which no response is required.

331.    Defendants admit that Dr. Mehta and Mr. Steinhart were required to and filed Form 4 with the Securities and Exchange Commission.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 331, and on that basis deny them.

### a. Defendant Mehta

332.    Defendants admit that Dr. Mehta periodically filed Form 4 with the Securities and Exchange Commission reflecting transactions in BioXcel's common stock, options, and / or restricted stock units, which speak for themselves.  To the extent Paragraph 332 mischaracterizes or misrepresents the information provided in any Form 4 Dr. Mehta filed, Defendants deny those allegations.  Defendants otherwise deny the allegations in Paragraph 332.

333.    Defendants admit that Dr. Mehta periodically filed Form 4 with the Securities and Exchange Commission reflecting transactions in BioXcel's common stock, options, and / or restricted stock units, which speak for themselves.  To the extent Paragraph 333 mischaracterizes or misrepresents the information provided in any Form 4 Dr. Mehta filed, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 333.

334.    Defendants admit that Dr. Mehta filed a Form 4 with the Securities and Exchange Commission on June 16, 2023, and that the sales reflected therein were effected pursuant to a plan that complies with Rule 10b5-1 entered into on August 31, 2022.  The document otherwise speaks for itself.  The allegations in Paragraph 334 concerning what makes a 10b5-1 plan "valid" or the exercise of discretion thereunder constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 334.  Except as expressly admitted, Defendants deny the allegations in Paragraph 334.

335.    Defendants admit that Dr. Mehta filed a Form 4 with the Securities and Exchange Commission on June 16, 2023, and that the sales reflected therein were effected pursuant to a plan that complies with Rule 10b5-1 entered into on August 31, 2022.  The document otherwise speaks for itself.  Defendants further admit that Dr. Mehta periodically filed Form 4 with the Securities and Exchange Commission reflecting transactions in BioXcel's common stock, options, and / or restricted stock units, which speak for themselves.  To the extent Paragraph 335

mischaracterizes or misrepresents the information provided in any Form 4 Dr. Mehta filed, Defendants deny those allegations.  Except as expressly admitted, Defendants deny the allegations in Paragraph 335.

336.    Defendants admit that Dr. Mehta's August 31, 2022 Rule 10b5-1 plan set forth a schedule for the sale of certain BioXcel securities in December 2022, March 2023, June 2023, September 2023, December 2023, March 2024, June 2024, and September 2024.  Defendants further admit that no sales were made pursuant to the August 31, 2022 Rule 10b5-1 plan after June 2023.  Except as expressly admitted, Defendants deny the allegations in Paragraph 336.

337.    Defendants admit that Dr. Mehta's August 31, 2022 Rule 10b5-1 plan contemplated the maximum number of employee stock ownership plan shares to be exercised and sold of 474,000 and the gross quantity of restricted stock awards of 25,437.  Defendants further admit that no sales were made pursuant to the August 31, 2022 Rule 10b5-1 plan after June 2023.  Except as expressly admitted, Defendants deny the allegations in Paragraph 337.

338.    Defendants admit that Dr. Mehta filed a Form 4 with the Securities and Exchange Commission on April 8, 2024, and that the sales reflected therein were effected pursuant to a plan that complies with Rule 10b5-1 entered into on December 14, 2023.  The document otherwise speaks for itself.  The allegations in Paragraph 338 concerning the number of 10b5-1 trading plans an individual may enter into constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny those allegations in Paragraph 338.  Except as expressly admitted, Defendants deny the allegations in Paragraph 338.

339.    Defendants admit that no sales were made pursuant to the August 31, 2022 Rule 10b5-1 plan after June 2023.  Except as expressly admitted, Defendants deny the allegations in Paragraph 339.

340.    Defendants deny the allegations in Paragraph 340.

341.    The allegations in Paragraph 341 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 341.

342.    Defendants admit that BioXcel's Schedule 14A filed on May 17, 2023, reflects total compensation in 2022 for Dr. Mehta of $4,559,195, including salary, bonus, stock awards, option awards, non-equity incentive plan compensation, and all other compensation.  Except as expressly admitted, Defendants deny the allegations in Paragraph 342.

### b.    Defendant Steinhart

343.    Defendants admit that Mr. Steinhart filed a Form 4 with the Securities and Exchange Commission on February 3, 2021, and that the sales reflected therein were effected pursuant to a Rule 10b5-1 trading plan.  That document speaks for itself.  Except as expressly admitted, Defendants deny the allegations in Paragraph 343.

344.    Defendants admit that Mr. Steinhart filed a Form 4 with the Securities and Exchange Commission on March 16, 2023, May 16, 2023, and June 16, 2023, and that the sales reflected therein were effected pursuant to a plan that complies with Rule 10b5-1 entered into on June 23, 2022.  Those documents speaks for themselves.   Except as expressly admitted, Defendants deny the allegations in Paragraph 344.

345.    Defendants admit that Mr. Steinhart filed a Form 4 with the Securities and Exchange Commission on March 16, 2023, May 16, 2023, and June 16, 2023, and that the sales reflected therein were effected pursuant to a plan that complies with Rule 10b5-1 entered into on June 23, 2022.  Those documents speaks for themselves.  Except as expressly admitted, Defendants deny the allegations in Paragraph 345.

346.    Defendants admit that Mr. Steinhart filed a Form 4 with the Securities and Exchange Commission on March 16, 2023, May 16, 2023, and June 16, 2023, and that the sales reflected therein were effected pursuant to a plan that complies with Rule 10b5-1 entered into on June 23, 2022.  Those documents speaks for themselves.  Except as expressly admitted, Defendants deny the allegations in Paragraph 346.

347.    Defendants deny the allegations in Paragraph 347.

348.    Defendants admit that BioXcel instituted an Incentive Award Plan to enhance the Company's ability to attract, retain and motivate persons who make (or are expected to make) important contributions to the Company by providing these individuals with equity ownership opportunities.  That document is publicly available and speaks for itself.  Defendants further admit that Dr. Mehta received a one-time bonus of $150,000 in 2022 in recognition of the successful completion of a strategic financing for BTAI during 2022.  Except as expressly admitted, Defendants deny the allegations in Paragraph 348.

## VIII.   CLASS ACTION ALLEGATIONS

349.    Paragraph 349 is simply a recitation of Plaintiff's alleged Class Period and class definition to which no response is required.

350.    Defendants admit that during the purported Class Period, BioXcel stock was publicly traded on the NASDAQ, not the NYSE.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the number and ability to contact purported class members, and on that basis deny those allegations.  The remaining allegations in Paragraph 350 constitute legal conclusions regarding the application of Federal Rule Procedure 23, to which no response is required.

351.    The allegations in Paragraph 351 constitute legal conclusions regarding the application of Federal Rule Procedure 23, to which no response is required.  To the extent a

response is required, Defendants lack knowledge or information sufficient to admit or deny the allegations regarding putative class members' claims, and on that basis deny those allegations.

352.   The allegations in Paragraph 352 constitute legal conclusions regarding the application of Federal Rule Procedure 23, to which no response is required.  Defendants deny the allegations in Paragraph 352.

353.   Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 353, and on that basis deny those allegations.

354.   The allegations in Paragraph 354 constitute legal conclusions regarding the application of Federal Rule Procedure 23, to which no response is required

## IX.   PRESUMPTION OF RELIANCE

355.   Defendants admit that BioXcel's shares met the requirement for listing and were listed on the NASDAQ during the purported Class Period.  Defendants further admit that BioXcel filed periodic reports with the SEC and published press releases on its website, some of which were also filed with the SEC during the relevant period, and those reports and press releases were publicly available for any interested investors to review.  Defendants lack knowledge or information sufficient to admit or deny the allegations characterizing the regularity of investor communications and the reach of its public disclosures and on that basis denies those allegations.  Defendants further admit that during the purported Class Period, certain analysts published reports about BioXcel.  Defendants further deny the allegations in Paragraph 355 to the extent they purport to assert there is a basis in fact or law for Plaintiffs' claims.  Except as expressly admitted, Defendants deny the allegations in Paragraph 355.

356.   Defendants deny the allegations in Paragraph 356.

357.   Defendants aver that BioXcel's common stock promptly digested and reflected information regarding BioXcel from all publicly available sources during the Class Period.

Defendants deny that the share price was artificially inflated and deny that purchasers of BioXcel were injured as a result of any alleged misstatements.  Defendants further deny the allegations in Paragraph 357 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims.  Except as expressly admitted, Defendants deny the allegations in Paragraph 357.

358.    The allegations in Paragraph 358 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 358.

## X.    INAPPLICABILITY OF STATUTORY SAFE HARBOR

359.    The allegations in Paragraph 359 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

## XI.    LOSS CAUSATION

360.    In its September 29, 2025 Order, the Court held that Plaintiff's allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation and therefore Defendants deny the allegations in Paragraph 360 insofar as they relate to the August 14, 2023 disclosure.  The allegations in Paragraph 360 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

361.    In its September 29, 2025 Order, the Court held that Plaintiffs' allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation and therefore Defendants deny the allegations in Paragraph 361 insofar as they relate to the August 14, 2023 disclosure.  The allegations in Paragraph 361 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

362.    In its September 29, 2025 Order, the Court held that Plaintiffs' allegations regarding the alleged August 14, 2023 corrective disclosure failed to establish loss causation and therefore Defendants deny the allegations in Paragraph 362 insofar as they relate to the August 14, 2023 disclosure.  The allegations in Paragraph 362 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny there is a basis in law or fact for Plaintiffs' claims.

## XII.    COUNTS

### COUNT I
### For Violations of Section 10(b) of the Exchange Act and
### SEC Rule 10b-5 Against All Defendants

363.    Defendants repeat and incorporate their responses to Paragraphs 1-362 above as if fully set forth herein.

364.    Defendants deny the allegations in Paragraph 364.

365.    Defendants deny the allegations in Paragraph 365.

366.    Defendants deny the allegations in Paragraph 366.

367.    Defendants admit that BioXcel filed periodic reports with the SEC, published press releases, and made public statements to investment analysts and the media.  Defendants further admit that those reports, press releases, and statements were publicly documented and available for any interested investors to review.  Defendants deny the remaining allegations in Paragraph 367.

368.    Defendants deny the allegations in Paragraph 368.

369.    Defendants deny the allegations in Paragraph 369.

370.    Defendants deny the allegations in Paragraph 370.

371.    Defendants deny the allegations in Paragraph 371.

372.    Defendants deny the allegations in Paragraph 372.

373.    Defendants deny the allegations in Paragraph 373.

## COUNT II
### For Violations of Section 20(a) of the Exchange Act
### Against Defendants Mehta, Steinhart, and Risinger

374.    Defendants repeat and incorporate their responses to Paragraphs 1-373 above as if fully set forth herein.

375.    The allegations in Paragraph 375 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny that there is a basis in fact or law for Plaintiff's claims.

376.    The allegations in Paragraph 376 constitute a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny that there is a basis in fact or law for Plaintiff's claims.

377.    Defendants deny the allegations in Paragraph 377.

378.    Defendants deny the allegations in Paragraph 378.

## XIII.  PRAYER FOR RELIEF

Plaintiffs' Prayer for Relief contains no factual allegations and therefore does not require a response.  To the extent that a response is required, Defendants deny that Plaintiffs are entitled to any relief.

## XIV.  DEMAND FOR TRIAL BY JURY

Plaintiffs' Demand for Jury Trial contains no factual allegations and therefore does not require a response.  To the extent that a response is required, Defendants deny that there are any triable issues.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following defenses in response to the allegations contained in the Complaint.  By asserting these defenses, Defendants do not concede they bear the burden of proof on any such defenses.

Defendants further reserve the right to assert additional affirmative defenses once the precise nature of the relevant circumstances or events is determined through discovery.

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

The Complaint fails to state a claim upon which relief may be granted including because the Court has dismissed Plaintiffs' allegations in ¶¶ 5, 215-234, 246-258, 264-273, 278-79, 299, 307-08, 360-62 (ECF No. 163).

## SECOND AFFIRMATIVE DEFENSE

(Knowledge)

Plaintiffs' claims of alleged misrepresentations and omissions, which are denied, are barred to the extent any allegedly misstated facts or omissions were known to Plaintiffs and other members of the putative class.

## THIRD AFFIRMATIVE DEFENSE

(Forward-Looking Statements)

Plaintiffs' claims are barred, in whole or in part, by the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-5(c)(1) and/or the "bespeaks caution" doctrine to the extent they are based on predictions, expressions of opinion, or forward-looking statements.

## FOURTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

Plaintiffs' claims are barred, in whole or in part, because Plaintiff and/or other members of the putative class had actual or constructive knowledge of the risks involved and thus assumed the risk that the value of BioXcel stock would decline if such risks materialized.

## FIFTH AFFIRMATIVE DEFENSE

### (No Control Person Liability)

Each and every one of Defendants alleged to be a control person under Section 20(a) of the Securities Exchange Act of 1934 acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and causes of action.

## SIXTH AFFIRMATIVE DEFENSE

### (Due Diligence)

Defendants had, after reasonable investigation, reasonable grounds to believe and did believe, at the time of the statements at issue, that their statements were true and that there was no omission of any required material fact necessary to make the statement not misleading.

## SEVENTH AFFIRMATIVE DEFENSE

### (Reasonable Reliance on Experts)

With respect to portions of the statements purporting to be made on the authority of subject matter experts, Defendants had no reasonable ground to believe and did not believe, at the time such statements were made, that the statements were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements not misleading.

## EIGHTH AFFIRMATIVE DEFENSE

(Superseding or Intervening Events)

Plaintiffs' claims are barred, in whole or in part, because superseding or intervening events caused some or all of the alleged damages.

## NINTH AFFIRMATIVE DEFENSE

(Comparative Fault and/or Contributory Negligence)

Plaintiffs' claims are barred, in whole or in part, by the actions, omissions, and/or comparative fault and contributory negligence of Plaintiff, other members of the putative class, or other third parties, including the failure to undertake their own due diligence.

## TENTH AFFIRMATIVE DEFENSE

(Contribution and Indemnity)

Under principles of contribution and indemnity, persons or entities other than Defendants are wholly or partially responsible for the purported damages, if any, Plaintiffs and members of the purported class have sustained.

## ELEVENTH AFFIRMATIVE DEFENSE

(Proportionate Liability)

Any recovery for damages allegedly incurred by Plaintiffs and members of the purported class, if any, is limited to the percentage of responsibility of Defendants in proportion to the total fault of all persons, whether or not named as parties to this action, who caused or contributed to Plaintiffs' and members of the purported class's alleged damages, if any, pursuant to the proportionate liability provisions of the Reform Act, as codified at 15 U.S.C. § 78u-4(f)(3)(A).

86

## TWELFTH AFFIRMATIVE DEFENSE

(Lack of Impact on Market Price)

Plaintiffs' claims against Defendants are barred, in whole or in part, because the purported misstatements or omissions alleged in the TAC did not affect the market price of BioXcel securities.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Regardless of Alleged Falsity)

Plaintiffs and members of the purported class would have acquired BioXcel common stock even if, when acquired, class members had known of the allegedly untrue statements of material fact, omissions of material fact, misleading statements, or other wrongful conduct upon which Defendants' purported liability rests.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Other Causes of Loss)

Under any theory of liability, Plaintiffs and members of the purported class may not recover damages based on depreciation in the value of BioXcel securities that resulted from factors other than the alleged material devices, schemes, or artifices to defraud, misstatements or omissions, acts, practices, or courses of business which are cited in the TAC.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Excessive Damages)

Plaintiffs' and members of the purported class's claims are barred, in whole or in part, to the extent that the damages sought exceed those permitted under the Exchange Act, the Reform Act, common law, or any other applicable statute, rule, or regulation.

The foregoing affirmative defenses are pled on information and belief, based on investigation into the allegations as of the date of filing.  Defendants expressly reserve the right to plead additional affirmative and other defenses that may become available or apparent during this litigation and/or required by any amendments to the Complaint.

### **PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for judgment as follows:

A. That judgment be entered in favor of Defendants and against Plaintiffs on each and every cause of action set forth in the Complaint,

B. That Defendants be awarded such other and further relief as the Court deems just and proper.

Dated:   October 28, 2025                        Respectfully submitted,

       Los Angeles, California                 LATHAM & WATKINS LLP

                                By:      /s/ *Meryn C. N. Grant*

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
Tel: (858) 523-5400
Fax: (858) 523-5450
Email: colleen.smith@lw.com

Jessica Bengels [ct29396]
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jessica.bengels@lw.com

Michele D. Johnson (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: michele.johnson@lw.com

Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201

Meryn C. N. Grant (*pro hac vice*)
355 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 485-1234
Fax: (213) 891-8763
Email: meryn.grant@lw.com

*Attorneys for Defendants*